UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| RICHARD E. HAMILTON, Jr. *et al.,* ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | 2:13-cv-00414-JAW |
| ) | |
| FEDERAL HOME LOAN MORTGAGE ) | |
| CORPORATION D/B/A FREDDIE MAC, ) | |
| *et als.,* ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDED DECISION ON MOTIONS TO DISMISS

In this action, Plaintiffs Richard Hamilton, Jr. and his father, Richard Hamilton, Sr., assert numerous claims against Defendants Federal Home Loan Mortgage Corporation, Bank of America Corporation, Nationstar Mortgage LLC, Phillips Olore Dunlavey & York P.A., Brent York, Esq., and Republic Mortgage Insurance Company. Plaintiffs' 17-count complaint arises out of a home loan and mortgage deed executed by Hamilton, Jr. in May 2000, the efforts of the lenders and mortgagees to enforce the note and mortgage and otherwise protect their interests in the mortgaged premises, and Defendants' responses to Hamilton, Jr.'s requests for information related to the loan and mortgage.

The matter is before the Court on three motions to dismiss. (Nationstar's Motion to Dismiss, ECF No. 10; Phillips, Olore, Dunlavey & York Motion to Dismiss, ECF No. 15; Federal Home Loan Mortgage Corporation's Motion to Dismiss, ECF No. 65.)[1] Following a review of the

---

[1] The Court referred the motions for report and recommended decision.

pleadings, and consideration of the parties' arguments, as explained below, the recommendation is that (1) the Court grant the motion to dismiss of Defendant Phillips, Olore, Dunlavey & York, (2) grant in part and deny in part, the motion to dismiss of Nationstar, and (3) grant in part and deny in part the motion to dismiss of Federal Home Loan Mortgage Corporation.

<h2 align="center">FACTUAL BACKGROUND</h2>

The facts set forth herein are derived from Plaintiffs' Complaint, which facts are deemed true for purposes of evaluating Defendants' motions to dismiss.[2]  The facts may also be informed by any exhibits attached to Plaintiffs' Complaint, to the extent they are material to the motions to dismiss.  *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) ("On a motion to dismiss, a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto[.]").

On May 19, 2000, Richard Hamilton, Jr., as a 28 year old, first-time homebuyer, purchased a mobile home and land in New Gloucester, Maine.  Hamilton, Jr., financed the purchase through a loan from Bank of America.  As part of the transaction, Hamilton, Jr., granted a mortgage on the property to Bank of America.  Before approving the loan and advancing the loan proceeds, the Bank of America arranged for a survey and appraisal of the subject property.  The property borders a junkyard.  Although Hamilton, Jr., moved to Florida in 2005, he made payments on the loan through September 2007, including some "substantial additional amounts . . . paid on principal." (*Id.* ¶ 17.A.)

In this action, Plaintiffs assert the following:

---

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

- Hamilton, Jr., received only unsigned copies of the closing documents, and never received (but paid for) an owner's policy of title insurance.

- The appraiser and the surveyor, both of whom the Bank retained, knew that a junkyard encroached on the property, but did not disclose this fact to Hamilton, Jr.

- Beginning in 2008 and continuing into 2013, the Bank changed the locks on the mobile home, posted the property for sale or rent, represented to neighbors that a foreclosure had occurred, and posted the property as vacant or abandoned. (*Id.* ¶ 27.)

- In 2007, 2010, and 2013, Hamilton, Jr. repeatedly requested, but did not receive, from the Bank copies of all closing documents, the "loan activity report," and escrow and PMI information. (*Id.* ¶ 28.)

- In 2007 and 2008, Hamilton, Jr. complained to the Bank, but did not receive a response, about junkyard issues, a PMI issue, the change of locks, and various other issues. (*Id.* ¶ 30.)

- In 2012 and 2013, Hamilton, Jr. disputed his debt, complained of property damage and hazardous waste, and asserted that the property was not abandoned. (*Id.*) In 2013, Hamilton, Jr. sent a similar complaint letter to Federal Home Loan Mortgage Corp. (*Id.* ¶ 30.H.)

- In 2013, Hamilton, Jr. requested of Nationstar, but did not receive, information concerning the escrow, past due payments, legal fees, property inspections, maintenance inspections and a history report for the life of the loan. (*Id.* ¶ 29.)

- In 2013, Hamilton, Jr., received a letter from Bank of America stating that the city had imposed a code violation on the property. (*Id.* ¶ 30.G.)

- The Bank provided Hamilton, Jr. with the incorrect 1098 mortgage interest statements for each of the years after 2004 and before 2011. (*Id.* ¶ 31.)

- The Bank failed to inform Hamilton, Jr. about PMI termination at the closing and did not send him annual notices about PMI termination and cancellation at any time. (*Id.* ¶ 32.) Hamilton, Jr., therefore, did not know his PMI premiums could be cancelled.

- Beginning in 2004, the Bank, the Bank of America d/b/a BAC Home Loans Servicing, LP, and Nationstar made false reports concerning Hamilton, Jr. to credit reporting agencies, and failed to inform the agencies that Hamilton, Jr. disputed their reports. (*Id.* ¶ 33.)

- Hamilton, Jr. has requested from Defendants, but has not received, information about his private mortgage insurance. (*Id.* ¶ 42.)

- Beginning in January 2004, the Bank and BAC's electronic monthly statements have not accurately stated the amount of principal, interest, and escrow. (*Id.* ¶ 39.)

- Before the closing, the Town of New Gloucester was supposed to "sign off" that the land and residence were in order, but did not do so. (*Id.* ¶ 47.A.)

- The Bank has not paid Hamilton, Jr. the correct interest on his escrow account. Hamilton, Jr. never abandoned the property; cannot sell or rent the property because of a preexisting hazardous waste problem; has been in a "tense and dire situation;" is concerned about whether he actually owns 2.03 acres; has a property description in his mortgage deed that is incorrect; and suffers "mental anguish, distress, anxiety, pain, indignation, despair, severe headaches, severe tension, severe trauma, and is unable to eat, sleep, and cope with daily life." (*Id.* ¶ 47.)

- Beginning in March 2013, Nationstar sent to Hamilton, Jr. incorrect statements and other correspondence by U.S. mail. (*Id.* ¶ 40.)

In November 2009, the Bank informed Hamilton, Jr. that BAC would service his loan. BAC is identified as lienholder 1 on Hamilton, Jr.'s homeowner's policy for the period of September 2010 through March 2013. (*Id.* ¶ 34.) In March 2013, Hamilton, Jr. learned that Nationstar would service his loan. Subsequently, Nationstar was identified as lienholder 1 on Hamilton, Jr.'s homeowner's policy. (*Id.* ¶ 35.)

Bank of America sent Hamilton, Jr. three separate letters, one in 2007 and two in 2009, warning of a possible foreclosure. In 2010 and 2011, Phillips Olore Dunlavey & York P.A. (PODY), sent Hamilton, Jr. a warning of a possible foreclosure. (*Id.* ¶ 36.) Bank of America sent another such letter in 2012, followed by a similar letter from another law firm, Shapiro & Morley LLC, in 2013, and one from Nationstar in 2013. (*Id.*)

Attorney Brent York, of PODY, sent Hamilton, Jr. a notice of default in March 2010 that included incorrect information. In a letter to Hamilton, Jr., York represented that PODY would "obtain verification of the debt or a copy of a judgment and mail it" if Hamilton, Jr. notified them of a dispute. Hamilton, Jr. notified PODY of a dispute, but he did not receive a response. (*Id.* ¶ 37.)

In September 2011, the Bank filed a complaint for foreclosure in Maine District Court. Hamilton, Sr. was named as a party in interest. The district court dismissed the complaint without prejudice in July 2012 because of the timing of the service of the complaint. In this case, Plaintiffs complain of the grief and lost time caused by "this vexatious foreclosure action." (*Id.* ¶ 38.)

On March 24, 2013, Shapiro & Morley wrote Hamilton, Jr. to advise that Nationstar referred the loan for foreclosure, that the creditor was Nationstar, that the amount of the debt was

$78,952.15, and that verification would be provided if Hamilton, Jr., disputed the debt. (*Id.* ¶ 43.) Hamilton, Jr. disputed the debt by letter in April 2013, and requested copies of all documents that reflected that the debt was owed to Nationstar. Shapiro & Morley did not verify the debt or otherwise provide documents. (*Id.*)

In support of their claim, Plaintiffs cite litigation by the United States government and 49 states against the Bank, BAC, and others for misconduct related to the origination and servicing of single family residential mortgages. (*Id.* ¶ 45.) Plaintiffs maintain that the Bank and BAC have violated consumer protection laws through unfair and deceptive practices, including wrongful origination and foreclosure practices. Plaintiffs also allege that the Bank and BAC violated a prior consent judgment. (*Id.*)

Based on the factual allegations, Plaintiffs assert 17 counts, as follows:

Count I: Hamilton, Jr. asserts a breach of contract claim against the Bank, BAC, Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. The contracts are identified as the residential mortgage loan contract with the Bank, the mortgage loan servicing contract with BAC, a contract with the Federal Home Loan Mortgage Corporation, and a "RMIC Contract" for private mortgage insurance. (*Id.* ¶¶ 85-103.)

Count II: Hamilton, Jr. asserts a negligence claim against the Bank, BAC, Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. (*Id.* ¶¶ 104-116.)

Count III: Hamilton, Jr. asserts a claim of negligent misrepresentation against the Bank, BAC, Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company concerning (1) the Bank's pre-closing representation that it would supervise its employees and agents, and that the appraiser and surveyor would perform their work in accordance with professional standards; (2) the Bank's failure to disclose the junkyard encroachment; (3) the

Bank's representations about the terms of private mortgage insurance; (4) the entry of those conducting the survey and appraisal onto his property; (5) the manner by which various defendants represented that they would service his loan and respond to his requests for information; and (6) the amount of legal fees arising from the foreclosure proceeding. (*Id.* ¶¶ 117-127.)

Count IV: Hamilton, Jr. asserts a claim of intentional misrepresentation against the Bank, BAC, Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. (*Id.* ¶¶ 128-138.)

Count V: Hamilton, Jr. asserts a claim of fraud through concealment against the Bank, BAC, Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. (*Id.* ¶¶ 139-147.)

Count VI: Hamilton, Jr. asserts an unfair and deceptive trade practices claim against the Bank, BAC, Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. Hamilton, Sr. alleges the same claim against PODY and Attorney York.[3] (*Id.* ¶¶ 148-152.)

Count VII: Hamilton, Jr. asserts a claim of intentional infliction of emotional distress against Bank of America, BAC, Nationstar, the Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. (*Id.* ¶¶ 153-160.)

Count VIII: Hamilton, Jr. asserts a claim of negligent infliction of emotional distress against Bank of America, BAC, Nationstar, the Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company. (*Id.* ¶¶ 161-164.)

---

[3] Hamilton, Sr.'s claim is evidently based on the Defendants' inclusion of him in the foreclosure action, and in a filing in the registry of deeds.

Count IX:  Hamilton, Jr. asserts a claim for alleged violations of the Fair Debt Collection Practices Act against Bank of America, BAC, Nationstar, the Federal Home Loan Mortgage Corporation, and Republic Mortgage Insurance Company.  (*Id.* ¶¶ 165-171.)

Count X:  Hamilton, Jr. asserts a claim for alleged violations of the Truth in Lending Act against the Bank and Federal Home Loan Mortgage Corporation.  (*Id.* ¶¶ 172-179.)

Count XI:  Hamilton, Jr. asserts a claim for alleged violations of the Fair Credit Billing Act against the Bank, BAC, and Nationstar.  (*Id.* ¶¶ 180-186.)

Count XII:  Hamilton, Jr. asserts a claim for alleged violations of the Fair Credit Reporting Act against the Bank, BAC, Nationstar, and the Federal Home Loan Mortgage Corporation.  (*Id.* ¶¶ 187-192.)

Count XIII:  Hamilton, Jr. asserts a claim for alleged violations of the Real Estate Settlement Procedures Act against the Bank, BAC, Nationstar, and the Federal Home Loan Mortgage Corporation.  (*Id.* ¶¶ 193-198.)

Count XIV:  Hamilton, Jr. asserts a claim of defamation (libel) against all Defendants except Republic Mortgage Insurance Company.[4] Hamilton, Sr. asserts a similar claim against PODY and Attorney York.[5]

Count XV:  Plaintiffs assert a claim of "false light" defamation against all Defendants except Republic Mortgage Insurance Company.  (*Id.* ¶¶ 209-214.)

Count XVI:  Hamilton, Jr. asserts a claim of abuse of process against Bank of America, BAC, PODY and Attorney York.  Hamilton, Sr. asserts a similar claim against PODY and Attorney York.  (*Id.* ¶¶ 215-219.)

---

[4] Hamilton, Jr. cites notices posted on the property, which notices implied that foreclosure had taken place; credit reports provided to credit reporting agencies; and the foreclosure notice filed in the registry.
[5] Hamilton, Sr.'s claim is based on the inclusion of his name in the registry filing.

Count XVII:  Hamilton, Jr. asserts a claim of fraud against the Bank, BAC, Nationstar, the Federal Home Loan Mortgage Corporation, PODY, and Attorney York.  (*Id.* ¶¶ 220-234.)

As to damages, Plaintiffs seek to recover:

Legal costs, telephone and copying costs, court and sheriff costs, travel costs, research costs, time to prepare answer and counterclaim on the complaint for foreclosure, loss of bargain, loss on betterments and improvements, loss on interest on escrow account, loss on sale of residence, loss on dis-possession of residence, loss on private mortgage insurance premiums, loss on enjoyment of residence, carrying costs on BOA, N.A. mortgage loan, carrying costs on Citifinancial mortgage loan, carrying costs on Hamilton, Sr. mortgage loan, carrying costs on electricity, carrying costs on real estate taxes, carrying costs on house insurance, environmental costs to date, environmental costs in future, surveying costs to date, surveying costs in future, loss on rental income, emotional distress, defamation, false light, loss of reputation, medical costs, loss of earnings, excess fee charges, and excess interest costs.

(*Id.* ¶ 48.)

## DISCUSSION

### A. STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a party to seek dismissal in the event the complaint fails "to state a claim upon which relief can be granted."  In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiffs the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  Plaintiffs' allegations, however, must raise a plausible basis from which a fact finder could conclude that the Defendants are liable on the alleged claims.  *Id.*  In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained, "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and quotations omitted).[6]

## B. Nationstar Motion to Dismiss (ECF No. 10)

Hamilton, Jr. advances 15 counts against Nationstar: breach of contract (Count I), negligence (Count II), negligent misrepresentation (Count III), intentional misrepresentation (Count IV), fraud (Count V), Unfair Trade Practice Act (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), Fair Debt Collection Practices Act (Count IX), Fair Credit Billing Act (Count XI), Fair Credit Reporting Act (Count XII), Real Estate Settlement Procedures Act (Count XIII), defamation by libel (Count XIV), defamation by false light publicity (Count XV), and fraud (Count XVII).

### 1. *Breach of contract (Count I)*

Nationstar argues that the Court should dismiss the contract claim because Hamilton, Jr. did not identify the contractual terms that support his claim. (Nationstar Motion to Dismiss at 2, 8-9.) In response, Hamilton, Jr. contends that "a reasonable person could infer that these documents have terms and conditions, such as an interest rate, monthly payments, escrow payments, tax payments, and additional restrictive terms and conditions." (Plaintiffs' Opposition to Nationstar Motion at 2, ECF No. 33.)

To sustain a breach of contract claim, a party must establish three elements: (1) breach of a material contract term; (2) causation; and (3) damages. *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248, 1250. In a case in which it applied

---

[6] A reviewing court must also be mindful of the need to subject the *pro se* plaintiffs' complaint to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and "within reasonable limits, to guard against the loss of *pro se* claims due to technical defects," *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008).

Massachusetts law, the First Circuit Court of Appeals held that a complaint for breach of contract is properly dismissed when the plaintiff fails to identify "with substantial certainty the specific contractual promise the defendant failed to keep." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (internal quotation marks omitted). Nationstar maintains that Hamilton, Jr. has not satisfied this requirement. (Nationstar Motion to Dismiss at 9.)

According to Plaintiffs' complaint, Nationstar did not originate Hamilton, Jr.'s loan. Instead, Nationstar began to service the loan in 2013 and, thereafter, acquired "ownership" of the loan. Hamilton, Jr.'s breach of contract claim presumably is based on the terms of the mortgage loan documents. The mortgage loan documents, however, are not part of the current record.

Essentially, Hamilton, Jr. alleges that Nationstar breached certain contractual obligations, including those that are implied in the parties' agreement (*e.g.*, certain statutory mortgage loan servicing obligations, the obligation to provide accurate account information, and the obligation to inform Hamilton, Jr. of the right to cancel private mortgage insurance). In this way, Hamilton, Jr. has alleged a claim for breach of contract, and provided Nationstar with sufficient notice of the nature of the claim to permit Nationstar to understand and defend against the claim. Dismissal, therefore, is not appropriate.

### 2. Negligence (Count II)

Nationstar argues that Hamilton, Jr.'s complaint does not identify a factual basis upon which one could conclude that Nationstar had a duty in tort. (Nationstar Motion to Dismiss at 10.) Nationstar also argues that Hamilton, Jr.'s claim is barred by the economic loss doctrine. (*Id.* at 11.)

"It is a question of law whether one party owes another a duty of care." *Camden Nat'l Bank v. Crest Constr., Inc.*, 2008 ME 113, ¶ 10, 952 A.2d 213, 216. As a general proposition,

Maine law does not recognize a duty of care where the parties have contracted in the context of an arms-length commercial relationship. *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶¶ 1, 10, 54 A.3d 710, 711, 713 (affirming summary dismissal of "fiduciary duty and duty of care" claims against title company). Perhaps because of this legal principle, Hamilton, Jr. contends that the duty results from his special relationship with Nationstar. However, "[a] mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer." *Crest Constr.,* 2008 ME 113, ¶ 11. Because the services provided by a mortgage loan service company are derivative of the mortgagee-mortgagor relationship, logically, the relationship between the service company and the mortgagor does not constitute a special relationship that generates a duty in tort. Simply, Hamilton, Jr.'s assertion that alleges he "let down his guard and bars based on what Nationstar stated in their letter dated March 1, 2013" (Plaintiffs' Opposition to Nationstar Motion at 4), is insufficient to support a claim that he had a special relationship with Nationstar to generate a duty.[7] Hamilton, Jr. thus has failed to state a claim in negligence.

### 3. *Misrepresentation (Count III, Count IV, and Count V)*

Hamilton, Jr. asserts three separate counts of misrepresentation: negligent misrepresentation, intentional misrepresentation, and fraud. There is no material difference between a claim for fraud and a claim for intentional misrepresentation. In addition, whether a misrepresentation claim is based on negligent or intentional conduct, a plaintiff must demonstrate that the defendant made a false statement about the existence or non-existence of a fact to induce a plaintiff to act, and that the plaintiff justifiably relied on the false statement to the plaintiff's

---

[7]  The Court is aware of cases involving fiduciary duty claims against mortgagees and escrow service agents based on allegations of misapplication of escrowed funds. *See, e.g., Hoover v. HSBC Mortg. Corp. (USA)*, No. 3:13-CV-149, 2014 WL 1280441, at *22 (N.D.N.Y. Mar. 27, 2014); *Smith v. GMAC Mortg. Corp.*, No. 5:06-cv-00125, 2007 WL 2593148, at *9 (W.D.N.C. Sept. 5, 2007). However, with respect to Nationstar (and also Federal Home Loan Mortgage Corporation) the allegations do not support a plausible inference that any payments were made during their ownership or servicing of the loan.

detriment. *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443, 447 (negligent misrepresentation); *Maine Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707, 711 (fraudulent misrepresentation). Whether a defendant made a false statement, and whether a plaintiff justifiably relied upon the statement are generally questions of fact. *St. Louis*, 2012 ME 116, ¶ 19, 55 A.3d at 447.

Nationstar argues that Hamilton, Jr.'s allegations are insufficient to sustain a misrepresentation claim because the allegations are entirely conclusory. (Nationstar Motion to Dismiss at 12-13.) In his complaint, Hamilton, Jr. asserts that Nationstar made a number of misrepresentations, and that he relied upon the representations to his detriment. Among the alleged misrepresentations are: (1) that Nationstar did not inform him that it would enter onto his property; (2) that Nationstar did not respond to his requests for documents and information, including documents and information about his private mortgage insurance; (3) that Nationstar misrepresented the extent of PODY's legal services in charging his account to the extent it did; and (4) that misrepresentations were made in the statements concerning the principal balance, interest, fees, and expenses associated with his loan. Hamilton, Jr. argues that he was forced to rely on the information, and as a result, he has been overcharged. (Plaintiffs' Opposition to Nationstar Motion at 7-9.)

Because Hamilton, Jr. alleged that he relied upon the alleged representations, and because the representations include allegations upon which he arguably could have relied (e.g., the amount of the principal and interest) to his detriment (*e.g.*, did not make payments or bring the account current because he was unable to pay the alleged excessive amount claimed), Hamilton, Jr. has stated a claim for misrepresentation.

*4.      Unfair Trade Practices (Count VI)*

Maine's Unfair Trade Practices Act (UTPA) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S. § 207. To be "unfair" an act or practice "must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." *Bangor Publ'g Co. v. Union St. Mkt.*, 1998 ME 37, ¶ 7, 706 A.2d 595, 597. To be "deceptive," an act or practice must consist of "a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances." *State v. Weinschenk*, 2005 ME 28, ¶ 17, 868 A.2d 200, 206. To be "material", the matter must be "important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* (quoting *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984)).

The UTPA authorizes a private right of action for anyone "who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2." 5 M.R.S. § 213(1). A loss of money or property is required in order for a plaintiff to have an actionable claim for relief under the UTPA. 5 M.R.S. § 213(1); *Poulin v. Thomas Agency*, 746 F. Supp. 2d 200, 206 (D. Me. 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 660 F. Supp. 2d 94, 102 (D. Me. 2009).

Nationstar argues that the complaint does not support a UTPA claim because the allegations are conclusory, do not divulge any tortious conduct or violation of applicable statute or regulation, and do not reveal a "substantial injury." (Nationstar Motion to Dismiss at 25-26.)

In support of his UTPA claim, Hamilton, Jr. cites the allegations regarding the misrepresentations and the allegations regarding the lack of response to his inquiries about his mortgage statements, credit reports, and complaint letters. Hamilton, Jr. contends that as the result of Nationstar's conduct, he was unable "to calculate the true and correct balance owed," and that he "lost money and property." (Plaintiffs' Opposition to Nationstar Motion at 10.)

Hamilton, Jr.'s allegations regarding Nationstar's misrepresentations, if proven, would establish a claim under the UTPA. More particularly, Hamilton, Jr.'s misrepresentation claim could constitute "unfair or deceptive acts." Dismissal of Hamilton, Jr.'s UTPA claim, therefore, is not warranted.

5.    *Emotional distress (Counts VII (intentional infliction) and VIII (negligent infliction))*

With respect to his emotional distress claims, Hamilton, Jr. alleges that he has suffered a loss of reputation, property, and good name, through fraud and false representations, the concealment of material information, the reporting of false information, and other unlawful activity. (Complaint ¶ 154.) He further alleges severe emotional distress as a consequence of extreme and outrageous conduct or negligence. (*Id.* ¶¶ 156, 162.)

Emotional distress claims are commonly presented as a request for emotional distress damages caused by an underlying tort, or as a freestanding tort claim for emotional harm imposed either intentionally or as a result of negligence occurring in the context of a bystander situation or special relationship. *Curtis v. Porter*, 2001 ME 158, ¶¶ 19-20, 784 A.2d 18, 26. Here, Hamilton, Jr. alleges claims for intentional infliction of emotional distress (Count VII), and negligent infliction of emotional distress (Count VIII).

As explained above, Hamilton, Jr. does not enjoy a special relationship with Nationstar. Hamilton, Jr. thus cannot sustain a cause of action for the negligent infliction of emotional distress. Hamilton, Jr., however, has alleged sufficient facts to support an inference that Nationstar engaged in conduct "so extreme and outrageous as to exceed all possible bounds of decency, and be regarded as atrocious and utterly intolerable in our civilized society." *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 617 (Me. 1996) (internal quotation marks omitted). Specifically, Hamilton, Jr. has asserted intentional misrepresentations motivated by malice, which, if true, could fairly and reasonably be characterized as extreme and outrageous conduct utterly intolerable in a civilized society. Nationstar, therefore, is not entitled to dismissal of Hamilton, Jr.'s claim for the intentional infliction of emotional distress.

6. *Fair Debt Collection Practices Act (Count IX)*

Hamilton, Jr. alleges that Nationstar is a creditor that routinely uses unlawful means to harm the reputation and property of its debtors. (Complaint ¶ 166.) He asserts that because Nationstar made false statements to state police, his New Gloucester neighbors, and others, Nationstar violated fair debt collection practices established by Maine and federal law. (*Id.* ¶ 169.)

The Maine Fair Debt Collection Practices Act, 32 M.R.S. §§ 11001-11054, prohibits certain debt collection practices, including false representations regarding the amount of the debt and false reporting of credit information. *Id.* § 11013(2)(B), (H). The Act authorizes a private cause of action for those who are harmed as the result of such practices. *Id.* § 11054(1). Federal law prohibits the same conduct, and also authorizes private civil suits under the federal Fair Debt Collection Practices Act. 15 U.S.C. §§ 1692e(2), (8), 1692k.

Nationstar argues that Hamilton, Jr. fails to state a claim because Hamilton, Jr. has not alleged that Nationstar is a "debt collector," that Nationstar sought to collect a debt, or that

Nationstar engaged in specific conduct that is prohibited by the Act. (Nationstar Motion to Dismiss at 15.)

The FDCPA defines "debt collector" as a person or entity "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). As a general rule, creditors, mortgagees, and mortgage service companies do not qualify as "debt collectors." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998); *Reyes v. Bank of Am., N.A.*, No. 8:12-cv-03798, 2013 WL 6012504, at *2 (D. Md. Nov. 12, 2013). A mortgage service company, however, can qualify as a "debt collector" if the debt in question was in default when it was assigned to the creditor in question. *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (citing *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 359 (6th Cir. 2012)).

In this case, because Hamilton, Jr.'s allegations suggest that he was in default on the terms of the note and mortgage, a fact finder could conclude that Nationstar was a debt collector as contemplated by the FDCPA. Furthermore, given Hamilton, Jr.'s allegations of misrepresentation, Hamilton, Jr. has alleged facts from which a fact finder could determine that Nationstar engaged in conduct in violation of the FDCPA. Nationstar thus is not entitled to dismissal of Hamilton, Jr.'s FDCPA claim.

### 7. *Truth in Lending Act (Count X)*

Hamilton, Jr. does not assert a TILA claim against Nationstar. (Complaint ¶¶ 172-179.)

### 8. *Fair Credit Billing Act (Count XI)*

Hamilton, Jr. alleges that Nationstar violated the Fair Credit Billing Act by overstating the account's principal and interest in online statements and in mailed billing notices. (Complaint ¶¶ 180-186.) "[T]he FCBA generally is not applicable to mortgage loans because it only applies to

creditors offering open-end credit plans, such as credit cards." *Latonnelle v. CitiMortgage, Inc.*, No. 1:10-CV-04066-TWT, 2011 WL 4974839, at *3 (Aug. 22, 2011), *report and recommendation adopted,* 2011 WL 4974827 (N.D. Ga. Oct. 18, 2011). Courts routinely dismiss FCBA claims involving billing disputes brought against mortgage loan lenders or service providers where such loans are not structured as open-end credit plans. *See id.*; *Karim v. Bank of Am., N.A.*, No. 1:10-cv-00519, 2011 WL 4457212, at *7 (May 6, 2011), *report and recommendation adopted,* 2011 WL 4458765 (D. R.I. Sept. 23, 2011); *Phan v. Accredited Home Lenders Holding Co.*, No. 3:09-cv-00328, 2010 WL 1268013, at *5 (M.D. Fla. Mar. 29, 2010) ("An open end credit plan means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."); 15 U.S.C. §§ 1602(j), 1666. Hamilton, Jr. offers no argument or analysis to suggest that his debt could be construed as an open-end credit plan. Accordingly, Hamilton, Jr., has failed to state a claim under the FCBA.

9. *Fair Credit Reporting Act (Count XII)*

Hamilton, Jr. alleges that Nationstar violated the Fair Credit Reporting Act as the result of alleged "false and inaccurate" reports to Transunion, Equifax, and Experian. (Complaint ¶¶ 188-189.) The federal Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), obligates those who furnish reports to credit reporting agencies to refrain from reporting inaccurate information and to undertake "specific duties in the event of a dispute over furnished information." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (citing 15 U.S.C. § 1681s-2(b)). The failure to satisfy certain obligations in the event of a dispute generates the right to a private cause of action. *Id.* at 36. For liability to arise, however, the person or entity reporting the information must first

receive notice from a reporting agency that a consumer has disputed the report. [8] *Id.* at 35 & n.8; *see also* 15 U.S.C. §§ 1681s-2(b)(1) (imposing burdens on the furnisher "[a]fter receiving notice pursuant to section 1681i(a)(2)"), 1681i(a)(2) (describing reporting agency's duty to promptly notify furnisher of consumer's dispute).

A review of the complaint reveals that Hamilton, Jr. has not alleged that he advised a credit reporting agency of a dispute, nor did Hamilton, Jr. identify any such communication in his opposition to Nationstar's motion to dismiss. In the absence of such an allegation, the complaint lacks a factual basis that would support a plausible inference that Nationstar received notice from a reporting agency that Hamilton, Jr. disputed Nationstar's reports. Hamilton, Jr., therefore, has failed to state a claim under the Fair Credit Reporting Act.

### 10. *Real Estate Settlement Procedures Act (Count XIII)*

Hamilton, Jr. alleges that Nationstar violated the Real Estate Settlement Procedures Act (RESPA) by failing to respond to his written requests for documents related to his mortgage loan and by failing to address or correct problems that he raised in his requests. (Complaint ¶¶ 194-196.) Nationstar Mortgage argues that Hamilton, Jr. fails to state a claim under RESPA because he did not represent that he informed Nationstar of the specific error that it should investigate, and

---

[8] The Maine Fair Credit Reporting Act in effect when Plaintiffs filed suit, 10 M.R.S. §§ 1306-1330 (2007) (repealed), imposed similar obligations, but did not include the precondition that the consumer dispute a report with the credit reporting agency prior to bringing suit. *Id.* §§ 1320-A(3), (6), 1322, 1323. The 126th Maine Legislature repealed the prior version of the Fair Credit Reporting Act and replaced it with a new version, currently codified at 10 M.R.S. §§ 1306-1310-H (Supp. 2013). *See* L.D. 1410 (126th Legis. 2013) (effective date Oct. 9, 2013). The new version of the Maine Act requires compliance with the federal Act and with the Code of Federal Regulations. 10 M.R.S. § 1309(1) (Supp. 2013). Plaintiffs filed suit in September 2013. Consequently, their claim is governed by the prior version of the Act. *See* 1 M.R.S. § 302 ("Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."). Nevertheless, to the extent that the prior version of the Act purports to provide more expansive access to relief, it is preempted by the federal Act. 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .").

because he admits that Nationstar responded to his request for documents. (Nationstar Motion to Dismiss at 19, citing Complaint ¶¶ 41-42.)

RESPA provides that a mortgage loan service company to which a loan is transferred for servicing must notify the borrower in writing of the transfer of loan servicing, and must respond to a borrower inquiry amounting to a "qualified written request" (QWR). 12 U.S.C. § 2605(c), (e). A QWR is "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that identifies the borrower by name and account number and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). When the servicer is in receipt of a QWR, it must, within specified timeframes, acknowledge receipt of, investigate, and supply a written explanation for any action taken with respect to the QWR, including information requested or an explanation as to the reasons that the information is unavailable or cannot be obtained. *Id.* § 2605(e)(1)(A), (2)(A), (B), (C), (4).[9] If a servicer fails to comply with these requirements, it "shall be liable to the borrower for each such failure in . . . an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1). Costs and attorney fees are also available in a successful action. *Id.* § 2605(f)(3).

Hamilton, Jr. alleges that he made certain "document requests" of Nationstar, and that he requested information from Nationstar regarding his obligation to continue paying private mortgage insurance. (Complaint ¶¶ 29, 30, 32(K), 42.) Although Nationstar allegedly responded

---

[9] The Dodd–Frank Wall Street Reform and Consumer Protection Act shortened the required response time, effective January 21, 2013. *See* Pub. L. No. 111–203 § 1463(c), 124 Stat. 1376 (2010).

to his requests with two letters (one in which Nationstar stated that it could not locate information related to the private mortgage insurance issue (*id.* ¶ 42(F)), and one by which it provided information and documents concerning the PODY billing, (*id.* ¶ 41), the mere fact that Nationstar responded does not conclusively establish compliance with RESPA. The quality of the response must also be considered. Additionally, in the context of a motion to dismiss, allegations of injury or damage resulting from a RESPA violation are generally sufficient and need not be described with specificity. *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 721 (6th Cir. 2013) (reversing district court's dismissal of RESPA claim and holding that the details concerning harm and causation are issues for summary judgment); *but see, e.g.*, *Diunugala v. JP Morgan Chase Bank, N.A.*, No. 3:12-cv-02106, 2013 WL 5568737, at *5-6 (S.D. Cal. Oct. 3, 2013) (asserting that numerous courts dismiss RESPA actions absent allegations explaining the relationship between the asserted RESPA violation and a related harm). Hamilton, Jr. thus has stated a cause of action for a RESPA violation.

### 11. *Defamation (Counts XIV (libel) and XV (false light))*

Hamilton, Jr. alleges that Nationstar's posting of a notice of foreclosure on his property in May 2013, which notice represented that Bank of America owned the property, constitutes defamation. (Complaint ¶¶ 200, 210.) He also claims defamation in connection with false credit reports that Nationstar made to Transunion, Equifax, and Experian. (*Id.* ¶¶ 201, 210.)

According to the complaint, the subject notice reads, "Important—We Found This Property to be Vacant/Abandoned." (Complaint, ¶ 27(I).) Nationstar asserts that the notice constitutes an opinion rather than a statement of fact and, therefore, the notice cannot support a defamation claim. (Nationstar Motion to Dismiss at 20.) In addition, Nationstar argues that a report to a credit reporting agency is not a public statement and thus an allegation regarding a false credit report

cannot support a plausible inference that Hamilton, Jr.'s reputation was lowered in the community. (*Id.* at 21.)

To prevail on a defamation claim, a party must establish: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447, 455. A "false light" defamation claim offers a special variation on the general theme. False light claims arise from situations in which the defendant has placed the plaintiff "in a false light in the public eye" through an act of "publicity" and not mere "publication" to any third person. *Murtagh v. St. Mary's Reg'l Health Ctr.*, No. 1:2012-cv-00160-NT, 2013 WL 5348607, at *8-9 (D. Me. Sept. 23, 2013) (citing Restatement (Second) of Torts § 652E (1977)).

### a. Posted Notice

A statement couched as an opinion can be actionable under the law of defamation if the statement implies the existence of "undisclosed defamatory facts." *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991); *see also True v. Ladner*, 513 A.2d 257, 262 (Me. 1986) ("If the statement could reasonably be understood by the ordinary person as implying undisclosed defamatory facts, the question of whether it is a statement of fact or an opinion will be submitted to the jury."). The use of prefatory language such as "we found" does not automatically convert a statement to an opinion in the context of a defamation analysis. *See Garret v. Tandy Corp.*, 295 F.3d 94, 103-104 (1st Cir. 2002) (holding that "I suspect" did not render the ensuing statement an opinion as a matter of law). At this stage of the proceedings, the posting cannot be construed conclusively as an opinion.

b. <u>False Credit Reports</u>

Regardless of whether the mere reporting of negative credit information to a credit reporting agency is considered to be "publicity" for purposes of a "false light" claim, Hamilton, Jr. cannot proceed on a defamation claim based on a "false light" theory. To the extent that a defamation claim is based on credit reporting activity governed by section 1681s-2, Congress preempted the claim in the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681t(b)(1)(F); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011) (holding that section 1681h(e) does not imply that defamation claims based on malice or willful conduct remain actionable because the later-enacted section 1681t(b) sweeps more broadly); *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011) (same). Because Hamilton, Jr. cannot prevail on a defamation claim that is based on a violation of the Fair Credit Reporting Act, Hamilton, Jr.'s "false light" claim (Count XV) must be dismissed. Hamilton, Jr.'s more general defamation claim, which is limited to a claim related to the notice posted on his property (Count XIV), sufficiently states a cause of action.

12.      *Abuse of process (Count XVI)*

Neither Hamilton, Jr. nor Hamilton, Sr. assert a claim for abuse of process against Nationstar.

13.      *Fraud (Count XVII)*

Hamilton, Jr. asserts a claim for fraud arising as the result of Nationstar's loan statement of June 18, 2013, in which statement Nationstar included a $3,695.00 legal fee charge for services rendered by PODY. (Complaint ¶ 221.) He specifically contends that many of the services described in the billings were not provided. (*Id.* ¶ 224.) He further complains that certain

correspondence and statements that he received from Nationstar in 2013 included the fictitious legal fees.  (*Id.* ¶ 229.)

In Maine, "[a] person is liable for fraud if the person (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff."  *Landsberg v. Me. Coast Reg'l Health Facilities*, 640 F. Supp. 2d 108, 113 (D. Me. 2009) (quoting *Grover v. Minette-Mills, Inc.*, 638 A.2d 712, 716 (Me. 1994)).  Here, Hamilton, Jr., has not alleged how he relied to his detriment upon the purported fraudulent statement regarding the amount of the legal fees.  Dismissal of Hamilton, Jr.'s fraud claim thus is appropriate.

## C.  FEDERAL HOME LOAN MORTGAGE CORPORATION'S MOTION TO DISMISS (ECF No. 65)

Hamilton, Jr. asserts twelve of his seventeen claims against Federal Home Loan Mortgage Corporation (FHLMC[10]): breach of contract (Count I), negligence (Count II), negligent misrepresentation (Count III), intentional misrepresentation (Count IV), fraud (Count V), violation of the Unfair Trade Practices Act (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), violation of the Fair Debt Collection Practices Act (Count IX), violation of the Truth in Lending Act (Count X), violation of the Fair Credit Reporting Act (Count XII), violation of the Real Estate Settlement Procedures Act (Count XIII), defamation (Counts XIV and XV), and fraud (Count XVII).  Through its Motion to Dismiss, FHLMC requests the dismissal of all Hamilton, Jr.'s claims.

---

[10] The Federal Home Loan Mortgage Corporation is frequently referred to in the pleadings as "Freddie Mac."

1.     *Breach of contract (Count I)*

Hamilton, Jr. alleges that "at some point in time Federal Home Loan Mortgage Corporation acquired ownership" of his mortgage loan.  (Complaint ¶ 75.)  Hamilton, Jr., therefore, asserts the existence of a contractual relationship.  (*Id.* ¶ 77.)  He complains that in July 2013, he requested certain information and documents, that he did not receive a response, and that FHLMC accessed his credit report.  (*Id.* ¶¶ 80-81.)  Hamilton, Jr. also alleges that FHLMC breached its contract with him by unlawfully entering onto his property, failing to answer requests and complaint letters, reporting false information to credit reporting agencies, threatening foreclosure without actually foreclosing, providing statements that do not accurately state the amount owed, failing to identify by whom the mortgage loan is owned, failing to maintain adequate records for an accounting, failing to charge the correct interest, failing to abide by state and federal laws, and failing to comply with the state real estate brokerage law.  (*Id.* ¶ 84.)

FHLMC argues that the breach of contract claim should be dismissed because Hamilton, Jr. did not specifically identify the contractual provisions that FHLMC allegedly breached. (FHLMC Motion to Dismiss at 7-8.)   Contrary to FHLMC's argument, consistent with the reasoning herein regarding Hamilton Jr.'s contractual claim against Nationstar, Hamilton, Jr. has asserted sufficient facts to notify FHLMC of the terms that he maintains FHLMC breached. Dismissal, therefore, is not warranted.

2.     *Negligence (Count II)*

Hamilton, Jr.'s negligence claim against FHLMC is essentially the same as his claims against Nationstar.  For the reasons set forth in connection with Nationstar's Motion to Dismiss, FHLMC is entitled to dismissal of Hamilton, Jr.'s negligence claim.

### 3. *Misrepresentation (Count III, Count IV, and Count V)*

Hamilton, Jr. alleges that FHLMC failed to provide him with documents and answers in response to his requests and complaint letters, or withheld the same to mislead him. (Complaint ¶¶ 118.K, 118.L, 119-121.) Consistent with the reasoning regarding Nationstar's motion to dismiss, Hamilton, Jr.'s allegations are sufficient to state claims for misrepresentation because one plausible inference is that as the result of Hamilton, Jr.'s reliance on certain misrepresentations regarding the principal and interest owed, Hamilton Jr. did not make payments and as the result his loan and mortgage were subject to foreclosure.

### 4. *Unfair Trade Practices (Count VI)*

Federal Home Loan Mortgage Corporation's arguments in support of dismissal of Hamilton, Jr.'s UTPA claim are consistent with those presented by Nationstar. (FHLMC Motion to Dismiss at 15.) Based on the reasoning herein regarding Hamilton, Jr.'s UTPA claim against Nationstar, FHLMC is not entitled to dismissal of the UTPA claim.

### 5. *Emotional distress (Counts VII and VIII)*

The parties' arguments regarding Hamilton, Jr.'s emotional distress claims are in essence the same arguments advanced in connection with Hamilton, Jr.'s claims against Nationstar. As explained above, the allegations in the complaint do not support a claim for the negligent infliction of emotional distress (Count VIII), but do support a claim for the intentional infliction of emotional distress (Count VII).

### 6. *Fair Debt Collection Practices Act (Count IX)*

As Nationstar argued, FHLMC contends that Hamilton, Jr. did not allege facts to support the contention that FHLMC is a debt collector, or was seeking to collect a debt within the scope

of the Fair Debt Collection Practices Act. For the reasons articulated above regarding Nationstar's motion to dismiss, FHLMC is not entitled to dismissal of the FDCPA claim.

### 7. *Truth in Lending Act (Count X)*

In his Truth in Lending Act (TILA) claim, Hamilton, Jr. alleges that FHLMC knowingly charged interest above the stated rate, failed to disclose the fact that he could cancel private mortgage insurance, and allowed him to continue paying for the insurance for 117 months. (Complaint ¶¶ 173-175.) Additionally, as part of his contract claim, Hamilton, Jr. asserts that he requested of FHLMC information and documents regarding his loan, but did not receive a response. He also contends that FHLMC cannot properly account for the balances in his mortgage statements. (*Id.* ¶¶ 80, 84.) FHLMC argues that the allegations fail to state a valid TILA claim because Hamilton, Jr. merely alleges that FHLMC accessed his credit reports, and failed to respond to a letter, which conduct cannot be the basis of liability under the TILA. (FHLMC Motion to Dismiss at 11, citing Complaint ¶¶ 30, 32, 46.)

Congress enacted the TILA in 1968 "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit . . . practices." *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006) (quoting 15 U.S.C. § 1601(a)). Most commonly, TILA litigation addresses the adequacy of a lender's disclosures concerning the terms of a credit transaction or the right of the debtor to rescind the transaction within certain timeframes. *See, e.g.*, 15 U.S.C. §§ 1631, 1632, 1635, 1639, 1639d. In addition to its disclosure requirements, TILA imposes various standards on creditors in the home loan context, including an obligation to make a good faith determination of a borrower's ability to repay a loan and perform appraisals meeting certain standards. *Id.* §§ 1639c, 1639h. TILA also imposes certain obligations on mortgage loan creditors in the post-origination context. *See, e.g.*, *id.* §§ 1639a (loss mitigation plans), 1639f

(prompt crediting of payments), 1639g (provision of accurate payoff balance upon request), 1641(g) (notice of new creditor). TILA's civil liability provision permits individuals to sue for damages based on a creditor's failure to comply with "any requirement" of Parts B, D, and E of the Act. *Id.* § 1640(a). In addition to other remedies, TILA permits recovery "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000." *Id.* § 1640(a)(2)(A)(iv). TILA also provides for liability of assignee creditors. *Id.* § 1641.

Given that Hamilton, Jr. has in fact alleged that FHLMC provided inaccurate information, given that the TILA requires that lenders provide accurate information, and given that the TILA authorizes a private cause of action for violations of the TILA, Hamilton, Jr., has stated a claim for a violation of the TILA.

8.    *Fair Credit Reporting Act (Count XII)*

FHLMC "adopts and incorporates the arguments asserted in" the Nationstar Motion to Dismiss Hamilton, Jr.'s claim under the FCRA. (FHLMC Motion to Dismiss at 11-12.) As explained in the discussion of Nationstar's Motion to Dismiss, Hamilton, Jr. does not allege that he disputed the alleged reports directly to any of the credit reporting agencies, which dispute is a prerequisite to maintaining a FCRA claim. Accordingly, Hamilton, Jr. has not alleged a claim under the FCRA.

9.    *Real Estate Settlement Procedures Act (Count XIII)*

FHLMC requests dismissal of Hamilton, Jr.'s claim under the Real Estate Settlement Procedures Act because he "fails to allege that [FHLMC] did not investigate an alleged error in his account in violation of RESPA." (FHLMC Motion to Dismiss at 12.) Otherwise, FHLMC

"adopts and incorporates" the arguments of Nationstar. For the reasons explained in connection with Nationstar's motion, dismissal is not appropriate at this stage of the proceedings.

10.    *Defamation (Counts XIV and XV)*

The parties' arguments regarding Hamilton, Jr.'s defamation claim are similar, if not identical, to the arguments advanced in connection with Nationstar's motion to dismiss. The reasoning herein regarding the defamation claims is equally applicable to FHLMC's motion. FHLMC thus would be entitled to dismissal of Hamilton, Jr.'s "false light" defamation claim (Count XV), but dismissal would not be appropriate on the defamation claim arising out of the notice(s) of foreclosure posted on Hamilton, Jr.'s property.

11.    *Fraud (Count XVII)*

Because Hamilton, Jr.'s fraud claim against FHLMC is essentially the same claim as the fraud asserted against Nationstar, the claim fails for the reasons explained above. FHLMC, therefore, is entitled to dismissal.

### D.  PHILLIPS, OLORE, DUNLAVEY & YORK, P.A.'S MOTION TO DISMISS (ECF No. 15)

Hamilton, Jr. asserts five claims against PODY and Attorney York:  a claim under the UTPA (Count VI), a claim of defamation by libel (Count XIV), a claim of defamation by false light publicity (Count XV), a claim of abuse of process (Count XVI), and a claim of fraud (Count XVII). Hamilton, Sr. joins in the libel claim, the false light claim, and the abuse of process claim.

1.    *Unfair Trade Practices (Count VI)*

Maine's Unfair Trade Practices Act authorizes a cause of action for someone "who purchases or leases goods, services or property . . . and thereby suffers any loss of money or property." 5 M.R.S. § 213(1). With respect to PODY and York, Plaintiffs incorporate all of the allegations in the complaint, and assert that the UTPA claim is based on "a pattern of unfair and

deceptive acts" committed "in the conduct of their trade or business." (Complaint ¶ 150.) PODY and York request dismissal because the allegations do not reflect that Hamilton, Jr. purchased any good or service from them, making the UTPA inapplicable. (PODY Motion to Dismiss at 5-6.)

Although Maine's UTPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce," 5 M.R.S. § 207, and defines "trade or commerce" to include the sale of "any services," *id.* § 206(3), the UTPA's private remedies provision authorizes a court action only for a person "who purchases or leases goods, services or property . . . primarily for personal, family or household purposes and thereby suffers any loss of money or property . . . as a result of the use of employment by another person of a method, act or practice declared unlawful by section 207[.]" *Id.* § 213(1).

While the UTPA authorizes a civil action against a person or entity from whom the plaintiff purchased or leased goods, services, or property, *Hoglund ex rel. Johnson v. DiamlerChrysler Corp.*, 102 F. Supp. 2d 30, 32 (D. Me. 2000) ("The UTPA . . . created a remedy for someone who was deceived in a purchase he made-initially . . ."), the issue is whether attorneys performing foreclosure services are providing a service that is "purchased," ultimately, by the mortgagor. As alleged, the services provided by PODY and York were incurred by the mortgagee in connection with the foreclosure action. Although the mortgage agreement between the mortgagor and mortgagee might permit the mortgagee to recover from the mortgagor the attorney fees that the mortgagee incurred in a foreclosure action, it defies logic and common sense to suggest that in this context, the mortgagor "purchased" the services from the mortgagee's attorney. This conclusion is consistent with decisions of courts in other states which, applying generally similar consumer protective statutes, have concluded that attorneys providing foreclosure services are not subject to suits by defaulting mortgagors. *E.g., Clark v. Lender Processing Servs., Inc.*, 949 F. Supp. 2d 763,

776 (N.D. Ohio 2013), *aff'd sub nom. Clark v. Lender Processing Servs.*, No. 13-3799, 2014 WL 1408891 (6th Cir. Apr. 14, 2014); *Steinberg v. Fed. Home Loan Mortg. Corp.*, 901 F. Supp. 2d 945, 954 (E.D. Mich. 2012), *reconsideration denied,* No. 11-CV-15182, 2013 WL 3455615 (E.D. Mich. July 9, 2013). PODY and Attorney York, therefore, are entitled to dismissal of the UTPA claim.

### 2. *Defamation (Counts XIV and XV)*

The Hamiltons' defamation claims against PODY and York focus on the filing in the Registry of a foreclosure notice in connection with the foreclosure proceedings, and the failure to remove or release the notice following dismissal of the foreclosure action. (Complaint ¶ 202; Plaintiffs' Opposition to PODY's Motion at 2-3.) PODY and York maintain that because they were required by law to file the notice, their publication of the material is absolutely privileged. (PODY Motion to Dismiss at 6-9.) Additionally, they argue that the law did not impose a duty on them to release or remove the notice from the Registry. (*Id.* at 8.)

"A party to a private litigation is privileged to publish slanderous material concerning the title of another 'in the institution of ... a judicial proceeding in which he participates, if the matter has some relation to the proceeding.'" *Raymond v. Lyden*, 1999 ME 59, ¶ 6, 728 A.2d 124, 126 (quoting Restatement (Second) of Torts § 587 (1977)). The privilege is absolute, provided that the statements at issue "are pertinent to the judicial proceeding" and not "unnecessary or unreasonable." *OfficeMax Inc. v. Sousa*, 773 F. Supp. 2d 190, 237 (D. Me. 2011) (quoting *Simon v. Navon*, 951 F. Supp. 279, 282 (D. Me. 1997)).

Under Maine law, PODY and York were required to file a notice in the Registry in connection with the commencement of foreclosure proceedings. 14 M.R.S. § 6321. As a matter of law, therefore, the filing of the notice cannot support a claim of defamation unless the filing was

unnecessary or unreasonable. Furthermore, the filing of the notice merely stated that a foreclosure proceeding had been commenced against the property in question, which statement was accurate. "[T]ruth is an absolute defense to a charge of defamation." *Garrett v. Tandy Corp.*, 295 F.3d 94, 106 (1st Cir. 2002) (applying Maine law).

The Hamiltons do not challenge this basic argument. Instead, the gravamen of their claim focuses on the failure of PODY and York to "release" the notice following dismissal of the foreclosure action. (Plaintiffs' Opposition to PODY Motion at 2-3.) In support of their argument, they contend that PODY and York "were the only ones that could release the foreclosure document as they initiated it." (*Id.* at 4.) The Hamiltons cite no legal authority that obligates a party to "release" a foreclosure notice filed pursuant to 14 M.R.S. § 6321. Presumably, a party who successfully defends against a foreclosure action would file in the Registry a certified copy of the controlling court order. Given the absence of any legal obligation to "release" the notice, the Hamiltons cannot rely upon the failure to release to support their defamation claim.

### 3.   *Abuse of Process (Count XVI)*

The Hamiltons' abuse of process claim is evidently based on the fact that counsel commenced the foreclosure action in September 2011, but did not complete service on Hamilton, Jr. until July 2012, and on Hamilton, Sr. until March 2012. They specifically allege that the "failure to serve the complaint within ninety days [was] abuse of process." (Complaint ¶ 216.D.) In their opposition to the motion to dismiss, the Hamiltons clarify that their claim is based on the failure to serve the complaint timely, and for the filing of the notice in the Registry of Deeds. (Plaintiffs' Opposition to PODY Motion at 6-7.)

In Maine, a claim for abuse of process consists of three elements: (1) that the defendant "initiated or used a court document or process in a manner not proper in the regular conduct of

proceedings," (2) that the defendant did so "with the existence of an ulterior motive," and (3) that the plaintiff suffered damage as a consequence. *Tanguay v. Asen*, 1998 ME 277, ¶ 5, 722 A.2d 49, 50. However, "[r]egular use of process, such as filing a law suit, cannot constitute abuse, even if a decision to act or a decision not to act, was influenced by a wrongful motive." *Id.* Simply stated, the Hamiltons' allegations regarding the delay in the service of the complaint, the filing of the notice in the Registry, and the inaccurate billing cannot and do not constitute an abuse of process.

### 4. Fraud (Count XVII)

Hamilton, Jr. alleges that PODY and York engaged in an act of fraud when they submitted a billing for legal fees that included fees for services they never performed. (Complaint ¶¶ 221-226.) As explained above, in Maine, "[a] person is liable for fraud if the person (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Landsberg*, 640 F. Supp. at 113. Here, the Hamiltons arguably have failed to assert a misrepresentation of a material fact. More importantly, even if the Complaint is construed to allege that PODY and York made a representation to Hamilton, Jr., the Complaint contains no allegation that Hamilton, Jr. relied to his detriment on a statement made by PODY or York. Dismissal, therefore, is appropriate.

### CONCLUSION

Based on the foregoing analysis, it is recommended that the Court grant in part and deny in part Nationstar's Motion to Dismiss (ECF No. 10); grant in part and deny in part the Federal Home Loan Mortgage Corporation's Motion to Dismiss (ECF No. 65); and grant the Motion to

Dismiss of Phillips Olore Dunlavey & York P.A. and Brent York, Esq. (ECF No. 15). The more specific recommendation is that the Court dismiss the following claims:[11]

*Against Nationstar*:

Count II (negligence);
Count VIII (negligent infliction of emotional distress);
Count XI (Fair Credit Billing Act);
Count XII (Fair Credit Reporting Act);
Count XIV (libel, *to the extent it is based on credit reporting activity*);
Count XV (false light defamation);
Count XVII (fraud);

*Against the Federal Home Loan Mortgage Corporation*:

Count II (negligence);
Count VIII (negligent infliction of emotional distress);
Count XII (Fair Credit Reporting Act);
Count XIV (libel, *to the extent it is based on credit reporting activity*);
Count XV (false light defamation);
Count XVII (fraud);


*Against Phillips Olore Dunlavey & York P.A. and Brent York, Esq.*:

Count VI (UTPA);
XIV (libel);
XV (false light);
XVI (abuse of process); and
XVII (fraud). [12]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[11] The recommendation is also that the Court deny the motions as to the claims for which the Court has not recommended dismissal.

[12] If the Court dismisses all claims against PODY and Attorney York, as recommended, all claims asserted by Hamilton, Sr. will be dismissed from the case.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

May 8, 2014