UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD E. HAMILTON, Jr. *et al.,*    )
    )
    Plaintiffs    )
    )
    v.    )    2:13-cv-00414-JAW
    )
FEDERAL HOME LOAN MORTGAGE    )
CORPORATION D/B/A FREDDIE MAC,    )
*et als.,*    )
    )
    Defendants.    )

## RECOMMENDED DECISION ON MOTION TO DISMISS

In this action, Plaintiff Richard Hamilton, Jr. asserts multiple claims against, *inter alia*, Defendants Bank of America Corporation, Bank of America, N.A., and BAC Home Loan Servicing, LP (BAC). Plaintiffs' 17-count complaint arises out of a home loan and mortgage deed executed by Hamilton, Jr. in May 2000. The matter is before the Court on the Bank of America Defendants' Motion to Dismiss (ECF Nos. 81, 81-1).[1]

Following a review of the pleadings, and after consideration of the parties' arguments, as explained below, the recommendation is that the Court grant in part and deny in part the motion.

### FACTUAL BACKGROUND

The facts set forth herein are derived from Plaintiffs' Complaint, which facts are deemed true for purposes of evaluating Defendants' motion to dismiss.[2] The facts may also be informed by any exhibits attached to Plaintiffs' Complaint, to the extent they are material to the motion to dismiss. *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) ("On a motion to dismiss,

---

[1] The Court referred the motion for report and recommended decision.

[2] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto[.]").

On May 19, 2000, Richard Hamilton, Jr. ("Plaintiff")[3], a 28 year old, first-time homebuyer, purchased a mobile home and land in New Gloucester, Maine. The property abuts a junkyard. Plaintiff financed the purchase through a loan from Bank of America. As part of the transaction, Plaintiff granted a mortgage on the property to Bank of America. Before approving the loan and advancing the loan proceeds, Bank of America arranged for a survey and appraisal of the subject property.

Although Plaintiff moved to Florida in 2005, he made payments on the loan through September 2007, including some "substantial additional amounts . . . paid on principal." (Complaint ¶ 17.A, ECF No. 40-18.)

In this action, Plaintiffs assert the following:

- Plaintiff received only unsigned copies of the closing documents, and never received (but paid for) an owner's policy of title insurance. (*Id.* ¶ 15.)

- The appraiser and the surveyor, both of whom the Bank retained, knew that a junkyard encroached on the property, but did not disclose this fact to Plaintiff. (*Id.* ¶¶ 23-24.)

- Beginning in 2008 and continuing into 2013, the Bank changed the locks on the mobile home, posted the property for sale or rent, represented to neighbors that a foreclosure had occurred, and posted the property as vacant or abandoned. (*Id.* ¶ 27.)

---

[3] Plaintiff's father, Richard Hamilton, Sr., also asserts claims in this action. However, Hamilton, Sr. does not assert his claims against the Bank of America Defendants.

- In 2007, 2010, and 2013, Plaintiff repeatedly requested, but did not receive, from the Bank copies of all closing documents, the "loan activity report," and escrow and PMI information.  (*Id.* ¶ 28.)

- In 2007 and 2008, Plaintiff complained to the Bank, but did not receive a response, about junkyard issues, a PMI issue, the change of locks, and various other issues.  (*Id.* ¶ 30.)

- In 2012 and 2013, Plaintiff disputed his debt, complained of property damage and hazardous waste, and asserted that the property was not abandoned.  (*Id.*)

- In 2013, Plaintiff received a letter from Bank of America stating that the city had imposed a code violation on the property.  (*Id.* ¶ 30.G.)

- The Bank provided Plaintiff with the incorrect 1098 mortgage interest statements for each of the years after 2004 and before 2011.  (*Id.*  ¶ 31.)

- The Bank failed to inform Plaintiff about PMI termination at the closing and did not send him annual notices about PMI termination and cancellation at any time.  (*Id.* ¶ 32.)  Plaintiff, therefore, did not know his PMI premiums could be cancelled.

- Beginning in 2004, the Bank of America d/b/a BAC Home Loans Servicing, LP, made false reports concerning Plaintiff to credit reporting agencies, and failed to inform the agencies that Plaintiff disputed their reports.  (*Id.* ¶ 33.)

- Plaintiff has requested from Defendants, but has not received, information about his private mortgage insurance.  (*Id.* ¶ 42.)

- Beginning in January 2004, the Bank and BAC's electronic monthly statements have not accurately stated the amount of principal, interest, and escrow.  (*Id.* ¶ 39.)

- Before the closing, the Town of New Gloucester was supposed to "sign off" that the land and residence were in order, but did not do so. (*Id.* ¶ 47.A.)

- The Bank has not paid Plaintiff the correct interest on his escrow account. Plaintiff never abandoned the property; cannot sell or rent the property because of a preexisting hazardous waste problem; has been in a "tense and dire situation;" is concerned about whether he actually owns 2.03 acres; has a property description in his mortgage deed that is incorrect; and suffers "mental anguish, distress, anxiety, pain, indignation, despair, severe headaches, severe tension, severe trauma, and is unable to eat, sleep, and cope with daily life." (*Id.* ¶ 47.)

In November 2009, the Bank informed Plaintiff that BAC would service his loan. BAC is identified as lienholder 1 on Plaintiff's homeowner's policy for the period of September 2010 through March 2013. (*Id.* ¶ 34.) In March 2013, Plaintiff learned that Nationstar would service his loan. Subsequently, Nationstar was identified as lienholder 1 on Plaintiff's homeowner's policy. (*Id.* ¶ 35.)

The Bank sent Plaintiff three separate letters, one in 2007 and two in 2009, warning of a possible foreclosure. In 2010 and 2011, Phillips Olore Dunlavey & York P.A. (PODY), sent Plaintiff a warning of a possible foreclosure. (*Id.* ¶ 36.) Bank of America sent another such letter in 2012, followed by a similar letter from another law firm, Shapiro & Morley LLC, in 2013, and one from Nationstar in 2013. (*Id.*)

In September 2011, the Bank filed a complaint for foreclosure in Maine District Court. Because of an issue related to service of the complaint, in July 2012, the district court dismissed the complaint without prejudice. In this case, Plaintiff complains of the grief and lost time caused by "this vexatious foreclosure action." (*Id.* ¶ 38.)

On March 24, 2013, Shapiro & Morley wrote to Plaintiff to advise that Nationstar referred the loan for foreclosure, that the creditor was Nationstar, that the amount of the debt was $78,952.15, and that verification of the debt would be provided if Plaintiff disputed the debt. (*Id.* ¶ 43.) Plaintiff disputed the debt by letter in April 2013, and requested copies of all documents that reflected that the debt was owed to Nationstar. Shapiro & Morley did not verify the debt or otherwise provide documents. (*Id.*)

Plaintiff maintains that the Bank and BAC have violated consumer protection laws through unfair and deceptive practices, including wrongful origination and foreclosure practices. Plaintiff also alleges that the Bank and BAC violated a prior consent judgment. (*Id.* ¶ 45.) In support of his claim, Plaintiff cites litigation by the United States government and 49 states against the Bank, BAC, and others for misconduct related to the origination and servicing of single family residential mortgages. (*Id.*)

Based on these and other factual allegations, Plaintiff asserts 17 counts against the Bank of America Defendants, as follows:

I:     Breach of Contract

II:     Negligence

III:     Negligent Misrepresentation

IV:     Intentional Misrepresentation

V:     Fraud (concealment)

VI:     Unfair and Deceptive Trade Practices

VII:     Intentional Infliction of Emotional Distress

VIII:     Negligent Infliction of Emotional Distress

IX:     Fair Debt Collection Practices Act

X:     Truth in Lending Act

XI:    Fair Credit Billing Act

XII:   Fair Credit Reporting Act

XIII:  Real Estate Settlement Procedures Act

XIV:   Defamation (libel)

XV:    "False Light" Defamation

XVI:   Abuse of Process

XVII:  Fraud (legal fees)

As to damages, Plaintiff seeks to recover:

Legal costs, telephone and copying costs, court and sheriff costs, travel costs, research costs, time to prepare answer and counterclaim on the complaint for foreclosure, loss of bargain, loss on betterments and improvements, loss on interest on escrow account, loss on sale of residence, loss on dis-possession of residence, loss on private mortgage insurance premiums, loss on enjoyment of residence, carrying costs on BOA, N.A. mortgage loan, carrying costs on Citifinancial mortgage loan, carrying costs on Hamilton, Sr. mortgage loan, carrying costs on electricity, carrying costs on real estate taxes, carrying costs on house insurance, environmental costs to date, environmental costs in future, surveying costs to date, surveying costs in future, loss on rental income, emotional distress, defamation, false light, loss of reputation, medical costs, loss of earnings, excess fee charges, and excess interest costs.

(*Id.* ¶ 48.)

## DISCUSSION

### A.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme*

*Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue.  *Id.*

**B.    Discussion**

Through their motion, the Bank of America Defendants seek the dismissal of all claims against them.

**1.    *Breach of Contract (Count I)***

Plaintiff's contract claim against the Bank of America Defendants is based on the residential mortgage loan contract and the mortgage loan servicing contract.  He asserts that Defendants were required to work in his best interest, to make a loan on reasonable terms and conditions, and to provide full disclosure.  He alleges breach of multiple pre-closing contractual obligations.  In addition, Plaintiff complains that after closing, Defendants failed to provide certain information, failed to account properly for payments and escrow interest, engaged in unlawful pre-foreclosure and foreclosure-related activity, and violated the consumer protection statutes that inform several of his other counts.  (Complaint ¶¶ 51-67.)

Defendants argue that to the extent that Plaintiff relies on breaches that allegedly occurred with the loan origination and closing, the contract claim must be dismissed because the alleged activities are outside the six-year limitation period.  (Motion to Dismiss Memorandum at 8, ECF No. 81-1.)  In support of this argument, Defendants attached to the motion copies of the note and mortgage, which reflect that the documents were executed on July 21, 2000.  (Note, ECF No. 81-2; Mortgage, ECF No. 81-3.)  Plaintiff maintains that he "will only identify claims for the period of September 20, 2007, through the present date," which is exactly six years prior to the filing of his complaint in state court.  (Plaintiff's Opposition at 2, ¶ 3, ECF No. 91.)  However, Plaintiff

asserts that he "is not waiving or giving up his right to pursue claims prior to September 20, 2007, based on tolling and based on concealment." (*Id.*, ¶ 4.)

"Under Rule 12(b)(6), a defendant may advance a statute of limitation defense when the passage of time prevents a plaintiff from stating a claim for which relief can be granted. However, the facts supporting the defense should be clear on the face of the plaintiff's pleadings." *Richards v. City of Bangor, Me.*, 878 F. Supp. 2d 271, 276 (D. Me. 2012) (citing *Santana–Castro v. Toledo–Davila,* 579 F.3d 109, 113–14 (1st Cir. 2009)). A court may look behind the pleadings in some instances, including to review matters of public record and documents that are central to, incorporated into, or sufficiently referred to in the complaint. *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008); *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993).

In Maine, "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards," except as otherwise indicated. 14 M.R.S. § 752. Claims for breach of contract are subject to the six-year limitation period, *Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599, 601, except in circumstances that are not applicable in this case. [4]

Plaintiff's closing occurred in May 2000, more than 13 years before he filed this action. Consequently, Plaintiff's many complaints about the circumstances of the loan origination and closing are barred by the passage of time. Plaintiff, however, complains of various other alleged breaches occurring subsequent to his default on the debt. When all of these alleged breaches occurred is not entirely clear. At this stage of the proceedings, therefore, the statute of limitations does not bar all of Plaintiff's contractual claims.

---

[4] The limitation period for "personal actions" on certain promissory notes, including promissory notes signed in the presence of an attesting witness, are subject to a 20-year limitation period. 14 M.R.S. § 751. Because Defendants did not assume any obligations in the note, or sign the note, Plaintiff does not have a personal action based on the promissory note. Instead, Plaintiff's breach of contract claim is based on duties arising out of the mortgagor-mortgagee relationship.

Defendants' remaining arguments for dismissal are premised on the lack of specificity in Plaintiff's allegations. As explained in the prior Recommended Decision in this matter (ECF No. 84 at 11), Plaintiff's general allegations regarding breach of contract are sufficient to afford notice and enable Defendants to defend against the claim.

## 2.    *Negligence (Count II)*

Defendants assert the statute of limitation argument with respect to any part of Plaintiff's negligence claim that is premised on loan origination and closing. (Motion to Dismiss Memorandum at 4-5.) Additionally, Defendants contend that dismissal is warranted because the law does not impose a duty in tort under the circumstances of this case. (*Id.* at 7-8.)

As Defendants argue, Plaintiff has not asserted facts to establish that Defendants owe a common law duty of care outside the contractual relationship. "A mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer." *Camden Nat'l Bank v. Crest Constr., Inc.,* 2008 ME 113, ¶ 11, 952 A.2d 213, 216. Although Plaintiff has pled the existence of a special relationship in an apparent effort to allege a duty in tort, he fails to assert facts that constitute a special relationship. Instead, Plaintiff's allegations are entirely conclusory and fail to state a claim.[5]

## 3.    *Misrepresentation (Counts III, IV, and V)*

Maine law recognizes a claim for negligent misrepresentation under the following circumstances:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

---

[5]    Because Plaintiff's negligence claim is subject to the six-year limitation period, certain occurrences of which Plaintiff complains would also be barred by the limitations period.

exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout,* 568 A.2d 829, 830 (Me. 1990) (adopting the formulation of the tort as stated in the Restatement (Second) of Torts § 552(1) (1977)).

The claim for intentional misrepresentation is similar, but requires proof by clear and convincing evidence: (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage. *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 47 (D. Me. 2010) (citing *Rand v. Bath Iron Works Corp.,* 2003 ME 122, ¶ 9, 832 A.2d 771, 773 (Me. 2003)).

In support of their request for dismissal of the misrepresentation claims, Defendants cite the statute of limitations and contend that Plaintiff's claims are not actionable because they do not involve affirmative representations, and that Plaintiff's allegations of reliance and harm are conclusory. (Motion to Dismiss Memorandum at 10-11.)

The six-year statute of limitations governs Plaintiff's misrepresentation claims. Plaintiff has not alleged any circumstances under which the limitations period could be extended.[6] Because Plaintiff's allegations clearly demonstrate that he was aware, prior to September 20, 2007, of the facts that inform his allegations relating to the origination and closing of the subject loan, Plaintiff's claims, asserted in Counts III and IV, regarding the representations and omissions made in connection with loan origination and closing should be dismissed.

---

[6] The six-year limitation period may be extended in cases of fraud, but an extension requires a showing of fraudulent concealment of the cause of action. 14 M.R.S. § 859. Even if fraudulent concealment is shown, an extension simply means that the six-year limitation period begins to run upon discovery of the cause of action. *Id.*

As part of his misrepresentation claim, Plaintiff also alleges Defendants' provided inaccurate billing statements and made misrepresentations regarding an obligation to pay mortgage insurance premiums. The allegations are sufficient to raise plausible inferences of reliance and injury. Thus, the misrepresentation claims should not be dismissed in their entirety.[7]

Finally, with respect to the claims of intentional misrepresentation and fraud by concealment, Defendants argue that Plaintiff has failed to satisfy the particularity requirements of Rule 9(b). (Motion to Dismiss Memorandum at 8-10.) Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be set forth with particularity. "The heightened requirement serves '(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations.'" *Enercon v. Global Computer Supplies, Inc.*, 675 F. Supp. 2d 188, 191 (D. Me. 2009) (quoting *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir. 1987)). To plead fraud with particularity, a plaintiff "usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys,* 374 F.3d 23, 29 (1st Cir. 2004). This requirement does not extend to "the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980).

To the extent that Plaintiff's misrepresentation claims are premised on (1) representations contained in monthly mortgage statements, annual mortgage interest statements, annual notices

---

[7] In addition, to the extent Plaintiff complains of misrepresentation through omission, Plaintiff must demonstrate the breach of a fiduciary duty or a statutory duty to disclose the withheld information. *Glynn v. Atl. Seaboard Corp.*, 1999 ME 53, ¶ 12, 728 A.2d 117, 120. This requirement restricts the scope of Plaintiff's misrepresentation claims, but it would not eliminate all aspects of the claims. For that reason, the better course is to address any alleged statutory duty, or fiduciary duty related to accounting services, in the context of a summary judgment motion.

related to PMI termination, and (2) the withholding of information that Defendants might be required by law to provide, Plaintiff's allegations are minimally sufficient to satisfy Rule 9(b). In the event that Plaintiff seeks to advance any other fraud theory concerning mortgage loan reports or disclosures,[8] Plaintiff has failed to articulate the theory with sufficient particularity to survive the Defendants' Motion to Dismiss.

### 4. *Unfair Trade Practices (Count VI)*

Maine's Unfair Trade Practices Act (UTPA) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S. § 207. To be "unfair" an act or practice "must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." *Bangor Publ'g Co. v. Union St. Mkt.*, 1998 ME 37, ¶ 7, 706 A.2d 595, 597. To be "deceptive," an act or practice must consist of "a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances." *State v. Weinschenk*, 2005 ME 28, ¶ 17, 868 A.2d 200, 206. To be "material", the matter must be "important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* (quoting *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984)).

The UTPA authorizes a private right of action for anyone "who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2." 5 M.R.S. § 213(1). A loss of money or

---

[8] Plaintiff asserts a separate fraud claim in Count XVII related to legal fees, discussed below.

property is required in order for a plaintiff to have an actionable claim for relief under the UTPA. 5 M.R.S. § 213(1); *Poulin v. Thomas Agency*, 746 F. Supp. 2d 200, 206 (D. Me. 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 660 F. Supp. 2d 94, 102 (D. Me. 2009).

Defendants argue that Plaintiff's claim under the UTPA is not supported by allegations of economic damages or facts demonstrating fraud. According to Defendants, the appropriate assessment of Plaintiff's complaint is that he "could have avoided [problems related to foreclosure] by paying his Mortgage." (Motion to Dismiss Memorandum at 11-12.) Without commenting on the merit of Defendants' argument, Plaintiff's allegations, which include misrepresentation claims, are sufficient to state a claim under the UTPA.

### 5.     *Intentional Infliction of Emotional Distress (Count VII)*

Defendants argue that Plaintiff's allegations are insufficient to state a claim of intentional infliction of emotional distress because they are conclusory and fail to describe extreme and outrageous conduct. (*Id.* at 12-13.) Not insignificantly, Plaintiff's claim of intentional infliction of emotional distress, asserted in Count VII, incorporates all of the allegations of the complaint. Plaintiff's claim, therefore, includes a claim that Defendants made representations "with the knowledge that they were false or in reckless disregard of whether they were true or false" (i.e., with malice).[9] If true, this would be conduct "so extreme and outrageous as to exceed all possible bounds of decency, and be regarded as atrocious and utterly intolerable in our civilized society." *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 617 (Me. 1996) (internal quotation marks omitted). Defendants, therefore, are not entitled to dismissal of Count VII.

---

[9] Plaintiff's Complaint ¶ 131.

### 6. *Negligent Infliction of Emotional Distress (Count VIII)*

Defendants argue Plaintiff has failed to allege a duty in tort that could support Plaintiff's negligent infliction of emotional distress (NIED) claim. (Motion to Dismiss Memorandum at 12.) The Maine Supreme Judicial Court "has recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances." *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18, 25. None of the circumstances is present in this case. As explained above, Plaintiff has failed to allege facts that support an inference that a special relationship exists between Defendants and Plaintiff, and the mortgagor-mortgagee relationship does not generate a tort duty of care. *Crest Constr.,* 2008 ME 113, ¶ 11, 952 A.2d at 216. In the absence of a special relationship or any other basis for the imposition of a duty in tort, Plaintiff has not alleged a claim upon which he can recover for the negligent infliction of emotional distress.

### 7. *Fair Debt Collection Practices Act (Count IX)*

The Maine Fair Debt Collection Practices Act, 32 M.R.S. §§ 11001-11054, prohibits certain debt collection practices, including false representations regarding the amount of the debt and false reporting of credit information. *Id.* § 11013(2)(B), (H). The Act authorizes a private cause of action for those who are harmed as the result of such practices. *Id.* § 11054(1). Federal law prohibits the same conduct, and also authorizes private civil suits under the federal Fair Debt Collection Practices Act. 15 U.S.C. §§ 1692e(2), (8), 1692k.

The Bank of America Defendants assert that "BANA" (Bank of America N.A.) is not a debt collector for purposes of these Acts. (Motion to Dismiss Memorandum at 13-14.) The FDCPA defines "debt collector" as a person or entity "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §

1692a(6). The Maine Fair Debt Collection Practice Act definition is identical. 32 M.R.S. § 11002(6).

As a general rule, creditors, mortgagees, and mortgage service companies do not qualify as "debt collectors." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). Here, Plaintiff does not assert facts from which the Court can draw a plausible inference that the Bank of America N.A. or the Bank of America Corporation regularly engages in collection activity on behalf of others. However, because Plaintiff alleges that BAC Home Loan Servicing LP began servicing Plaintiff's loan after it was in default (Complaint ¶ 34), Plaintiff has asserted a plausible claim that BAC qualifies as a debt collector. A mortgage service company can qualify as a "debt collector" if the debt in question was in default when it was assigned. *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (citing *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012)). Plaintiff's claim against Defendants Bank of America, N.A., and Bank of America Corporation should be dismissed, while his claim against BAC should survive Defendants' motion.

### 8. Truth in Lending Act (Count X)

Plaintiff alleges that the Bank of America Defendants knowingly charged interest above the contract rate, failed to inform Plaintiff that he could opt out of private mortgage insurance, and knowingly allowed him to pay PMI for 117 months more than required. (Complaint ¶¶ 173-175.) The Bank of America Defendants argue that the Truth in Lending Act (TILA) claim against them is time barred and fails to state a claim. (Motion to Dismiss Memorandum at 5-6, 15.)

Congress enacted the TILA in 1968 "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit . . . practices." *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006) (quoting 15 U.S.C. § 1601(a)). Most commonly,

TILA litigation addresses the adequacy of a lender's disclosures regarding the terms of a credit transaction or the right of the debtor to rescind the transaction within certain timeframes. *See, e.g.*, 15 U.S.C. §§ 1631, 1632, 1635, 1639, 1639d. In addition to its disclosure requirements, TILA imposes various standards on creditors in the home loan context, including an obligation to make a good faith determination of a borrower's ability to repay a loan and perform appraisals that satisfy identified standards. *Id.* §§ 1639c, 1639h. TILA also imposes certain obligations on mortgage loan creditors in the post-origination context. *See, e.g.*, *id.* §§ 1639a (loss mitigation plans), 1639f (prompt crediting of payments), 1639g (provision of accurate payoff balance upon request), 1641(g) (notice of new creditor). TILA's civil liability provision permits individuals to sue for damages based on a creditor's failure to comply with "any requirement" of certain parts of the Act.[10] *Id.* § 1640(a). In addition to other remedies, TILA permits recovery "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000." *Id.* § 1640(a)(2)(A)(iv). TILA also provides for liability of assignee creditors. *Id.* § 1641.

TILA includes a one-year statute of limitation for claims brought pursuant to section 1640. *Id.* § 1640(e). Claims involving origination matters or TILA's mortgage requirements are generally subject to a three-year limitation period. *Id.* TILA's right of rescission expires three years from the consummation of the transaction. *Id.* § 1635(f). To the extent Plaintiff seeks to base his TILA claim on matters related to loan origination or the right or rescission, the claims are barred by the limitations period.

Plaintiff asserts in his complaint and in his opposition memorandum that his TILA claim is based on interest charges that exceeded the contract rate, failure to disclose that he could opt out

---

[10] Parts B, D, and E of the Act.

of PMI, the collection of PMI he did not need to pay, and improper use of his escrow account. (Opposition at 20, ECF No. 91.) Plaintiff's complaint can be construed to allege that Defendants' conduct occurred within the one-year period prior to the commencement of Plaintiff's action. Plaintiff thus has successfully stated a claim.

### 9. *Fair Credit Billing Act (Count XI)*

Defendants argue that they are not subject to liability under the Fair Credit Billing Act because the FCBA does not apply to mortgage loans. (Motion to Dismiss Memorandum at 15-16.) "[T]he FCBA generally is not applicable to mortgage loans because it only applies to creditors offering open-end credit plans, such as credit cards." *Latonnelle v. CitiMortgage, Inc.*, No. 1:10-CV-04066-TWT, 2011 WL 4974839, at *3 (Aug. 22, 2011), *report and recommendation adopted,* 2011 WL 4974827 (N.D. Ga. Oct. 18, 2011). Courts routinely dismiss FCBA claims involving billing disputes brought against mortgage loan lenders or service providers where such loans are not structured as open-end credit plans. *See id.*; *Karim v. Bank of Am., N.A.*, No. 1:10-cv-00519, 2011 WL 4457212, at *7 (May 6, 2011), *report and recommendation adopted,* 2011 WL 4458765 (D. R.I. Sept. 23, 2011); *Phan v. Accredited Home Lenders Holding Co.*, No. 3:09-cv-00328, 2010 WL 1268013, at *5 (M.D. Fla. Mar. 29, 2010) ("An open end credit plan means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."); 15 U.S.C. §§ 1602(j), 1666. Plaintiff has not alleged that the mortgage loan in this case was an open end credit plan or that it was anything other than a standard mortgage loan. Dismissal of Count XI, therefore, is warranted.

### 10.     *Fair Credit Reporting Act (Count XII)*

Defendants argue that they are not subject to liability under the Fair Credit Reporting Act because the allegations do not reflect that Plaintiff ever disputed his credit report with a credit reporting agency, or that an agency notified the Bank of America Defendants of the existence of a dispute.  (Motion to Dismiss Memorandum at 15-16, cross-referencing Nationstar Mortgage's Motion to Dismiss at 17-18, ECF No. 10-1.)

The federal Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), obligates those who furnish reports to credit reporting agencies to refrain from reporting inaccurate information and to undertake "specific duties in the event of a dispute over furnished information." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (citing 15 U.S.C. § 1681s-2(b)).  The failure to satisfy certain obligations in the event of a dispute generates the right to a private cause of action. *Id.* at 36.  For liability to arise, however, the person or entity reporting the information must first receive notice from a reporting agency that a consumer has disputed the report.[11]  *Id.* at 35 & n.8; *see also* 15 U.S.C. §§ 1681s-2(b)(1) (imposing burdens on the furnisher "[a]fter receiving notice pursuant to section 1681i(a)(2)"), 1681i(a)(2) (describing reporting agency's duty to promptly notify furnisher of consumer's dispute).

---

[11]   The Maine Fair Credit Reporting Act in effect when Plaintiffs filed suit, 10 M.R.S. §§ 1306-1330 (2007) (repealed), imposed similar obligations, but did not include the precondition that the consumer dispute a report with the credit reporting agency prior to bringing suit. *Id.* §§ 1320-A(3), (6), 1322, 1323. The 126th Maine Legislature repealed the prior version of the Fair Credit Reporting Act and replaced it with a new version, currently codified at 10 M.R.S. §§ 1306-1310-H (Supp. 2013). *See* L.D. 1410 (126th Legis. 2013) (effective date Oct. 9, 2013). The new version of the Maine Act requires compliance with the federal Act and with the Code of Federal Regulations. 10 M.R.S. § 1309(1) (Supp. 2013). Plaintiffs filed suit in September 2013. Consequently, Plaintiff's claim is governed by the prior version of the Act. *See* 1 M.R.S. § 302 ("Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."). Nevertheless, to the extent that the prior version of the Act purports to provide more expansive access to relief, it is preempted by the federal Act. 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .").

Plaintiff does not allege that he advised a credit reporting agency of a dispute, nor does Plaintiff argue that he made such a report. In the absence of such an allegation, the complaint lacks a factual basis that would support a plausible inference that the Bank of America Defendants received notice from a reporting agency that Plaintiff disputed any report. Accordingly, the Bank of America Defendants are entitled to dismissal of Count XII.

### 11. *Real Estate Settlement Procedures Act (Count XIII)*

Defendants argue that Plaintiff's claim under the Real Estate Settlement Procedures Act (RESPA) is not actionable because all allegations related to loan origination are time barred, and because Plaintiff does not allege facts sufficient to demonstrate that any of Plaintiff's alleged requests for documents and complaint letters could fairly be considered a qualified written request. (Motion to Dismiss Memorandum at 16-17.)

RESPA provides that a mortgage loan servicer must respond to a borrower's inquiry that constitutes a "qualified written request" (QWR). 12 U.S.C. § 2605(c), (e). A QWR is "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that identifies the borrower by name and account number and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). When the servicer is in receipt of a QWR, it must, within specified timeframes, acknowledge receipt of, investigate, and supply a written response to the inquiry, which response must include information requested or an explanation as to the reasons that the information is unavailable or cannot be obtained. *Id.* § 2605(e)(1)(A), (2)(A), (B), (C), (4).[12] If a servicer fails to comply with these requirements, it "shall be liable to the borrower for each such failure in . . .

---

[12] The Dodd–Frank Wall Street Reform and Consumer Protection Act shortened the required response time, effective January 21, 2013. *See* Pub. L. No. 111–203 § 1463(c), 124 Stat. 1376 (2010).

an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1). Costs and attorney fees are also available in a successful action. *Id.* § 2605(f)(3).

A claim for a violation of the QWR provisions of RESPA is subject to a three-year statute of limitation. *Id.* § 2614. In his complaint, Plaintiff asserts that Defendants did not provide a response to his two written requests for documents in 2007, his May 1, 2010, written request for the closing documents and the loan activity report, his April 8, 2013, written request for escrow information and PMI information, and his written request for escrow information, PMI information, and "miscellaneous postings." (Complaint ¶¶ 28, 194.) Plaintiff also alleges that he sent the Bank of America Defendants multiple complaint letters as late as June 24, 2013, all of which went unanswered. (*Id.* ¶¶ 30, 195.) Given that Plaintiff filed his complaint in state court on or about September 20, 2013, not all of Plaintiff's written requests lie outside the limitation period. The limitations period, therefore, does not bar Plaintiff's claim.

The Bank of America Defendants also argue that Plaintiff's allegations are not sufficient to determine whether any of his alleged requests was a QWR or whether the alleged failures to respond gave rise to any actual damages. (Motion to Dismiss Memorandum at 17.) At this stage of the proceedings, Plaintiff need not convince the Court that he will prevail on his claim. Additionally, in the context of a motion to dismiss, allegations of injury or damage resulting from a RESPA violation are generally sufficient and need not be described with specificity. *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 721 (6th Cir. 2013) (reversing district court's dismissal of RESPA claim and holding that the details concerning harm and causation are issues for summary judgment). Here, Plaintiff has sufficiently asserted the subject matter and dates of his written

requests. In other words, Defendants have adequate notice of the written requests upon which Plaintiff bases his RESPA claim. Dismissal of the RESPA claim, therefore, is not appropriate.

### 12. *Defamation (Libel – Count XIV and False Light – Count XV)*

Plaintiff alleges that the Bank of America Defendants posted notices of foreclosure on his property in 2011, on five occasions in 2012, and once in 2013, which notices represented that Bank of America owned the property and that Plaintiff had abandoned the property. (Complaint ¶¶ 200, 210.) He also claims defamation in connection with false credit reports that Defendants made to Transunion, Equifax, and Experian, and in connection with the filing of a notice of foreclosure in the Cumberland County Registry of Deeds pursuant to a complaint for foreclosure filed September 6, 2011. (*Id.* ¶¶ 201, 202, 210.) Plaintiff claims defamation in the form of libel (Count XIV) and in the form of false light publicity (Count XV).

To prevail on a defamation claim, a party must establish: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447, 455. A "false light" defamation claim offers a special variation on the general theme. False light claims arise from situations in which the defendant has placed the plaintiff "in a false light in the public eye" through an act of "publicity" and not mere "publication" to any third person. *Murtagh v. St. Mary's Reg'l Health Ctr.*, No. 1:2012-cv-00160-NT, 2013 WL 5348607, at *8-9 (D. Me. Sept. 23, 2013) (citing Restatement (Second) of Torts § 652E (1977)).

Defendants request dismissal of the libel claim because the posted notices were "opinion," because credit reports cannot have lowered Plaintiff's reputation in the estimation of the

community, and because filings related to a foreclosure proceeding are absolutely privileged. (Motion to Dismiss Memorandum at 17.) Defendants request dismissal of the false light claim because Plaintiff's allegations do not satisfy the publicity requirement. (*Id.* at 18.)

### a. Posted Notices

As alleged, Defendants posted Plaintiff's property as vacant or abandoned and provided a number for interested parties to call. (Complaint ¶ 27.) One or more notices stated "we found this property to be vacant/abandoned." (*Id.* ¶ 27.I.) A statement couched as an opinion can be actionable under the law of defamation if the statement implies the existence of "undisclosed defamatory facts." *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991); *see also True v. Ladner*, 513 A.2d 257, 262 (Me. 1986) ("If the statement could reasonably be understood by the ordinary person as implying undisclosed defamatory facts, the question of whether it is a statement of fact or an opinion will be submitted to the jury."). The use of prefatory language such as "we found" does not automatically convert a statement to an opinion in the context of a defamation analysis. *See Garret v. Tandy Corp.*, 295 F.3d 94, 103-104 (1st Cir. 2002) (holding that "I suspect" did not render the ensuing statement an opinion as a matter of law). At this stage of the proceedings, the postings cannot be construed conclusively as opinion.

### b. False Credit Reports

Regardless of whether the mere reporting of negative credit information to a credit reporting agency is considered to be "publicity" for purposes of a "false light" claim, Plaintiff cannot proceed on a defamation claim based on a "false light" theory. To the extent that a defamation claim is based on credit reporting activity governed by section 1681s-2, Congress preempted the claim in the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681t(b)(1)(F); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011) (holding that section 1681h(e) does

not imply that defamation claims based on malice or willful conduct remain actionable because the later-enacted section 1681t(b) sweeps more broadly); *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011) (same). Because Plaintiff seeks to recover for defamation based on an alleged violation of the Fair Credit Reporting Act, and because the enactment of the Fair Credit Reporting Act preempted the subject of claims arising as the result of the Fair Credit Reporting Act, Plaintiff cannot prevail on a defamation claim that is based on a violation of the Fair Credit Reporting Act.

### c. Registry filing in connection with foreclosure litigation

"A party to a private litigation is privileged to publish slanderous material concerning the title of another 'in the institution of ... a judicial proceeding in which he participates, if the matter has some relation to the proceeding.'" *Raymond v. Lyden*, 1999 ME 59, ¶ 6, 728 A.2d 124, 126 (quoting Restatement (Second) of Torts § 587 (1977)). The privilege is absolute, provided that the statements at issue "are pertinent to the judicial proceeding" and not "unnecessary or unreasonable." *OfficeMax Inc. v. Sousa*, 773 F. Supp. 2d 190, 237 (D. Me. 2011) (quoting *Simon v. Navon*, 951 F. Supp. 279, 282 (D. Me. 1997)).

Under Maine law, a mortgagee who commences a foreclosure action must file a notice in the Registry. 14 M.R.S. § 6321. As a matter of law, therefore, the filing of the notice cannot support a claim of defamation unless the filing was unnecessary or unreasonable. Furthermore, the notice merely stated that a foreclosure proceeding had been commenced against the property in question, which statement was accurate. "[T]ruth is an absolute defense to a charge of defamation." *Garrett v. Tandy Corp.*, 295 F.3d 94, 106 (1st Cir. 2002) (applying Maine law). Given that Plaintiff has not alleged facts that would support a determination that the filing of the notice was unnecessary, unreasonable or inaccurate, Plaintiff cannot proceed on a defamation claim based on the filing of the notice.

### 13.     *Abuse of Process (Count XVI)*

Plaintiff alleges abuse of process based on Defendants' filing of a foreclosure complaint on September 6, 2011, and the subsequent failure of Defendants to serve Plaintiff with the complaint within 90 days.  (Complaint ¶ 216.)  The Bank of America Defendants argue that dismissal is appropriate because the failure to serve a complaint cannot amount to abuse of process, and because the allegations do not describe any ulterior motive or unlawful end.  (Motion to Dismiss Memorandum at 19.)

In Maine, a claim for abuse of process consists of three elements: (1) that the defendant "initiated or used a court document or process in a manner not proper in the regular conduct of proceedings," (2) that the defendant did so "with the existence of an ulterior motive," and (3) that the plaintiff suffered damage as a consequence.  *Tanguay v. Asen*, 1998 ME 277, ¶ 5, 722 A.2d 49, 50.  However, "[r]egular use of process, such as filing a law suit, cannot constitute abuse, even if a decision to act or a decision not to act, was influenced by a wrongful motive."  *Id.*  Simply stated, Plaintiff's allegations regarding the delay in the service of the complaint and the filing of the notice in the Registry, cannot and do not constitute an abuse of process.

### 14.     *Fraud (Count XVII)*

In his final claim, Plaintiff alleges fraud arising from the Bank of America Defendants' assigning to Plaintiff's account legal fees charged by Phillips Olore Dunlavey & York P.A. (PODY) in connection with the foreclosure case.  As alleged, the PODY bill requested payment for services that were never performed.   (Complaint ¶¶ 221-230.)

In Maine, "[a] person is liable for fraud if the person (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and

(5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Landsberg v. Me. Coast Reg'l Health Facilities*, 640 F. Supp. 2d 108, 113 (D. Me. 2009). Here, Plaintiff's allegations fail because the Complaint contains no allegation stating, or plausibly suggesting, that Plaintiff, as of the June 2013 statement charging legal fees, relied to his detriment, such as by paying PODY's bill for legal services. Dismissal, therefore, is appropriate.

### CONCLUSION

Based on the foregoing analysis, it is recommended that the Court grant in part and deny in part the Bank of America Defendants' Motion to Dismiss (ECF No. 81). The more specific recommendation is that the Court dismiss the following claims against the Bank of America Defendants:

Count II (negligence);

Count VIII (negligent infliction of emotional distress);

Count IX (Fair Debt Collection Practices Act—as against Bank of America N.A. and Bank of America Corporation, but not as against BAC Home Loan Servicing L.P.)

Count XI (Fair Credit Billing Act);

Count XII (Fair Credit Reporting Act);

Count XV (false light defamation);

Count XVI (abuse of process); and

Count XVII (fraud).[13]

---

[13] Although the recommendation is that the remaining counts against the Bank of America Defendants not be dismissed in their entirety, if adopted, this Recommended Decision restricts the scope of several of the remaining claims, as indicated in the discussion. Additionally, it is apparent that there exists an issue as to whether Plaintiff has properly identified one or more of the Bank of America Defendants. In particular, the Bank of America Defendants assert that Bank of America Corporation is not a proper party. (Motion to Dismiss Memorandum at 1 n.1.) Presumably, the parties will resolve this issue in the course of discovery or in the context of summary judgment proceedings.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of July, 2014.