UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD E. HAMILTON, JR., et al., )
                                   )
              Plaintiffs,          )
                                   )
       v.                          )        2:13-cv-00414-JAW
                                   )
FEDERAL HOME LOAN                  )
MORTGAGE CORPORATION D/B/A         )
FREDDIE MAC, et al.,               )
                                   )
              Defendants.          )

## ORDER AFFIRMING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

Richard E. Hamilton, Jr. and Richard E. Hamilton, Sr. brought this seventeen-count civil case against numerous Defendants with connections to Richard Hamilton, Jr.'s now-defaulted home loan and the efforts of various creditors to foreclose his mortgage. Before the Court are motions to dismiss by Nationstar Mortgage, LLC (Nationstar); the Federal Home Loan Mortgage Corporation (Freddie Mac); Phillips, Olore, Dunlavey & York, P.A. (PODY), a law firm; and Attorney Brent A. York (Attorney York). The Magistrate Judge recommended dismissal of a number of the claims against these Defendants. With the exception of one issue not before the Magistrate Judge, the Court affirms the Magistrate Judge's recommendations.

## I.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must

determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). A court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). However, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible." *Ocasio-Hernández*, 640 F.3d at 12. A court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Furthermore, courts should be "solicitous of the obstacles that pro se litigants face, and . . . endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008). In deciding a Rule 12(b)(6) motion, a court may consider any documents attached to the complaint as well as any other documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

## II.     FACTUAL BACKGROUND

### A.     Facts Alleged in the Complaint

#### 1.     The Parties

Richard E. Hamilton, Jr. (REH, Jr.) is a resident of Merritt Island, Florida and New Gloucester, Maine, *Aff. of Paula Lee-Chambers* Attach. 18 *Compl.* ¶ 1 (ECF No. 40) (*Compl.*); Richard E. Hamilton, Sr. (REH, Sr.) is a resident of Turner, Maine. *Id.* ¶ 2.

Freddie Mac is a private corporation that purchases and guarantees mortgages, with headquarters in McLean, Virginia. *Id.* ¶ 3. Nationstar is a mortgage servicing company with headquarters in Lewisville, Texas. *Id.* ¶ 7.

PODY is a law firm with headquarters in Presque Isle, Maine. *Id.* ¶ 8. Attorney York practices law in Presque Isle, Maine. *Id.* ¶ 9. Nationstar, PODY, and Attorney York provided services to Freddie Mac. *Id.* ¶ 11.

## 2. The Purchase and Sale

On May 19, 2000, REH, Jr., then 28 years old, signed a contract to purchase a mobile home and land in New Gloucester, Maine for $99,000.00. *Id.* ¶¶ 12, 16. REH, Jr. financed the purchase through a loan from Bank of America (BOA). *Id.* ¶¶ 13-15. On July 21, 2000, as part of the transaction, REH, Jr. granted a mortgage on the property to BOA. *Id.* ¶ 15. The Plaintiffs allege that REH, Jr. received numerous unsigned documents related to the loan at the closing. *Id.* They also allege that he "[r]equested an owner's policy of title insurance which has not been received," *id.* ¶ 15(B), though the unsigned Settlement Statement showed a fee paid for owner's coverage. *Id.* ¶ 15(I).

In July 2005, REH, Jr. moved to Florida. *Id.* ¶ 47(C). However, he "has maintained a residence in both Maine and Florida," *id.* ¶ 47(D), and has not abandoned his property in Maine. *Id.* ¶ 47(E). On a routine basis, REH, Sr. would perform yard maintenance, repairs, snow removal, and security checks at the New Gloucester property. *Id.* ¶ 27. They have maintained the property in good order. *Id.* ¶ 47(F).

### 3.    Mr. Hamilton, Jr.'s Private Mortgage Insurance

The mortgage contract—REH, Jr.'s copy of which was unsigned—called for a monthly payment of $61.13 for private mortgage insurance (PMI) premiums.  *Id.* ¶ 32(A).  At the closing, no one told REH, Jr. that his PMI could be terminated.  *Id.* ¶ 32(B).  Between 2000 and 2010, REH, Jr. never received a notice from BOA that his PMI could be terminated and cancelled, nor any telephone number that he could call to inquire about this topic; however, he did receive such notices and telephone number(s) in 2011 and 2012.  *Id.* ¶ 32(C), (D), (G).  Between January 2004 and September 2013, the PMI premium changed from $61.13 to $15.68.  *See id.* ¶ 32(I)-(K).

### 4.    Toxic Waste and Mr. Hamilton, Jr.'s Default

An automobile junkyard abuts REH, Jr.'s property in New Gloucester.  *Id.* ¶ 18.  A portion of this junkyard encroached onto REH, Jr.'s property by approximately twenty-five feet.  *Id.* ¶ 19(F).  The Plaintiffs allege that BOA, the surveyor, and the appraiser hired by BOA knew of this encroachment before the closing but concealed this fact from REH, Jr.  *Id.* ¶¶ 23-24.  Toxic waste from the automobile junkyard has leaked onto REH, Jr.'s property, causing damage to the land.  *Id.* ¶ 20.  REH, Jr. cannot rent out his property because of the hazardous waste problem.  *Id.* ¶ 47(H).  In addition, the presence of toxic waste scuttled a sale of the land that would have closed on October 1, 2007.  *Id.* ¶¶ 20-22, 25-26.  Thereafter, REH, Jr. ceased making any payments on the mortgage.  *Id.* ¶ 17.[1]

---

[1]    The Complaint alleges: "On September 1, 2000[] through September 2007, principal, interest, real estate taxes, hazard insurance, and private mortgage insurance premiums, were made and

### 5. Foreclosure Proceedings Commence in 2008

Beginning on March 12, 2008, and continuing through May 28, 2013, REH, Sr. learned that a company called Safeguard Properties had changed the locks on the New Gloucester mobile home. *Id.* ¶ 27. He also found a variety of notices posted on the property indicating that foreclosure proceedings were in progress and that unauthorized persons were prohibited from entering the premises. *Id.*

REH, Jr. received numerous letters during this period threatening foreclosure. *Id.* ¶ 36. These included letters from PODY and Attorney York on March 4, 2010 and August 22, 2011. *Id.* ¶ 36(B), (C). Nationstar also sent a letter threatening foreclosure on July 26, 2013. *Id.* ¶ 36(F).

On March 11, 2010, REH, Jr. received a "Notice Of Default" from Attorney York, dated March 4, 2010. *Id.* ¶ 37. On March 16, 2010, REH, Jr. replied by letter to Attorney York with a proposed settlement offer. *Id.* ¶ 37(B). Attorney York did not respond to this letter. *Id.* REH, Jr. sent another letter to Attorney York on May 28, 2010, indicating that there were errors in the notice of default and requesting "the status of foreclosure regarding me and my property." *Id.* ¶ 37(C). Attorney York did not reply to this letter either. *Id.*

Over a year later, on September 8, 2011, REH, Jr. received a letter from Attorney York. *Id.* ¶ 37(D). The Complaint alleges that this letter recited an incorrect amount of debt, but the letter did state that if REH, Jr. wrote back indicating the debt was disputed, Attorney York would provide him with verification of the debt. *Id.*

---

substantial additional amounts were paid on principal." *Compl.* ¶ 17(A). The Court infers that no further payments were made after September 2007.

On October 3, 2011, REH, Jr. wrote back to Attorney York disputing the debt, but Attorney York did not respond. *Id.* ¶ 37(E).

### 6. Mr. Hamilton, Jr.'s Mortgage Changes Hands in 2009 and 2013

On November 2, 2009, REH, Jr. received a letter dated October 21, 2008 from BOA, stating that Bank of America Corporation d/b/a BAC Home Loans Servicing, LP would be the new servicer for his mortgage. *Id.* ¶¶ 5, 34.

On March 7, 2013, REH, Jr. received a letter dated March 1, 2013 from Nationstar, stating that as of February 16, 2013, Nationstar would be servicing the mortgage. *Id.* ¶ 35. Nationstar is now listed as "Lienholder #1" on REH, Jr.'s homeowner's insurance policy. *Id.* ¶ 35(A).

### 7. Bank of America's 2011 Foreclosure Proceeding

BOA, through PODY and Attorney York, filed a complaint for foreclosure in the Maine District Court on September 6, 2011. *Id.* ¶ 38; *see also id.* ¶¶ 11, 38(E)-(G).[2] REH, Sr., who was apparently a party in interest to the foreclosure, was served with the foreclosure complaint on March 21, 2012. *Id.* ¶ 38(A). REH, Jr. was served with the complaint on July 16, 2012. *Id.* ¶ 38(C). The Maine Superior Court, to which the case was removed, dismissed the complaint without prejudice on July 25, 2012. *Id.* ¶ 38(D).

On September 22, 2011, a foreclosure document was filed in the Cumberland County Registry of Deeds in the names of REH, Jr. and REH, Sr. *Id.* ¶ 38(H).

---

[2] The Complaint does not squarely allege that PODY and Attorney York were acting as BOA's agents. *See Compl.* ¶¶ 11, 38. However, the allegations of paragraph 38 of the Complaint only make sense under this assumption.

However, following the dismissal of the foreclosure action, the foreclosure document remains in effect and no release has been filed.  *Id.* ¶ 38(I).

The Complaint further alleges that "PODY and [Attorney York] caused REH, Jr. and REH, Sr. a lot of grief, lost time, expenses, and money, to defend this vexatious foreclosure action."  *Id.* ¶ 38(G).

### 8. Mr. Hamilton, Jr.'s Communications with the Defendants

#### a. Regarding Account Balances, Mortgage Ownership, and Hazardous Waste

Between March 7, 2013 and August 29, 2013, REH, Jr. received ten letters or mortgage statements showing incorrect amounts of principal, interest, escrow, late charges, and lender expenses.  *Id.* ¶ 40.

On March 25, 2013, REH, Jr. sent Nationstar a written request for "escrow, past due payment amount, legal fees, property inspections, maintenance expenses, and history report" for the period between September 1, 2000 to March 25, 2013.  *Id.* ¶ 29(A).  Nationstar did not provide this information.  *Id.*  He followed up with another letter on May 27, 2013, but once again, Nationstar provided no response.  *Id.* ¶ 29(B).

On June 24, 2013, REH, Jr. sent a complaint letter to BOA, Nationstar, and others, complaining about the hazardous waste issue.  *Id.* ¶ 30(F).  No recipient of the letter has responded.  *Id.*  However, on August 30, 2013, REH, Jr. received a letter from BOA indicating that it had released his mortgage to a new mortgage servicer, and all future correspondence should be directed to the new servicer.  *Id.* ¶ 30(G).

On July 5, 2013, REH, Jr. sent a complaint letter to Freddie Mac and complained about the ownership of his loan and the hazardous waste problem. *Id.* ¶ 30(H). Freddie Mac did not respond. *Id.*

### b. Regarding Legal Fees

On June 18, 2013, in response to a request from REH, Jr., Nationstar provided a mortgage loan statement that showed the lender paid PODY and Attorney York legal expenses in the amount of $3,695.00. *Id.* ¶¶ 41, 41(A). Two weeks later, Nationstar provided REH, Jr. with two legal invoices for work related to the foreclosure that totaled $3,470.00. *Id.* ¶ 41(B). However, the Complaint alleges that of these services, portions totaling $2,190.00 "did not happen." *Id.* ¶ 41(C). It also alleges that the legal fees paid to PODY and Attorney York were wrongful because they "botched the case." *Id.* ¶ 41(D).

### c. Regarding Private Mortgage Insurance

At some time before June 28, 2013, REH, Jr. requested documents from BOA related to his PMI policy. *Id.* ¶ 42(A). On June 28, 2013, REH, Jr. received a letter from BOA indicating that the Bank could not locate the PMI documents that REH, Jr. requested, and suggested that he contact his new loan servicer. *Id.* ¶ 42(B). After several rounds of correspondence with Nationstar and state agencies, *id.* ¶ 42(D), (E), Nationstar ultimately wrote to REH, Jr. and informed him it was "unable to locate the information [he] requested." *Id.* ¶ 42((F). However, by letter dated July 31, 2013, Nationstar gave the PMI underwriter permission to provide the PMI information and documents to REH, Jr. *Id.* ¶ 42(J), (K).

### 9. Nationstar's Effort to Foreclose in 2013

Shapiro & Morley, LLC is a law firm representing Nationstar regarding REH, Jr.'s mortgage loan. *Id.* ¶ 43. On March 25, 2013, REH, Jr. received a letter from Shapiro & Morley, LLC. *Id.* ¶ 43(A). This letter indicated that Nationstar had referred REH, Jr.'s loan to the law firm for foreclosure, and stated that the amount of debt owed at that time was $78,952.15. *Id.* REH, Jr. wrote two letters to Shapiro & Morley, LLC—one on April 21, 2013 and one on May 27, 2013—disputing the amount of the debt and asking for "all documents that show that the debt is owed to Nationstar." *Id.* ¶ 43(B), (C).

On June 3, 2013, REH, Jr. received a letter from Attorney William B. Jordan at Shapiro & Morley, LLC. *Id.* ¶ 43(D). The letter stated:

> In response to your recent letter we believe to be qualified written request under RESPA, please be advised that we are not an agent of Nationstar Mortgage, LLC within the meaning of RESPA. We therefore do not believe that your letter constitutes a valid qualified written request.

*Id.*

### 10. Mr. Hamilton, Jr.'s Credit Reports

The Complaint alleges that between 2004 and August 2013, Nationstar "electronically reported false, inaccurate, and misleading[] information on REH, Jr. to Experian, Equifax, and Transunion credit reporting agencies." *Id.* ¶ 33. Specifically, it claims that for each month between January 2004 and August 2013, "the monthly amount of the mortgage loan payment, the amount of the escrow payment, and the interest paid or charged on the mortgage loan[] were overstated."

*Id.* ¶ 33(B).  According to the Complaint, Nationstar failed to inform the three credit reporting agencies that he had reported complaints and disputes.  *Id.* ¶ 33(C).

### 11.  **Ownership of Mr. Hamilton, Jr.'s Loan**

At various times, a number of parties have made representations to REH, Jr. regarding who owns the loan that is presently in default.  *Id.* ¶ 46.  Between July 16, 2012 and December 17, 2012, both Attorney York and BOA represented that BOA owned the loan.  *Id.* ¶ 46(A), (B).  The Cumberland County Registry of Deeds indicates that BOA transferred the loan to Nationstar on March 22, 2013.  *Id.* ¶ 46(D).  Consistent with this transfer, on March 25, 2013, Shapiro & Morley, LLC represented to REH, Jr. that Nationstar owned the loan.  *Id.* ¶ 46(C).

On June 28, 2013, BOA represented to REH, Jr. that Freddie Mac owned the loan.  *Id.* ¶ 46(E).  Nationstar corroborated this account on July 1, 2013.  *Id.* ¶ 46(F).  On July 5, 2013, REH, Jr. wrote to Freddie Mac and asked whether and on what date Freddie Mac acquired ownership of his loan, and requested documents pertaining to the ownership.  *Id.* ¶ 46(G).  Freddie Mac did not respond, *id.* ¶ 46(H), but it did "access[] REH, Jr.'s credit report from Experian . . . [and] Equifax."  *Id.* ¶ 46(I), (J).

### 12.  **Mr. Hamilton, Jr.'s Emotional Distress**

The Complaint alleges:

> The combining impact and the magnitude of the problems with REH, Jr.'s property has created a very tense and dire situation for REH, Jr.
>
> . . .
>
> REH, Jr. suffered and continues to suffer from mental anguish, distress, anxiety, pain, indignation, despair, severe headaches, severe tension, severe trauma, and is unable to eat, sleep, and cope with daily life.

*Id.* ¶ 47(I), (L).

## B.    Procedural Posture

The Plaintiffs originally filed their Complaint in Cumberland County Superior Court on September 20, 2013. *Compl.* Nationstar removed the case to this Court on November 8, 2013, *Notice of Removal* (ECF No. 1), and, after a motion to remand, the Court eventually agreed to retain it.[3] Nationstar filed a motion to dismiss on November 25, 2013, *Nationstar Mortg., LLC's Mot. to Dismiss Pls.' Compl.* (ECF No. 10) (*Nationstar's Mot. to Dismiss*), with a separately attached memorandum of law. *Id.* Attach. 1 *Mem. of Law in Support of Def. Nationstar Mortg., LLC's Mot. to Dismiss Pls.' Compl.* (ECF No. 10). PODY and Attorney York also moved to dismiss on December 16, 2013. *Mot. to Dismiss Pls.' Compl. by Defs. Phillips, Olore, Dunlavey & York, P.A. and Brent A. York* (ECF No. 15). Freddie Mac filed its own motion to dismiss on March 3, 2014, *Fed. Home Loan Mortg. Corp.'s Mot. to Dismiss Pls.' Compl.* (ECF No. 65), with a separately attached memorandum of law. *Id.* Attach. 1 *Mem. of Law in Support of Def., Fed. Home Loan Mortg. Corp.'s Mot. to Dismiss Pls.' Compl.* (ECF No. 65) (*Mem. of Law in Support of Freddie Mac's Mot. to Dismiss Pls.' Compl.*).

After full briefing, the Magistrate Judge issued his Recommended Decision on the motions to dismiss on May 8, 2014. *Recommended Decision on Mots. to Dismiss* (ECF No. 84) (*Rec. Dec.*). Nationstar and Freddie Mac jointly filed an objection to the Recommended Decision on May 22, 2014, *Defs.' Nationstar Mortg., LLC and Fed. Home Loan Mortg. Corp.'s Objection to the Magistrate's Recommended Decision on*

---

[3]    For the tortuous history of the motion to remand, *see Recommended Decision on Mot. to Remand* (ECF No. 41); *Recommended Decision on Mot. to Join Notice of Removal* (ECF No. 63), *aff'd*, *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 78).

*Mots. to Dismiss* (ECF No. 88) (*Defs.' Objection*), and the Plaintiffs filed an objection the next day. *Pls.' Objections to Magistrate Judge's Recommended Decision on Mots. to Dismiss* (ECF No. 89) (*Pls.' Objection*). PODY and Attorney York responded to the Plaintiffs' objection on May 27, 2014. *Resp. to Pls.' Objections to Magistrate Judge's Recommended Decision on Mots. to Dismiss Pls.' Compl. by Defs. Phillips, Olore, Dunlavey & York, P.A. and Brent A. York* (ECF No. 90) (*Defs.' Reply*). On June 3, 2014, REH, Jr. responded to the objection by Nationstar and Freddie Mac. *Pl.'s Objection to Defs.' Nationstar Mortg., LLC and Fed. Home Loan Mortg. Corp.'s Objection to the Magistrate's Recommended Decision on Mot. to Dismiss* (ECF No. 93) (*Pl.'s Reply*).

### C.     The Causes of Action

The Complaint contains seventeen counts; the counts vary as to who is the plaintiff(s) and who is the defendant(s). *See Compl.* at 31-65. Eliminating the uninvolved defendants, the Court summarizes the status of each count in the Complaint as is relevant to the motions to dismiss by Nationstar, Freddie Mac, PODY, and Attorney York:

1) Count One: Breach of Contract – REH, Jr. v. Nationstar and Freddie Mac;

2) Count Two: Negligence – REH, Jr. v. Nationstar and Freddie Mac;

3) Count Three: Negligent Misrepresentation – REH, Jr. v. Nationstar and Freddie Mac;

4) Count Four: Intentional Misrepresentation – REH, Jr. v. Nationstar and Freddie Mac;

5) Count Five: Fraud – REH, Jr. v. Nationstar and Freddie Mac;

6) Count Six: Unfair Trade Practices Act – REH, Jr. v. Nationstar, Freddie Mac, PODY, and Attorney York; and REH, Sr. v. PODY and Attorney York;

7) Count Seven: Intentional Infliction of Emotional Distress – REH, Jr. v. Nationstar and Freddie Mac;

8) Count Eight: Negligent Infliction of Emotional Distress – REH, Jr. v. Nationstar and Freddie Mac;

9) Count Nine: Fair Debt Collection Practices Act – REH, Jr. v. Nationstar and Freddie Mac;

10) Count Ten: Truth in Lending Act – REH, Jr. v. Freddie Mac;

11) Count Eleven: Fair Credit Billing Act – REH, Jr. v. Nationstar;

12) Count Twelve: Fair Credit Reporting Act – REH, Jr. v. Nationstar and Freddie Mac;

13) Count Thirteen: RESPA – REH, Jr. v. Nationstar and Freddie Mac;

14) Count Fourteen: Defamation – REH, Jr. v. Nationstar, Freddie Mac, PODY, and Attorney York; and REH, Sr. v. PODY and Attorney York;

15) Count Fifteen: False Light – REH, Jr. v. Nationstar, Freddie Mac, PODY, and Attorney York; and REH, Sr. v. PODY and Attorney York;

16) Count Sixteen: Abuse of Process – REH, Jr. and REH, Sr. v. PODY and Attorney York; and

17) Count Seventeen: Fraud – REH, Jr. v. Nationstar, Freddie Mac, PODY and Attorney York.

*Id.*

**D.** **The Recommended Decision**

The recommendations of the Magistrate Judge as to each count and each party are:

1) <u>Count One: Breach of Contract – REH, Jr.</u>:

   a) Nationstar – no dismissal;

   b) Freddie Mac – no dismissal;

2) <u>Count Two: Negligence – REH, Jr.</u>:

   a) Nationstar – dismissed;

   b) Freddie Mac – dismissed;

3) <u>Count Three: Negligent Misrepresentation – REH, Jr.</u>:

   a) Nationstar – no dismissal;

   b) Freddie Mac – no dismissal;

4) <u>Count Four: Intentional Misrepresentation – REH, Jr.</u>:

   a) Nationstar – no dismissal;

   b) Freddie Mac – no dismissal;

5) <u>Count Five: Fraud – REH, Jr.</u>:

   a) Nationstar – no dismissal;

   b) Freddie Mac – no dismissal;

6) <u>Count Six: Unfair Trade Practices Act – REH, Sr. and REH, Jr.</u>:

   a) Nationstar – no dismissal;

   b) Freddie Mac – no dismissal;

   c) PODY – dismissed as to both REH, Sr. and REH, Jr.;

   d) Attorney York – dismissed as to both REH, Sr. and REH, Jr.;

7) <u>Count Seven: Intentional Infliction of Emotional Distress – REH, Jr.</u>:

    a) Nationstar – no dismissal;

    b) Freddie Mac – no dismissal;

8) <u>Count Eight: Negligent Infliction of Emotional Distress – REH, Jr.</u>:

    a) Nationstar – dismissed;

    b) Freddie Mac – dismissed;

9) <u>Count Nine: Fair Debt Collection Practices Act – REH, Jr.</u>:

    a) Nationstar – no dismissal;

    b) Freddie Mac – no dismissal;

10) <u>Count Ten: Truth in Lending Act – REH, Jr.</u>:

    a) Freddie Mac – no dismissal;

11) <u>Count Eleven: Fair Credit Billing Act – REH, Jr.</u>:

    a) Nationstar – dismissed;

12) <u>Count Twelve: Fair Credit Reporting Act – REH, Jr.</u>:

    a) Nationstar – dismissed;

    b) Freddie Mac – dismissed;

13) <u>Count Thirteen: RESPA – REH, Jr.</u>:

    a) Nationstar – no dismissal;

    b) Freddie Mac – no dismissal;

14) <u>Count Fourteen: Defamation – REH, Sr. and REH, Jr.</u>:

    a) Nationstar – dismissed to the extent the claim is based on credit reporting activity;

b) Freddie Mac – dismissed to the extent the claim is based on credit reporting activity;

c) PODY – dismissed as to both REH, Sr. and REH, Jr.;

d) Attorney York – dismissed as to both REH, Sr. and REH, Jr.;

15) <u>Count Fifteen: False Light – REH, Sr. and REH, Jr.</u>:

a) Nationstar – dismissed;

b) Freddie Mac – dismissed;

c) PODY – dismissed as to both REH, Sr. and REH, Jr.;

d) Attorney York – dismissed as to both REH, Sr. and REH, Jr.;

16) <u>Count Sixteen: Abuse of Process – REH, Sr. and REH, Jr.</u>:

a) PODY – dismissed as to both REH, Sr. and REH, Jr.;

b) Attorney York – dismissed as to both REH, Sr. and REH, Jr.; and

17) <u>Count Seventeen: Fraud – REH, Jr.</u>:

a) Nationstar – dismissed;

b) Freddie Mac – dismissed;

c) PODY – dismissed;

d) Attorney York – dismissed.

*Rec. Dec.* at 34.

## III.    DISCUSSION

### A.    Count I:  Breach of Contract

Count I alleges that Nationstar and Freddie Mac are liable for breach of contract under Maine common law.  *Compl.* ¶¶ 49-103.

## 1.    The Recommended Decision

The Magistrate Judge noted that the First Circuit, interpreting Massachusetts contract law, *Rec. Dec.* at 10-11, has held that a viable complaint for breach of contract must specify "'with substantial certainty the specific contractual promise the defendant failed to keep.'" *Rec. Dec.* at 11 (quoting *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007)). The Magistrate Judge also observed that the mortgage loan documents are not in or attached to the Complaint. *Id.* However, the Magistrate Judge ruled that

> [REH, Jr.] alleges that Nationstar breached certain contractual obligations, including those that are implied in the parties' agreement (*e.g.*, certain statutory mortgage loan servicing obligations, the obligation to provide accurate account information, and the obligation to inform [REH, Jr.] of the right to cancel private mortgage insurance). In this way, [REH, Jr.] has alleged a claim for breach of contract, and provided Nationstar with sufficient notice of the nature of the claim to permit Nationstar to understand and defend against the claim.

*Id.* The Magistrate Judge applied similar reasoning to REH, Jr.'s breach of contract claim against Freddie Mac, *id.* at 25, and ultimately recommended that Count I survive dismissal as against both Nationstar and Freddie Mac. *Id.* at 34.

## 2.    Nationstar and Freddie Mac's Objection

The Defendants characterize the Magistrate Judge's ruling as an "improper factual inference of contractual terms in the Mortgage loan documents which are not plead in the Complaint." *Defs.' Objection* at 8. The Defendants insist that "the Court cannot infer factual allegations regarding the terms of a contract which are not plead in the Complaint." *Id.* at 9 (citing *Decotiis v. Whittemore*, 635 F.3d 22, 32 (1st Cir. 2011)).

17

The Defendants also argue that "sufficient notice" is not enough, on its own, to meet federal pleading standards. *Id.* (citing *Rec. Dec.* at 11, 25). Instead, the Defendants urge that the Complaint must also "'contain[] a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Redondo-Borges v. United States Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005)). In their view, the facts alleged in Count I do not "give rise to a reasonable inference that REH, Jr.'s breach of contract claim is facially plausible." *Id.*

The Defendants further argue that the Complaint's factual allegations of breach of contract, as recited by the Magistrate Judge, *Rec. Dec.* at 25 (citing *Compl.* ¶¶ 75, 77, 80-81, 84), regarding wrongdoing by Freddie Mac, all occurred before Freddie Mac became involved with the mortgage. *Defs.' Objection* at 9. They take particular issue with paragraph 84(A) of the Complaint, *id.* at 10, which asserts that "[w]ithout required notice [Freddie Mac] committed numerous unlawful entries on to REH, Jr.'s property and in to REH, Jr.'s residence." *Compl.* ¶ 84(A). The Defendants contend that the allegations of wrongful entry in the Complaint all date between 2008 and 2012—before Freddie Mac allegedly acquired the mortgage. *Defs.' Objection* at 9 (citing *Compl.* ¶¶ 27, 46(E)). They further maintain that the other specific allegations of breach of contract asserted in paragraph 84 of the Complaint are unsupported by factual allegations earlier in the Complaint, and on their own are too conclusory to withstand dismissal. *Id.* at 9-10.

### 3.    Mr. Hamilton, Jr.'s Response

REH, Jr. contents himself to incorporate by reference his opposition to the original motion to dismiss by Freddie Mac and Nationstar. *Pl.'s Reply* at 2 (citing

"Document No. 33 – Count I – Breach of Contract; Document No. 79 – Count I – Breach of Contract").[4]

In his earlier papers regarding Nationstar, REH, Jr. essentially argued that Nationstar acquired the mortgage from BOA on March 22, 2013, and thereafter committed several breaches of that contract. *Pl. Hamilton, Jr.'s Opp'n to Nationstar Mortg., LLC's Mot. to Dismiss Pls.' Compl.* at 2 (ECF No. 33). As to the existence and particulars of the contract he alleged Nationstar breached, REH, Jr. asserts:

> [I]f you have a note, and a mortgage, [] a reasonable person could infer that these documents have terms and conditions, such as an interest rate, monthly payments, escrow payments, tax payments, and additional restrictive terms and conditions.

*Id.*

As to breach, REH, Jr. claims that: (1) on May 20, 2013, Safeguard Properties unlawfully entered the property to change the locks and install a key box, *id.* at 2-3 (citing *Compl.* ¶ 27(I)); (2) Nationstar refused a written request made by REH, Jr. on March 25, 2013 to provide certain documents related to the loan, *id.* at 3 (citing *Compl.* ¶ 29(A), (B)); (3) Nationstar did not respond to a written complaint made by REH, Jr. on June 24, 2013, regarding hazardous waste on the property, *id.* (citing *Compl.* ¶ 30(F)); (4) REH, Jr.'s three credit reports, which he ordered in August 2013, did not show that he had reported complaints and disputes, *id.* (citing *Compl.* ¶ 33(C)); (5) between April 27, 2013 and August 29, 2013, REH, Jr. received letters from

<hr>

[4]     This is an unhelpful method of making arguments. District of Maine Local Rule 7(b) provides that "[a]ny objections shall include citations and supporting authorities . . . ." REH, Jr.'s opposition to the Defendants' original motion to dismiss is not "authority;" it is argument. The Court has attempted to trace back to REH, Jr.'s earlier papers to determine what arguments he wishes to incorporate by reference.

Nationstar "stating incorrect balances," *id.* (citing *Compl.* ¶ 40); (6) on July 2, 2013, REH, Jr. received two "fictitious" invoices from Nationstar, reflecting payments to PODY for work that "did not happen," *id.* (citing *Compl.* ¶ 41); (7) Nationstar has refused written requests to provide documentation related to his PMI, *id.* at 3-4 (citing *Compl.* ¶ 42); (8) REH, Jr. corresponded with Shapiro & Morley, LLC, who denied that his correspondence was a valid qualified written request under RESPA, *id.* at 4 (citing *Compl.* ¶ 43); and (9) Nationstar represented through Shapiro & Morley, LLC that it owned the mortgage loan as of March 25, 2013, but on July 1, 2013, Nationstar represented that Freddie Mac owned the mortgage loan. *Id.* at 4-5 (citing *Compl.* ¶ 46).

In his earlier papers regarding Freddie Mac, REH, Jr. asserts that "there is an agency relationship between Freddie Mac, Nationstar, and the three Bank of Americas," *Pl. Hamilton Jr.'s Opp'n to Fed. Home Loan Mortg. Corp.'s Mot. to Dismiss Pls.' Compl.* at 3 (citing *Compl.* ¶¶ 11, 50) (ECF No. 79) (*Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss*), and that "Freddie Mac most likely owned [REH], Jr.'s mortgage loan during some of the period of the three Bank of Americas['] involvement in this Case." *Id.* (citing *Compl.* ¶¶ 11, 46(I)).  Consequently, he argues, Freddie Mac is responsible for any breaches alleged against BOA and against Nationstar. *Id.* at 3-4.

REH, Jr. also previously argued that Freddie Mac committed breaches independent of BOA and Nationstar: (1) on July 5, 2013, REH, Jr. sent a complaint letter to Freddie Mac about the hazardous waste issue and the ownership of his loan, and Freddie Mac has not responded, *id.* at 3 (citing *Compl.* ¶ 30(H)); and (2) that

REH, Jr. requested information and documents regarding his loan, but Freddie Mac did not respond. *Id.* at 3-4 (citing *Compl.* ¶ 46(G), (H)). He also argues, in conclusory fashion, that Freddie Mac

> failed to abide by the requirements in the note, mortgage, and applicable federal and state laws, and failed to take proper, reasonable, and required, steps and allowed numerous unlawful entries in to Hamilton, Jr.'s residence; . . . reported false information to the three credit reporting agencies; failed to maintain adequate records . . . of Hamilton, Jr.'s mortgage loan; . . . failed to abide by federal and state consumer protection laws[;] . . . [and] failed to properly, adequately, and reasonably[] supervise it's [sic] agents, their activities, reports, and documents.

*Id.* at 4 (without citation).

### 4.    Analysis

As the Magistrate Judge noted, the elements of breach of contract in Maine are: "(1) breach of a material contract term; (2) causation; and (3) damages." *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. The Defendants urge the Court to apply Massachusetts contract law to this case, requiring the Complaint "describ[e], with 'substantial certainty,' the specific contractual promise the defendant failed to keep." *Brooks*, 480 F.3d at 586 (citing *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194-95 (1st Cir. 1996); *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 37 (D. Mass. 1999)); *Defs.' Objection* at 8 ("The Mag. Judge . . . correctly states that a plaintiff must identify with substantial certainty the specific contractual promise the defendant failed to keep") (internal quotation marks omitted). But the commonwealth of Massachusetts is not the state of Maine and the substantive law of the Commonwealth does not apply in this State.

Even if Maine courts were to find caselaw on Massachusetts pleading requirements persuasive,[5] this Court applies federal procedural law, not state law. *Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965).  Under federal procedural law,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).  The Court may consider exhibits and other documents integral to the pleadings.  *Trans-Spec Truck Serv., Inc.*, 524 F.3d at 321.  However, "the district court may properly consider only facts and documents that are part of or incorporated into the complaint."  *Id.*

It is true that the Plaintiffs did not provide a copy of any loan contract or quote any contract language in their Complaint or any of their briefing to date—despite their assertion that REH, Jr. received at least an unsigned copy of the written instrument in 2000.  *Compl.* ¶ 15.  Nevertheless, the First Circuit has cautioned that courts should be "solicitous of the obstacles that pro se litigants face, and . . . endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects."  *Dutil*, 550 F.3d at 158-59.  The Court concludes that the list of issues itemized above is sufficient to state breach of contract claims against

---

[5]     The Court is skeptical that Maine would do so.  The Massachusetts "substantial certainty" requirement arose from a Massachusetts procedural statute, *see Pollock v. New England Tel. & Tel. Co.*, 194 N.E. 133, 134 (Mass. 1935) (citing MASS. GEN. LAWS ch. 231, § 7), that has since been repealed.

Nationstar and Freddie Mac and affirms the Recommended Decision on the breach of contract claim.

## B.    Count II:  Negligence

The Magistrate Judge recommended that the Court dismiss Count II as against both Nationstar and Freddie Mac.  *Rec. Dec.* at 34.  Citing Maine law, he ruled that there was no special duty of care between either Nationstar or Freddie Mac and REH, Jr.  *Id.* at 12 (citing *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶¶ 1, 10, 54 A.3d 710; *Camden Nat'l Bank v. Crest Constr., Inc.*, 2008 ME 113, ¶ 11, 952 A.2d 213).  This was so because they engaged in an "arms-length commercial relationship," *id.*, and REH, Jr.'s assertion—in his briefing—that he "let down his guard and bars based on what Nationstar stated in their letter dated March 1, 2013" is insufficient to generate a duty.  *Id.* (citing *Pl. Hamilton, Jr.'s Supplemental Opp'n to Nationstar Mortg., LLC's Mot. to Dismiss Pls.' Compl.* at 4 (ECF No. 48) (*Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss*)).

None of the parties discussed the negligence count in their objections or replies. *See Pls.' Objection* at 1-5; *Defs.' Objection* at 1-21; *Pl.'s Reply* at 1-10.  Because no party objected to the Magistrate Judge's recommendation that Count II be dismissed, the Court accepts the recommendation.  The Court dismisses Count II as against Nationstar and Freddie Mac.

## C.    Counts III, IV, and V:  Misrepresentation

Count III alleges negligent misrepresentation, *Compl.* ¶¶ 117-27; Count IV alleges intentional misrepresentation, *id.* ¶¶ 128-38; Count V alleges fraud

"(Concealment)." *Id.* ¶¶ 139-47. All three counts allege that Nationstar and Freddie Mac made the misrepresentations to REH, Jr.

### 1. The Recommended Decision

The Magistrate Judge observed that negligent misrepresentation and intentional or fraudulent misrepresentation all share two common characteristics: (1) the making of a false statement, and (2) the plaintiff's justifiable reliance on the false statement, to his detriment. *Rec. Dec.* at 12-13 (citing *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443; *Me. Eye Care Assocs., P.A. v. Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707). As to Nationstar, the Magistrate Judge identified four possible misrepresentations alleged in the Complaint:

> (1) that Nationstar did not inform [REH, Jr.] that it would enter onto his property; (2) that Nationstar did not respond to his requests for documents and information, including documents and information about his private mortgage insurance; (3) that Nationstar misrepresented the extent of PODY's legal services in charging his account to the extent it did; and (4) that misrepresentations were made in the statements concerning the principal balance, interest, fees, and expenses associated with his loan.

*Id.* at 13. As to Freddie Mac, the Magistrate Judge found two broad categories of possible misrepresentations alleged in the Complaint: (1) that Freddie Mac "failed to provide [REH, Jr.] with documents and answers in response to his requests and complaint letters," and (2) that it "withheld the same to mislead him." *Id.* at 26.

The Magistrate Judge concluded that the Complaint had sufficiently alleged that REH, Jr. had relied on these representations, that he did so justifiably, and that they caused a detriment to him. *Id.* at 13, 26.

### 2.      Nationstar and Freddie Mac's Objection

First, the Defendants argue that the first two Nationstar "misrepresentations" identified by the Magistrate Judge are not false statements because they constitute silence.  *Defs.' Objection* at 11 ("The Defendants' silence does not amount to the making of a false statement") (without citation).  They further argue that the third Nationstar misstatement identified by the Magistrate Judge, regarding the extent of PODY's legal services, is not a misstatement.  *Id.*  In their view, the Complaint alleged, not that Nationstar misstated the amount of legal services, but that REH, Jr. should not have been charged for them because PODY "'botched the case.'"  *Id.* (quoting *Compl.* ¶ 41(D)).

As to the fourth misstatement identified by the Magistrate Judge—regarding the amount of principal, interest, fees, and expenses—the Defendants observe that the Complaint does not make this allegation against Freddie Mac.  *Id.*  They also contend that the Complaint does not allege that REH, Jr. relied on these statements, and the Magistrate Judge's ruling that he "could have relied" on them improperly reads factual allegations into the Complaint.  *Id.* (citing *Rec. Dec.* at 13, 26).  In addition, they argue that the Complaint identifies no actions or inactions that REH, Jr. took in reliance on the Defendants' alleged misrepresentations.  *Id.* at 11-12.

### 3.      Mr. Hamilton, Jr.'s Response

REH, Jr. largely refers to his arguments in previous briefing.  *Pl.'s Reply* at 2-3.  Through these references, he claims that numerous statements or omissions by Nationstar and Freddie Mac are actionable: (1) Nationstar's alleged failure to notify REH, Jr. before it entered his residence in May 2013, *Pl.'s Supplemental Opp'n to*

*Nationstar's Mot. to Dismiss* at 7 (citing *Compl.* ¶ 27(I)); (2) Nationstar's refusal to provide documents requested by REH, Jr., *id.* (citing *Compl.* ¶ 29(A), (B)); (3) Nationstar's failure to answer a complaint letter, *id.* (citing *Compl.* ¶ 30(F)); (4) Nationstar's failure to provide documents regarding REH, Jr.'s PMI, *id.* at 7-8 (citing *Compl.* ¶¶ 42, 42(A), (C), (F)); (5) Nationstar's representation of the PODY legal fees, *id.* at 8 (citing *Compl.* ¶¶ 40, 41); (6) representations by Nationstar, BOA, and Shapiro & Morley, LLC, regarding the ownership of REH, Jr.'s loan, *Pl.'s Reply* at 3 (citing *Compl.* ¶ 46); (7) Freddie Mac's accessing REH, Jr.'s credit report "without any apparent authority to do so," *id.* (citing *Compl.* ¶ 46); and (8) Freddie Mac's alleged "concealment" of the ownership of REH, Jr.'s loan. *Id.* (citing *Compl.* ¶ 46).

REH, Jr. also made one short argument (identically, in two previous briefs) regarding reliance:

> Plaintiff asserts that Hamilton, Jr. was forced to rely on this information because Freddie Mac [and Nationstar] would not provide the accurate information to Hamilton, Jr. In reality, Freddie Mac's [and Nationstar's] malfeasance is the cause of Hamilton, Jr.'s reliance.

*Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 8-9 (without citation); *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 7 (without citation).

### 4. Analysis

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud."[6] Reliance is an element of both negligent misrepresentation, *St. Louis*, 2012 ME 116, ¶ 18, 55 A.3d 443, and fraud or intentional misrepresentation. *Gorman*, 2006 ME 15, ¶ 19, 890 A.2d 707.

---

[6]     Maine has a materially identical requirement. ME. R. CIV. P. 9(b).

The Maine Law Court has written that "[w]hether a party made a misrepresentation and whether the opposing party justifiably relied on a misrepresentation are questions of fact." *St. Louis*, 2012 ME 116, ¶ 19, 55 A.3d 443.

The Defendants' main point is their assertion (without citation) that mere silence cannot, as a matter of law, constitute a misrepresentation or fraud, absent a special relationship not properly alleged here. *Defs.' Objection* at 11. The Court assumes for purposes of this analysis that the Defendants are correct on this point. *See Ramsey*, 2012 ME 113, ¶ 10, 54 A.3d 710 (holding that an attorney and his title company owed no fiduciary duty to the plaintiff with regards to her purchase of an apartment building because the deal was "based on [an] arms-length business relationship[] alone"); *Camden Nat'l Bank*, 2008 ME 113, ¶ 11, 952 A.2d 213 (noting that "[a] mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer"); *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 11, 762 A.2d 44 ("Standing alone, a creditor-debtor relationship does not establish the existence of a confidential relationship."); *Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-00021-NT, 2013 U.S. Dist. LEXIS 83762, at *17 (D. Me. June 14, 2013) (summarizing relevant Maine caselaw); *but see Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993) (holding that a fiduciary relationship existed between a bank loan officer and a borrower).[7] Although *Morris* provides some support for REH,

---

[7]     In *Morris*, the Maine Law Court explained why, under this set of facts, a fiduciary relationship could exist between the bank loan officer and borrower:

> Baychar [the borrower] expressed to Young [the bank loan officer] her concerns about Wood's [the contractor] capabilities and asked him whether she should continue with Wood as the contractor. Young professed superior knowledge of Wood's integrity and work performance. Baychar placed her trust in that superior knowledge when she

Jr., his allegations are much more like *Ramsey*, where the Maine Law Court found no fiduciary relationship existed because it was "based on [an] arms-length business relationship[] alone." *Ramsey*, 2012 ME 113, ¶ 10, 54 A.3d 710.

Even so, this does not entitle the Defendants to a dismissal of Counts III, IV and V because REH, Jr. has alleged affirmative statements which he contends misled him. In the Magistrate Judge's words, the representations include "allegations upon which he arguably could have relied (e.g., the amount of the principal and interest) to his detriment (e.g., did not make payments or bring the account current because he was unable to pay the alleged excessive amount claimed)." *Rec. Dec.* at 13. The Defendants' argument that REH, Jr. failed to articulate how he relied on the Defendants' misrepresentations about the amount of principal and interest in his loan squeezes common sense out of the lender–borrower relationship. At least for purposes of a motion to dismiss, it is not too great an inferential leap to conclude that an individual borrower would have relied to his detriment on a commercial lender's erroneous records for determining the amount of principal and interest owed. The Court affirms the Magistrate Judge's decision not to dismiss Counts III, IV and V.

---

continued with Wood rather than seeking an alternate contractor. Moreover, Young was in a superior position to Baychar in relation to Wood due to Young's extensive prior experience with Wood and his knowledge about Wood's financial condition. Young assured Baychar of Wood's integrity, recommended against Baychar seeking another contractor, and directed Baychar to disburse funds to Wood. On the evidence before it, the jury rationally could have found the existence of a fiduciary relationship between Baychar and Young and Young's breach of a fiduciary duty to Baychar.

*Morris*, 622 A.2d at 712.

## D.  Count VI:  Unfair Trade Practices Act

Count VI alleges a violation of the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 206-14.  *Compl.* ¶¶ 148-52.  It levels this allegation against Freddie Mac, Nationstar, PODY, and Attorney York.  *Id.*  Count VI differentiates between REH, Jr. and REH, Sr.; REH, Jr.'s allegations are leveled against Nationstar, Freddie Mac, PODY and Attorney York; and REH, Sr.'s allegations are pressed only against PODY and Attorney York.  *Id.* ¶ 152.

### 1.  The Recommended Decision

The Magistrate Judge recommended that Count VI not be dismissed as against Nationstar and Freddie Mac, *Rec. Dec.* at 34, largely because the Complaint's allegations of misrepresentations and lack of response to REH, Jr.'s inquiries could constitute "unfair or deceptive acts" under the UTPA.  *Id.* at 14-15, 26.  The Magistrate Judge noted REH, Jr.'s arguments that Nationstar's conduct left him unable to "calculate the true and correct balance owed" and that he "lost money and property," *id.* at 15, but the Recommended Decision did not expressly adopt those arguments.  *See id.*

The Magistrate Judge recommended that Count VI be dismissed as against PODY and Attorney York, *id.* at 34, and no party objected to this dismissal.  *See Pls.' Objection* at 1-5; *Defs.' Objection* at 1-21; *Pl.'s Reply* at 1-10; *Defs.' Reply* at 1-5.

### 2.  Nationstar and Freddie Mac's Objection

The Defendants object to the Recommended Decision, arguing principally that REH, Jr.'s failure to state a claim under their three misrepresentation counts should also scuttle the UTPA claim.  *Defs.' Objection* at 12.  The Defendants next argue that

the allegations in paragraphs 149-51 of the Complaint are "'threadbare recitals of the elements of a cause of action' [and] should be disregarded." *Id.* at 13 (quoting *Ocasio-Hernandez*, 640 F.3d at 12). Finally, the Defendants contend that the Recommended Decision ignores the key fact that REH, Jr. has not made any payments on the mortgage since 2007; in their view, REH, Jr. could have mitigated his damages by making payments on the mortgage or obtaining his balances from earlier loan servicers. *Id.*

### 3. Mr. Hamilton, Jr.'s Response

REH, Jr. argues that his nonpayment on the mortgage since 2007 is irrelevant. *Pl.'s Reply* at 3. He contends that he has incurred substantial out of pocket costs and damages, *id.* at 4 (citing *Compl.* ¶ 48), and that Nationstar and Freddie Mac have added "fictitious and improper charges" to his loan balance. *Id.* (without citation). REH, Jr. also repeats arguments from earlier briefing that: (1) Nationstar and Freddie Mac have failed to provide documents that he requested, *id.* (citing *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 10 (without citation); *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 8 (without citation)); (2) Nationstar and Freddie Mac concealed documents and information from REH, Jr., *id.*, "which denies [him] the ability to calculate the true and correct balance owed on his mortgage loan," *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 8 (without citation); *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 10 (without citation); (3) he lost money "because of Freddie Mac's actions in their trade and commerce," *Pl.'s. Opp'n to Freddie Mac's Mot. to Dismiss* at 8 (without citation); and (4) Nationstar and Freddie Mac violated the law as described in Counts IX, X (applies to Freddie Mac only), XI

(applies to Nationstar only), XII, and XIII. *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 10 (without citation); *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 8 (without citation).

### 4. Analysis

The Court has affirmed the Magistrate Judge's recommendations regarding Counts III, IV and V, and therefore, to the extent the Defendants' argument assumes their dismissal, their argument must fail. Furthermore, even if Counts III, IV and V had not survived the motion to dismiss, Count VI does not turn on liability for one or another form of "misrepresentation" in the legal sense; it is a separate statutory cause of action. *See* 5 M.R.S. §§ 206-14. The Defendants' remaining issues do not require further discussion.

The Court affirms the Magistrate Judge's denial of the motion to dismiss as to Count VI as against Nationstar and Freddie Mac, and affirms the Magistrate Judge's grant of the motion to dismiss as to Count VI as against PODY and Attorney York.

### E. Counts VII and VIII: Intentional and Negligent Infliction of Emotional Distress

Count VII alleges Intentional Infliction of Emotional Distress (IIED) against Nationstar and Freddie Mac, *Compl.* ¶¶ 153-60; Count VIII alleges Negligent Infliction of Emotional Distress (NIED) against the same Defendants. *Id.* ¶¶ 161-64.

### 1. The Recommended Decision

The Magistrate Judge recommended that Count VII not be dismissed as against Nationstar and Freddie Mac, but that Count VIII be dismissed. *Rec. Dec.* at 34. The Magistrate Judge reasoned that dismissal of the NIED count was

appropriate because REH, Jr. does not enjoy a "special relationship" with Nationstar or Freddie Mac. *Id.* at 16, 26. However, the Magistrate Judge concluded that the IIED count should survive because Count VII alleged "intentional misrepresentations motivated by malice, which, if true, could fairly and reasonably be characterized as extreme and outrageous conduct utterly intolerable in a civilized society." *Id.* at 16; *see id.* at 26.

### 2. Nationstar and Freddie Mac's Objection

The Defendants object to the Recommended Decision insofar as it recommends that Count VII (the IIED count) survive dismissal. *Defs.' Objection* at 14-15. First, they argue that REH, Jr.'s failure to adequately plead any of the three misrepresentation counts means that Nationstar and Freddie Mac cannot be liable for the "extreme and outrageous" misrepresentations identified by the Magistrate Judge. *Id.* at 14. Second, they argue that REH, Jr. has failed to offer any factual allegations that would back up the elements of the tort alleged in Count VII. *Id.* at 14-15. The Defendants condemn paragraphs 155 through 158 of the Complaint as "'threadbare recitals of the elements of a cause of action.'" *Id.* at 15 (quoting *Ocasio-Hernandez*, 640 F.3d at 12).

### 3. Mr. Hamilton, Jr.'s Response

REH, Jr. does not object to the Magistrate Judge's recommendation that the NIED claim be dismissed. *See Pl.'s Reply* at 1-10. His decision not to object is certainly a correct one. *See Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 15 n.7, 66 A.3d 585.

However, REH, Jr. incorporates by reference his arguments in prior briefing with respect to the IIED claim. *Pl.'s Reply* at 4. In earlier papers, he argued that: (1) Nationstar and Freddie Mac violated federal and state statutes designed to protect the public, as outlined in Counts VI, IX, X (applies to Freddie Mac only), XI (applies to Nationstar only), XII, and XIII, *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 10-11; *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 9; (2) both Defendants failed to provide documents and other information as requested, and actively concealed documents and information regarding REH, Jr.'s mortgage, *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 11; *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 9; and (3) the Defendants knew their actions were "intentional, . . . extreme, and would cause emotional distress to [REH, Jr.]." *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 11; *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 9. REH, Jr. cites only paragraph 47(L) of the Complaint for these assertions. *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 10-11; *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 8-9.

### 4. Analysis

Under Maine law, a claim for IIED requires that the plaintiff establish:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;

(3) the actions of the defendant caused the plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.

*Me. Mut. Fire Ins. Co. v. Gervais*, 1998 ME 197, ¶ 12, 715 A.2d 938.

The Complaint in this case offers very little on which to ground a claim of IIED. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Paragraph 47(L), cited by REH, Jr., states:

> REH, Jr. suffered and continues to suffer from mental anguish, distress, anxiety, pain, indignation, despair, severe headaches, severe tension, severe trauma, and is unable to eat, sleep, and cope with daily life.

In the Court's view, these allegations would sufficiently plead "severe" emotional distress, the fourth element of the tort. The Court also assumes, for the sake of argument, that the conduct alleged against Nationstar and Freddie Mac might be "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community." *Gervais*, 1998 ME 197, ¶ 12, 715 A.2d 938.[8] Read generously, paragraph 47(I) could establish the causation element. *See Compl.* ¶ 47(I) ("The combining impact and magnitude of the problems with REH, Jr.'s property has created a very tense and dire situation for REH, Jr.").

Regarding the Defendants' claim that the Complaint does not contain sufficient specificity to make out a case for their intentional conduct, the standard under Maine law is not just intentional but also reckless conduct. *Gervais*, 1998 ME

---

[8] This is a doubtful assumption. Garden variety fraud and misrepresentation are not normally sufficient to make out a cause of action for IIED. *See, e.g.*, *Order Granting in Part and Denying in Part Defs.' Mot. for Summ. J.* at 212-16 (ECF No. 236), *Goldenson v. Steffens*, No. 2:10-cv-00440-JAW (D. Me. Mar. 7, 2014) (analyzing an IIED claim arising from alleged securities fraud).

197, ¶ 12, 715 A.2d 938 ("intentionally or recklessly inflicted"). The Complaint alleges a series of acts by the Defendants that, even if not intentional, could be deemed reckless.

In light of the allegations that the Defendants' conduct related to REH, Jr.'s residence and affected his financial security, the Court affirms the Magistrate Judge's denial of the motion to dismiss Count VII (the IIED count), and affirms the Magistrate Judge's grant of the motion to dismiss Count VIII (the NIED count).

### F.    Count IX:  Fair Debt Collection Practices Act

Count IX alleges that Nationstar and Freddie Mac violated the "Fair Debt Collection Practices Act." *Compl.* ¶¶ 165-71.  This could refer to one or both of two statutes: the Maine Fair Debt Collection Practices Act (Maine FDCPA), 32 M.R.S. §§ 11001 *et seq.*, and the Federal Fair Debt Collection Practices Act (Federal FDCPA), 15 U.S.C. §§ 1692 *et seq.*

#### 1.    The Recommended Decision

The Magistrate Judge recommended that Count IX not be dismissed because a fact-finder could conclude that Nationstar and Freddie Mac were "debt collectors" within the meaning of the Maine FDCPA and the Federal FDCPA, and the misrepresentations alleged against Nationstar and Freddie Mac could violate either statute. *Rec. Dec.* at 17, 26-27.

#### 2.    Nationstar and Freddie Mac's Objection

In their objection, the Defendants press only the argument that they did not make any of the alleged misrepresentations "'in connection with the collection of any debt.'" *Defs.' Objection* at 16 (quoting 32 M.R.S. § 11013; 15 U.S.C. § 1692e).  They

argue that the Complaint "'must allege a scenario involving the collection (or attempted collection) of a debt.'" *Id.* (quoting *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002)). However, in their view, the Complaint does not allege that they sought to collect any debts from REH, Jr. *Id.* They also dispute that the Complaint contains any allegation that Nationstar or Freddie Mac employed any agent to attempt to collect the debt. *Id.* Finally, they argue that Freddie Mac's alleged accessing of REH, Jr.'s credit reports does not show that it was trying to collect a debt. *Id.*

### 3.    Mr. Hamilton, Jr.'s Response

REH, Jr. begins by referencing his previous filings as a basis for opposing the Defendants' present objections. *Pl.'s Reply* at 5. Relevant to whether the Defendants sought to collect a debt, REH, Jr. previously argued that: (1) Nationstar directed Shapiro & Morley, LLC to send letters threatening foreclosure on March 22, 2013 and June 26, 2013, *Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 12 (citing *Compl.* ¶ 36(E), (F)); and (2) Freddie Mac directed "their lawyers" to send letters threatening foreclosure. *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 10 (without citation). In his briefing on the present opposition, REH, Jr. also argues that Freddie Mac's accessing his credit reports showed an attempt to collect on his loan. *Pl.'s Reply* at 6 (citing *Compl.* ¶ 46(I)).

REH, Jr. also directs the Court to a Complaint for Foreclosure by Civil Action filed by Nationstar against REH, Jr. (and REH, Sr. as a party in interest) in Portland District Court, Docket No. RE 14-24, *id.* at 7, of which the Magistrate Judge took judicial notice following the issuance of the Recommended Decision at issue here. *See*

*Order on Pl.'s Req. for Judicial Notice* at 3 (ECF No. 104) (July 30, 2014) (taking notice of *Pl.'s Req. for Judicial Notice* Attach. 8 *Compl. for Foreclosure by Civil Action* (ECF No. 87) (*2014 Foreclosure Proceeding*)).

### 4.   Analysis

As the Magistrate Judge observed, the Maine and Federal FDCPA statutes "prohibit[] certain debt collection practices, including false representations regarding the amount of the debt and false reporting of credit information." *Rec. Dec.* at 16 (citing 32 M.R.S. § 11013(2)(B), (H)).   The statutes limit their reach to actions "in connection with the collection of any debt."   32 M.R.S. § 11013; 15 U.S.C. § 1692e. The Defendants argue only that the Complaint fails to allege that Nationstar's and Freddie Mac's allegedly wrongful actions were taken "in connection with the collection of any debt." *Defs.' Objection* at 16.

The Complaint alleges that either Nationstar or Freddie Mac currently holds the mortgage, *Compl.* ¶ 46, and that attorneys representing Nationstar wrote to REH, Jr. on March 25, 2013, indicating that Nationstar had "referred your loan to us for foreclosure on behalf of Nationstar Mortgage, LLC"; "[t]he name of the creditor to whom the debt is owed is Nationstar Mortgage, LLC"; and the amount of the debt. *Id.* ¶ 43(A).   Furthermore, it appears that as of February 4, 2014, Nationstar has again begun foreclosure proceedings on the property. *2014 Foreclosure Proceeding*. In the face of these facts and allegations, the Defendants' claim that "[n]one of this conduct implies that either Defendant was attempting to collect a debt from REH, Jr.," *Defs.' Objection* at 16, is an extremely curious one.

The Defendants may be suggesting that attempts to foreclose are different from attempts to collect the underlying debt. Granted, foreclosing property is not precisely the same thing as attempting to collect a debt; it is a lender's remedy when a debt goes unpaid. But this distinction seems hyper-technical, and the cases imputing "debt collector" status to a loan servicer when it takes possession after the debt was in default do not draw this distinction. *E.g.*, *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 357, 359 (6th Cir. 2012); *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (citing *Bridge*, 681 F.3d at 359). There is no sensible reason to treat a foreclosure as so different from an attempt to collect the underlying debt; both are legal actions against a debtor, both are for the benefit of a creditor, and—assuming, as the Defendants do in their objection, that the Defendants are debt collectors—both are conducted by persons within the scope of both the Maine and Federal FDCPA. Furthermore, as the Sixth Circuit has observed, the Federal FDCPA "'is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute.'" *Bridge*, 681 F.3d at 362 (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)).

The Court concludes that the Complaint's factual allegations that Nationstar and Freddie Mac attempted to foreclose on the mortgage describe actions taken "in connection with the collection of any debt." 32 M.R.S. § 11013; 15 U.S.C. § 1692e. As this is the Defendants' only ground for objection to the Recommended Decision, the

Court overrules their objection and adopts the Recommended Decision to deny the motion to dismiss with respect to Count IX.

## G.    Count X:  Truth in Lending Act

Count X alleges that Freddie Mac—but not Nationstar—violated the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.*  *Compl.* ¶¶ 172-79.

### 1.    The Recommended Decision

The Magistrate Judge recommended that the Court not dismiss the TILA claim against Freddie Mac.  *Rec. Dec.* at 34.  He reasoned that the Complaint alleged that Freddie Mac provided inaccurate information to REH, Jr., which would be a violation of TILA if proven to be true.  *Id.* at 28.  Specifically, the Magistrate Judge found the Complaint alleged that Freddie Mac "knowingly charged interest above the stated rate, failed to disclose the fact that [REH, Jr.] could cancel private mortgage insurance, and allowed him to continue paying for the insurance for 117 months."  *Id.* at 27.

### 2.    Freddie Mac's Objection

The Defendant objects, first, that TILA does not address private mortgage insurance, making the second and third allegations identified by the Magistrate Judge irrelevant to the TILA claim.  *Defs.' Objection* at 20 (citing 15 U.S.C. §§ 1601 *et seq.*).  The Defendant further argues that the Complaint "does not allege that Freddie Mac sent [REH, Jr.] anything between June 28, 2013[,] when it became involved in the Mortgage[,] and September 20, 2013[,] when the Complaint was filed." *Id.*  Rather, Freddie Mac points out, the Complaint alleges that Nationstar (which is not alleged to have violated TILA) sent three letters to REH, Jr. in this time period.

*Id.* (citing *Compl.* ¶ 40(H)-(J)).   Finally, the Defendant takes exception with the Complaint's failure to cite any specific provision of TILA that it allegedly breached. *Id.* at 21.

### 3.    Mr. Hamilton, Jr.'s Response

In response, REH, Jr. argues that "improper PMI payments, improper amounts charged to the escrow account, and ongoing damages, have a direct affect [sic] determining if the correct amount of interest is being charged on Plaintiff's mortgage loan." *Pl.'s Reply* at 8.   He also references his earlier opposition to Freddie Mac's motion to dismiss.   *Id.*   In this earlier filing, he argued that the following allegations made the TILA claim sufficiently pleaded: (1) Freddie Mac "knowingly charged interest above the stated rate per annum on [REH, Jr.'s] mortgage loan;" and (2) Freddie Mac failed to disclose to REH, Jr. that he could opt out of his PMI, and allowed REH, Jr. to continue to pay his PMI premiums.   *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 10.

### 4.    Analysis

"Congress enacted the TILA in 1968 'to assure a meaningful disclosure of credit terms' and 'to protect the consumer against inaccurate and unfair credit . . . practices.'"   *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006) (quoting 15 U.S.C. § 1601(a)).   Under TILA,

> [a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

15 U.S.C. § 1639g. In addition, a creditor who becomes "the new owner or assignee of the debt shall notify the borrower in writing of such transfer." *Id.* § 1641(g)(1).

The Complaint alleges that Nationstar notified REH, Jr. on March 7, 2013 that it was the new loan servicer. *Compl.* ¶ 35. However, the Complaint also raises allegations from which a fact-finder could reasonably infer that Nationstar, and later Freddie Mac, actually became the "new owner or assignee of the debt," *id.* ¶ 46(D), (F), but did not send the proper notice to REH, Jr. *Id.* ¶ 46. The Complaint also alleges that REH, Jr. received statements that were inaccurate. *Id.* ¶¶ 40-41. In sum—before reaching the issue of the PMI—the Court concludes that the Complaint raises a sufficient allegation of a TILA violation with respect to whether Freddie Mac notified REH, Jr. of the new ownership of his loan.

The Defendant argues that TILA does not require disclosures regarding private mortgage insurance, at least after the origination of the loan. *Defs.' Objection* at 20. However, there is some controversy on this point among court decisions interpreting TILA.

Part B of TILA, governing credit transactions, requires that:

For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose . . . (16) [i]n the case of a variable rate residential mortgage loan for which an escrow or impound account will be established for the payment of all applicable taxes, insurance, and assessments—(B) . . . the amount of the fully indexed monthly payment due under the loan . . . including the monthly payment deposited in the account for the payment of all applicable taxes, insurance, and assessments.

15 U.S.C. § 1638(a), (a)(16), (a)(16)(B).[9]  The definitions section of the statute does not contain a discrete definition for "insurance."  *Id.* § 1602.  Absent such a definition, the Court reads "insurance" to include any insurance for which the debtor is regularly making payments as part of the mortgage payment.  *See Compl.* ¶ 15(G).

A "creditor" is "the person to whom the debt arising from the consumer credit transaction is *initially* payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g) (emphasis added).  Part B of the Act limits the liability of an "assignee for consumer credit transactions secured by real property":

> Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter, . . . with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if--
>
> (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and
>
> (B) the assignment to the assignee was voluntary.

*Id.* § 1641(e)(1).[10]

---

[9]     Although the Complaint does not state that REH, Jr.'s loan was a "variable rate residential mortgage loan," *see Compl.* ¶¶ 14-15, it does specify that it was a "residential mortgage loan," *id.*, and this fact can be easily flushed out in discovery.  The Court does not view this omission as fatal under federal pleading requirements.

[10]     A "servicer" of a consumer obligation is not exposed to the same liability as an assignee creditor.  "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section [15 U.S.C. § 1641] unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f).  A "servicer," in this context, is "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  *Id.* § 1641(f)(3); 12 U.S.C. § 2605(i)(2).  "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).

As discussed above, a fact-finder could reasonably infer that Freddie Mac was an assignee of REH, Jr.'s loan, and not simply a servicer, based on the factual allegations in the Complaint.  *E.g.*, *Compl.* ¶ 46(F), (I).  Thus, taking the allegations of the Complaint as true, Freddie Mac cannot be absolved of liability as a mere loan servicer.

There is a split of authority among the federal courts on whether a later assignee of the original creditor may be held liable under § 1641(e) for violations of the Act that occur after the origination of the loan. *Lucien v. Fed. Nat'l Mortg. Ass'n*, No. 13-CV-62399-HUCK/OTAZO-REYES, 2014 U.S. Dist. LEXIS 73401, at *19-22 (S.D. Fla. May 23, 2014) (collecting cases). Some courts have held that "assignees cannot be liable under TILA for obligations that arose after the assignment took place because, by definition, those violations could not have been 'apparent on the face of the disclosure statements' provided by the original creditor." *Id.* at *21 (citing *Vincent v. The Money Store*, 736 F.3d 88, 109 (2d Cir. 2013) and other district court cases). Others have held that "assignees *can* be liable for servicing failures, reasoning that creditors and assignees are identically situated with regards to post-origination violations, and should be treated the same under the statute." *Id.* at *21-22 (citing *Runkle v. Fed. Nat'l Mortg. Ass'n*, 905 F. Supp. 2d 1326, 1333 (S.D. Fla. 2012) and other district court cases) (emphasis in original).

In *Lucien*, a borrower sued the owner of her mortgage loan and her loan servicer, alleging that the servicer had failed to provide an accurate payoff statement in response to a written request. *Id.* at *2-3. The owner of the loan was an assignee of the original lender. *Id.* at *2. The defendants moved to dismiss, arguing, among other things, that as an assignee, the current owner of the loan could not be liable under TILA unless the disclosure deficiency was apparent on the face of the original disclosure statement. *Id.* at *3-4, *20. However, the district court held that "because the informational requirements, such as the request for a payoff statement in this

43

case, can *only* arise after origination, Congress's limitation on Assignee liability in § 1641(e) was not intended for these situations." *Id.* at *22 (emphasis in original). The court reasoned:

> TILA is a consumer protection statute. One of the protections it offers is a mechanism for borrowers to obtain the payoff information for their loans. That Congress would offer this protection only to borrowers whose loans happen to be owned by the original creditor defies the very purpose of the statute—particularly given how common it was in 2009, when Congress amended TILA, for loans to be sold off for securitization.

*Id.* at *22-23.

The same reasoning applies with equal force to disclosures regarding "insurance" required of the original creditor under 15 U.S.C. § 1638(a)(16)—at least where the amount of the insurance payments can change, as apparently REH, Jr.'s did. *See Compl.* ¶ 32(K). If the insurance premiums assessed to the debtor as part of his escrow payment can change over time, then such a change is an "informational requirement[]" that "can *only* arise after origination." *Lucien*, 2014 U.S. Dist. LEXIS 73401, at *22 (emphasis in original). Such a reading also comports with the purpose of the statute "to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). This purpose is served by ensuring that a debtor has accurate and timely information at all times regarding the amount of money he owes under the terms of his loan.[11]

---

[11]    Reading the statute to impose an ongoing requirement to disclose private mortgage insurance premiums complements the Homeowners Protection Act of 1998, 12 U.S.C. §§ 4901 *et seq.*, which requires the loan servicer to annually notify the borrower of his right to cancel or terminate the private mortgage insurance. 12 U.S.C. § 4903(a)(3).

Because the Complaint fairly alleges that Freddie Mac (1) became the owner of REH, Jr.'s loan but did not notify him of this change, *Compl.* ¶ 46; and (2) failed to accurately and timely disclose REH, Jr.'s PMI premiums when it acquired ownership of the loan, *id.* ¶¶ 32, 42, REH, Jr. has sufficiently pleaded a violation of TILA against Freddie Mac. The Court affirms the Recommended Decision as to Count X against Freddie Mac.

## H.  Count XI:  Fair Credit Billing Act

Count XI alleges that Nationstar—but not Freddie Mac—violated the Fair Credit Billing Act (FCBA), 15 U.S.C. §§ 1601 *et seq.*, by producing statements that overstated the outstanding principal and interest on REH, Jr.'s loan. *Compl.* ¶¶ 180-86.

The Magistrate Judge recommended the Court dismiss Count XI because the requirements of the FCBA only apply to open-end credit plans, such as credit cards, and not to mortgage loans. *Rec. Dec.* at 17-18 (citing *Latonnelle v. CitiMortgage, Inc.*, No. 1:10-CV-04066-TWT, 2011 WL 4974839, at *3 (N.D. Ga. Aug. 22, 2011) and other district court cases). The Magistrate Judge ruled that REH, Jr.'s mortgage was not an open-ended credit plan subject to the requirements of the FCBA, and therefore, the Complaint did not state a claim under the FCBA. *Id.* at 18.

REH, Jr. does not object to the Magistrate Judge's recommendation to dismiss Count XI, *see Pls.' Objection* at 1-5, and therefore, the Court adopts the Recommended Decision with respect to that claim, and dismisses Count XI against Nationstar.

## I.       Count XII:  Fair Credit Reporting Act

Count XII alleges that Nationstar and Freddie Mac violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, by reporting inaccurate information to credit reporting agencies.  *Compl.* ¶¶ 187-92.  The Magistrate Judge recommended the Court dismiss Count XII because the FCRA requires a plaintiff to first file a dispute with the relevant credit agency, *Rec. Dec.* at 18-19 (citing 15 U.S.C. § 1681s-2(b)), and the Complaint does not allege REH, Jr. did this.  *Id.* at 19.  REH, Jr. does not object to this recommendation.  *See Pls.' Objection* at 1-5.  The Court adopts the Recommended Decision and dismisses Count XII as against Nationstar and Freddie Mac.

## J.       Count XIII:  Real Estate Settlement Procedures Act

Count XIII alleges that Nationstar and Freddie Mac violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 *et seq.*, by refusing to answer written requests for documents and written complaints, and failing to correct problems REH, Jr. identified in those writings.  *Compl.* ¶¶ 193-98.

### 1.       The Recommended Decision

The Magistrate Judge acknowledged the Complaint alleged that Nationstar had made some responses to REH, Jr.'s requests, *Rec. Dec.* at 20-21, but reasoned that the mere fact of a response was not sufficient to satisfy RESPA; "[t]he quality of the response must also be considered."  *Id.* at 21.  He further ruled that "allegations of injury or damage resulting from a RESPA violation are generally sufficient and need not be described with specificity."  *Id.* (citing *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 721 (6th Cir. 2013); *Diunugala v. JP Morgan Chase Bank, N.A.*, No.

3:12-cv-02106, 2013 WL 5568737, at *5-6 (S.D. Cal. Oct. 3, 2013)). He drew the same conclusion with respect to Freddie Mac. *Id.* at 28-29. Consequently, the Magistrate Judge recommended that Count XIII not be dismissed against either Defendant. *Id.* at 34.

### 2. Nationstar and Freddie Mac's Objection

The Defendants argue that the Magistrate Judge "improperly relie[d] on facts which are outside the face of the Complaint." *Defs.' Objection* at 17. They argue that "[n]one of REH, Jr.'s alleged letters to Nationstar claim that his account is in error." *Id.* (citing *Compl.* ¶¶ 29, 30, 42, 46). In addition, the Defendants contend that none of the letters about hazardous waste relate to his loan account, and his letters requesting documents and information do not impose a duty to investigate upon a loan servicer such as Nationstar. *Id.* at 17-18.

The Defendants also argue that RESPA only imposes duties on loan servicers— not on mortgagees—and that the Complaint never alleges that Freddie Mac is a loan servicer. *Id.* at 18. Freddie Mac apparently raised this argument for the first time in its objection; its original motion to dismiss did not argue that the Complaint failed to allege that Freddie Mac was a loan servicer. *See Mem. of Law in Support of Freddie Mac's Mot. to Dismiss Pls.' Compl.* at 12.[12]

---

[12] REH, Jr. opposed this motion to dismiss on April 11, 2014, *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss,* but the docket shows no response from Freddie Mac to his opposition.

### 3. Mr. Hamilton, Jr.'s Response

REH, Jr.'s response consists entirely of a citation to his previous briefing on the motion to dismiss. *Pl.'s Reply* at 8. However, REH, Jr.'s previous briefing on Count XIII consists entirely of the following:

> COUNT XIII - VIOLATIONS OF RESPA.
>
> Plaintiff asserts that this Count is already covered and is part of other Counts.

*Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 13.

> Count XIII – Violations [o]f Respa.
>
> Plaintiff asserts and adopts by reference Document No. 48 [quoted above] - Count XIII - Violations [o]f Respa, in its entirety.
>
> Plaintiff asserts that this Count is already covered and is part of other Counts.
>
> Plaintiff asserts that Count XIII - Violations [o]f Respa does state a claim upon which relief can be granted.

*Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 11.

### 4. Analysis

RESPA requires the "servicer of a federally related mortgage loan" to respond to certain correspondence from a debtor by "acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays and Sundays)." 12 U.S.C. § 2605(e)(1)(A). This correspondence, called a "qualified written request," *id.*, is defined in detail in the statute. *Id.* § 2605(e)(1)(B). A qualified written request is:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* A "servicer" is "the person responsible for servicing of a loan." *Id.* § 2605(i)(2).

"Servicing" means

receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3).

First, as to Freddie Mac, the Court agrees with the Defendants that the Complaint does not allege that Freddie Mac was the servicer of REH, Jr.'s loan. His interaction regarding "receiving any scheduled periodic payments" was limited exclusively to Nationstar. *See Compl.* ¶¶ 43, 46. The Magistrate Judge did not have an opportunity to consider this argument, because the Defendants did not raise it before him; however, given REH, Jr.'s apparent disinterest in Count XIII, the Court is not inclined to strictly apply the doctrine of waiver in this case.

As to Nationstar, however, the Complaint fairly alleges that REH, Jr.'s letters included "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). Granted, not all of the allegations rise to this standard. For instance, the Complaint alleges that REH, Jr. corresponded with Nationstar to (1) request documents, *Compl.* ¶ 29; and (2) copy them on a request to the Maine Bureau of Consumer Credit

Protection asking about his PMI. *Id.* ¶ 42(C). These do not meet the criteria of § 2605(e)(1)(B)(ii).

However, the Complaint also alleges that REH, Jr. wrote to Shapiro & Morley, LLC, a law firm representing Nationstar, *Compl.* ¶ 43, to "dispute the entire amount on this debt" and request "copies of all documents that show that the debt is owed to Nationstar Mortgage, LLC." *Id.* ¶ 43(B). This alleged writing establishes that REH, Jr. made a qualified written request under RESPA. It alleges that REH, Jr. provided "sufficient detail to the servicer"—by way of its agents, Shapiro & Morley, LLC— "regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). This triggered Nationstar's obligation to acknowledge receipt of the letter within five business days, *id.* § 2605(e)(1)(A), and take action with respect to REH, Jr.'s inquiry. *Id.* § 2605(e)(2). According to the Complaint, however, neither Shapiro & Morley, LLC nor Nationstar itself responded to REH, Jr.'s inquiries. *Compl.* ¶ 43(D). This states a claim under RESPA.

In sum, the Court dismisses Count XIII as against Freddie Mac but not as against Nationstar.

### K.   Count XIV: Defamation (or Libel)

Count XIV alleges that Nationstar, Freddie Mac, PODY, and Attorney York are all liable for common law libel. *Compl.* ¶¶ 199-208. Count XIV differentiates between REH, Jr. and REH, Sr.; REH, Jr.'s allegations are leveled against Nationstar, Freddie Mac, PODY and Attorney York; and REH, Sr.'s allegations are pressed only against PODY and Attorney York. *Id.* ¶ 208.

Regarding REH, Jr.'s allegations, the Complaint alleges that Nationstar and Freddie Mac posted notices on REH, Jr.'s residence between November 2011 and May 2013, "impl[ying] that [the] property had been foreclosed on and the property was owned by BOA," *id.* ¶ 200, and provided false credit information to credit reporting agencies. *Id.* ¶ 201.

Regarding REH, Jr.'s and REH, Sr.'s allegations, the Complaint further alleges that PODY and Attorney York libeled REH, Jr. and REH, Sr. by filing a foreclosure notice in the Cumberland County Registry of Deeds. *Id.* ¶ 202.

### 1.    The Recommended Decision

The Magistrate Judge recommended that the Court dismiss Count XIV as against PODY and Attorney York because the registry notice was absolutely privileged by virtue of its connection to a judicial proceeding. *Rec. Dec.* at 31-32. He further reasoned that PODY and Attorney York were under no legal obligation to post a "release" of the notice. *Id.* at 32.

However, the Magistrate Judge recommended that the Court preserve some of REH, Jr.'s Count XIV claims as against Nationstar and Freddie Mac. *Id.* at 21-23. He acknowledged that an opinion is only actionable in libel if it implies the existence of "'undisclosed defamatory facts.'" *Id.* at 22 (quoting *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991)). Here, he concluded that it was impossible to determine—based only on the facts in the Complaint—that the posting on REH, Jr.'s property was (or was not) an opinion. *Id.*

The Magistrate Judge also acknowledged that federal statutory law preempts common law defamation claims with respect to reports to credit agencies, *id.* at 23

(citing 15 U.S.C. § 1681t(b)(1)(F)), but applied this conclusion only to the "false light" claim contained in Count XV. *Id.* He viewed the "more general defamation claim" of Count XIV to relate only "to the notice posted on [REH, Jr.'s] property." *Id.*

### 2. Nationstar and Freddie Mac's Objection

The Defendants object that, as to Nationstar, the Magistrate Judge only considered one of the four elements of a libel claim under Maine common law, while the Complaint is deficient on the other three elements. *Defs.' Objection* at 19. Again, Nationstar did not raise this argument in its briefing to the Magistrate Judge. *See Nationstar's Mot. to Dismiss* at 20 (arguing, with respect to the posted notice, only that the posting was a non-actionable opinion); *Def., Nationstar Mortg., LLC's Reply to Pl. Richard E. Hamilton's Opp'n [DE #33] and Supplemental Opp'n [DE #48] to Nationstar's Mot. to Dismiss* at 1-6 & n.1 (ECF No. 55) (raising arguments only as to breach of contract, negligence, misrepresentation, fraud, and UTPA).

The Defendants also contend that Freddie Mac had no involvement with REH, Jr.'s mortgage until after the alleged notice was posted on the property, and thus, could not be liable for defamation arising from the posting. *Defs.' Objection* at 20. Freddie Mac did raise some approximation of this argument to the Magistrate Judge. *See Mem. of Law in Support of Freddie Mac's Mot. to Dismiss Pls.' Compl.* at 12-13.

### 3. Mr. Hamilton, Jr.'s Response

REH, Jr. limits himself to referencing his previous pleadings in opposition to the motions to dismiss. *Pl.'s Reply* at 8. In these pleadings, REH, Jr. did not meaningfully address the Defendants' contention that he has not pleaded all the

required elements of libel. *See Pl.'s Supplemental Opp'n to Nationstar's Mot. to Dismiss* at 13-14; *Pl.'s Opp'n to Freddie Mac's Mot. to Dismiss* at 11-12.

### 4. The Plaintiffs' Objection; PODY and Attorney York's Response

The Plaintiffs object to the Magistrate Judge's recommendation that Count XIV be dismissed as against PODY and Attorney York. *Pls.' Objection* at 4. However, they devote no briefing in their objection to either Count XIV or the related false light claim, focusing instead on the abuse of process claim. *See id.* at 1-5. PODY and Attorney York note this deficiency in their reply, arguing that any objection to the dismissal of Count XIV is waived. *Defs.' Reply* at 1-4.

### 5. Analysis[13]

In Maine, the tort of defamation has four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447. "A false statement must be 'an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts.'" *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083 (quoting *Lester*, 596 A.2d at 69).

---

[13] As with Count XIII, the Court would be well justified in applying the doctrine of waiver to the Defendants' newly raised arguments regarding the sufficiency of the libel count. *See* Section III.J.4, *supra*. However, in fairness to the Defendants and in the interest of getting to the right answer, the Court will consider them. As noted earlier, the Court considered arguments raised by the Plaintiffs that violated District of Maine Local Rule 7(b). *See, e.g.*, *supra* note 4.

### a.     The Posting of May 20, 2013

The Complaint alleges that on May 20, 2013, "REH, Sr. found an 'Important-We Found This Property To Be Vacant/Abandoned' notice posted on the front door . . . by Safeguard Properties." *Compl.* ¶ 27(I).  Paragraph 11, though somewhat murky, could be generously read to suggest that Safeguard was an agent of Nationstar.  *See id.* ¶ 11.

The Magistrate Judge ruled that it would be improper to conclude at the motion to dismiss stage that the posting was an opinion, and therefore, non-defamatory.  *Rec. Dec.* at 22.  The Defendants now argue, for the first time, that the Complaint fails to allege that (1) Nationstar "published" the statement within the meaning of the law; (2) Nationstar was negligent in posting the notice; or (3) REH, Jr.'s alleged damages were caused by the posting.  *Defs.' Objection* at 19.

"'[T]he issue of publication has received limited attention from the Maine Supreme Judicial Court.'"  *Sandler v. Calcagni*, 565 F. Supp. 2d 184, 193 (D. Me. 2008) (quoting JACK H. SIMMONS ET AL., MAINE TORT LAW § 13.09 (LexisNexis 2004)).  However, Maine generally follows the Restatement (Second) of Torts on defamation.  *See Lester*, 596 A.2d at 69.  The Restatement gives additional guidance on publication:

> (1) Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.

> (2) One who intentionally and unreasonably fails to remove defamatory matter that he knows to be exhibited on land or chattels in his possession or under his control is subject to liability for its continued publication.

RESTATEMENT (SECOND) OF TORTS § 577 (1977).  The Complaint alleges that Safeguard posted the defamatory notice on REH, Jr.'s property and based on the

language of the notice, it was directed to persons other than the Plaintiffs. *Compl.* ¶ 27(I).

A defamatory statement must also be either (1) actionable per se or (2) the cause of special damage to the plaintiff. *Morgan*, 2008 ME 26, ¶ 26, 941 A.2d 447. Defamatory statements "written falsely about a person's profession, occupation, or official station constitute libel per se." *Ballard*, 2005 ME 86, ¶ 10, 877 A.2d 1083. The posting of May 20, 2013 was none of these, and thus, the Complaint has to allege that REH, Jr.'s damages were caused by the posting. Although paragraphs 48 and 203 are conclusory, REH, Jr. alleges in paragraph 48 that "as a direct result of the actions of the Defendants and their agents," he suffered "emotional distress . . . loss of reputation, medical costs, [and] loss of earnings," and in paragraph 203 that "the posted notices . . . caused harm to the business reputation of REH, Jr." *Compl.* ¶¶ 48, 203.

The Court concludes that the alleged posting on May 20, 2013, as described in the Complaint, is sufficient to give rise to a cause of action in libel against either Nationstar or Freddie Mac because it alleges publication and causally-related damages.[14]

### b.    The Credit Reports

The Magistrate Judge concluded, and REH, Jr. does not dispute, that the Federal Fair Credit Reporting Act supersedes state defamation law as to the allegedly

---

[14]    In light of the factual confusion on when, or if, Freddie Mac became the owner of the loan, the Court does not reach the Defendants' contention that the posting of May 20, 2013 preceded Freddie Mac's involvement. *Defs.' Objection* at 20.

false credit reports. *See Rec. Dec.* at 23; *Pls.' Objection* at 1-5. The Court agrees that 15 U.S.C. § 1681t(b)(1)(F) supersedes any state law that would cover the subject matter of 15 U.S.C. § 1681s-2, which governs the responsibilities of persons who furnish information to consumer credit reporting agencies. Because the allegedly false credit reports are governed by § 1681s-2, REH, Jr. may not proceed on his state common law libel claim with respect to that subject matter.

### c.      The Registry of Deeds Filing

The Magistrate Judge concluded that the filing in the registry of deeds was absolutely privileged, and neither PODY nor Attorney York was under any obligation of law to remove it. *Rec. Dec.* at 31-32. The Plaintiffs have not offered any legal authority to challenge this conclusion, *see Pls.' Objection* at 1-5, and the Court agrees that this is a correct application of the law of privilege. *See Raymond v. Lyden*, 1999 ME 59, ¶ 6, 728 A.2d 124.

### d.      Conclusion as to Count XIV

The Court concludes that the Complaint sufficiently alleges libel against Nationstar and Freddie Mac based on the notice postings, but that the Complaint does not sufficiently allege libel against any of the Defendants based on the credit reports and the registry of deeds filing. The Court affirms the recommendation of the Magistrate Judge and dismisses so much of Count XIV as is based on credit reports and on the registry of deeds filing. The Court overrules Nationstar and Freddie Mac's objection to the Magistrate Judge's recommendation insofar as Count XIV alleges libel relating to the postings at REH, Jr.'s residence.

## L.    Count XV:  False Light

Count XV alleges that Nationstar, Freddie Mac, PODY, and Attorney York all committed the specialized defamation tort of "false light" invasion of privacy.  *Compl.* ¶¶ 209-14.  Similar to the libel claim in Count XIV, the Plaintiffs point to the false credit reports and the registry of deeds filing as the factual basis for this false light claim.  *Id.*  As described above, this state common law action is superseded by federal statutory law, and the registry of deeds filing was absolutely privileged.  Section III.K.5.b, c, *supra*.  The Court affirms the recommendation of the Magistrate Judge and dismisses Count XV as against Nationstar, Freddie Mac, PODY, and Attorney York.

## M.    Count XVI:  Abuse of Process

Count XVI alleges that PODY and Attorney York abused legal process under Maine common law against both REH, Jr. and REH, Sr.  *Compl.* ¶¶ 215-19.

### 1.    The Recommended Decision

The Magistrate Judge recommended that Count XVI be dismissed because "the Hamiltons' allegations regarding the delay in the service of the complaint, the filing of the notice in the [Cumberland County] Registry [of Deeds], and the inaccurate billing [alleged in paragraph 41 of the Complaint] cannot and do not constitute an abuse of process."  *Rec. Dec.* at 33.  The Magistrate Judge reasoned that this was simply "'regular use of process,'" which is not actionable even if "'influenced by a wrongful motive.'"  *Id.* (quoting *Tanguay v. Asen*, 1998 ME 277, ¶ 5, 722 A.2d 49).

### 2.      The Plaintiffs' Objection

The Plaintiffs argue that "the filing of two separate foreclosure complaints, with no service of process in a timely manner, and the filing of two foreclosure documents in the registry of deeds, is an abuse of process." *Pls.' Objection* at 3. They ascribe several "ulterior motives" to PODY and Attorney York. *Id.* at 3-4. These include, as relevant to PODY and Attorney York, an intent to "harass, abuse, and violate the consumer rights of the Plaintiffs" and an intent to "do anything to please" large national mortgagees such as BOA and Nationstar. *Id.* at 3.[15]

### 3.      PODY and Attorney York's Response

PODY and Attorney York argue that the Plaintiffs' objection is conclusory and in violation of Federal Rule of Civil Procedure 72(b)(2), *Defs.' Reply* at 2; raises new arguments not presented to the Magistrate Judge, *id.* at 3-4; and does not show that the Complaint asserts any plausible claim against them. *Id.* at 4-5.

### 4.      Analysis

"The elements of an abuse of process claim are that a defendant: (i) initiated or used a court document or process in a manner not proper in the regular conduct of proceedings, (ii) with the existence of an ulterior motive, and (iii) resulting in damage to the plaintiff." *Tanguay*, 1998 ME 277, ¶ 5, 722 A.2d 49. "Regular use of process, such as filing a law suit, cannot constitute abuse, even if a decision to act or a decision not to act, was influenced by a wrongful motive." *Id.*

---

[15]      The Plaintiffs level conspiratorial charges against Nationstar, Freddie Mac, and to some extent, Shapiro & Morley, LLC—the latter not a party to this lawsuit. *Pls.' Objection* at 3-4. These accusations, largely untethered to any specific reference to the Complaint, are not relevant to the abuse of process claim against PODY and Attorney York.

The Magistrate Judge is correct that the Complaint does not remotely lay a factual basis for an abuse of process claim. The Complaint contains no non-conclusory allegation of an ulterior motive, and no factual allegation that PODY or Attorney York used court process in an improper manner. At worst, PODY and Attorney York filed a lawsuit in 2011 and neglected to make timely service of process. *Compl.* ¶ 216. Mere error in the operation of the machinery of the courts does not give rise to liability for abuse of process. *Compare id. with Kleinschmidt v. Morrow*, 642 A.2d 161, 164 (Me. 1994) (affirming liability for abuse of process where a builder filed a lien statement that "grossly misstated material facts as to the amount he was owed" with the intent "to prevent completion of the new house by anyone else and the sale of the old house"). The Court affirms the recommendation of the Magistrate Judge and dismisses Count XVI as against PODY and Attorney York.

## N.    Count XVII:  Fraud

Count XVII alleges that Nationstar, Freddie Mac, PODY, and Attorney York committed fraud against REH, Jr. by assessing his loan account for legal services that PODY and Attorney York never performed. *Compl.* ¶¶ 220-34.

The Magistrate Judge recommended the Court dismiss Count XVII as against all Defendants because the Complaint failed to allege that REH, Jr. relied to his detriment on the allegedly false statements regarding legal services provided by PODY and Attorney York. *Rec. Dec.* at 24, 29, 33. As to PODY and Attorney York specifically, the Magistrate Judge also observed the Complaint contains no allegation that either Defendant made a representation of any kind to REH, Jr. *Id.* at 33.

REH, Jr. did not object to the Magistrate Judge's recommendation on Count XVII. *See Pls.' Objection* at 1-5; *Pl.'s Reply* at 1-10. The Court agrees that, at the very least, the Complaint does not allege that REH, Jr. relied on any alleged misrepresentation to his detriment. The Court affirms the recommendation of the Magistrate Judge and dismisses Count XVII as against Nationstar, Freddie Mac, PODY, and Attorney York.

## IV.  CONCLUSION

The Court AFFIRMS IN PART the Recommended Decision of the Magistrate Judge (ECF No. 84).

The Court GRANTS IN PART the Motion to Dismiss by Defendant Nationstar Mortgage, LLC (ECF No. 10) as to Counts II, VIII, XI, XII, XV, and XVII. The Court otherwise DENIES the motion. The remaining counts against Nationstar are Counts I, III, IV, V, VI, VII, IX, XIII, and XIV.

The Court GRANTS IN PART the Motion to Dismiss by Defendant Federal Home Loan Mortgage Corporation (ECF No. 65) as to Counts II, VIII, XII, XIII, XV, and XVII. The Court otherwise DENIES the motion. The remaining counts against Freddie Mac are Counts I, III, IV, V, VI, VII, IX, X, and XIV.

The Court GRANTS the Motion to Dismiss by Defendants Phillips, Olore, Dunlavey & York, P.A. and Brent A. York (ECF No. 15) as to Count VI and Counts XIV through XVII. The Court DISMISSES Defendants Phillips, Olore, Dunlavey & York, P.A. and Brent A. York as party Defendants.

Because Plaintiff Richard E. Hamilton, Sr. brought claims only against Defendants Phillips, Olore, Dunlavey & York, P.A. and Brent A. York, Plaintiff Hamilton, Sr. has no remaining claims. The Court DISMISSES Plaintiff Hamilton, Sr. as a party Plaintiff.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2014