# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD E. HAMILTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13-cv-00414-JAW |
| | ) | |
| FEDERAL HOME LOAN | ) | |
| MORTGAGE CORPORATION D/B/A | ) | |
| FREDDIE MAC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AFFIRMING IN PART AND OVERRULING IN PART THE RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS

After various creditors attempted to foreclose on his mortgage, Richard E. Hamilton, Jr. brought a seventeen-count civil action against them, including Bank of America Defendants, who have been connected to his now-defaulted home loan and efforts at collection and foreclosure. The Bank of America (BOA) Defendants brought a motion to dismiss the Complaint and the Magistrate Judge issued a thoughtful recommended decision in which he recommended the Court dismiss some, but not all of Mr. Hamilton's counts. Both Mr. Hamilton and the BOA Defendants object. In general, the Court concludes that the Magistrate Judge was correct and affirms his Recommended Decision; however, the Court also concludes that by establishing an escrow account, BOA assumed fiduciary duties over that account sufficient to prevent dismissal of counts related to BOA's alleged mishandling of that account.

## I.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). A court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). However, "[n]on-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible." *Ocasio-Hernández*, 640 F.3d at 12. A court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Furthermore, courts should be "solicitous of the obstacles that pro se litigants face, and . . . endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008). In deciding a Rule 12(b)(6) motion, a court may consider any documents attached to the complaint as well as any other documents "'integral to or explicitly relied upon in the complaint, even though not attached to the complaint.'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

## II.    BACKGROUND

### A.    Facts Alleged in the Complaint

#### 1.    The Parties

Richard E. Hamilton, Jr. (REH, Jr.) is a resident of Merritt Island, Florida and New Gloucester, Maine. *Aff. of Paula Lee-Chambers* Attach. 18 *Compl.* ¶ 1 (ECF No. 40) (*Compl.*).[1] Bank of America Corporation d/b/a Bank of America, N.A. (BOA) is a national association bank with headquarters in Charlotte, North Carolina. *Id.* ¶ 4.[2] It is REH, Jr.'s understanding that Bank of America, N.A. is part of and/or owned by Bank of America. *Id.* Bank of America Corporation d/b/a BAC Home Loans Servicing, LP is a mortgage servicing company with headquarters in Calabasa, California. *Id.* ¶ 5. It is REH, Jr.'s understanding that BAC Home Loans Servicing, LP is part of and/or owned by Bank of America. *Id.*

## 2. The Purchase and Sale

On May 19, 2000, REH, Jr., then 28 years old, signed a contract to purchase a mobile home and land in New Gloucester, Maine for $99,000.00. *Id.* ¶¶ 12, 16. REH, Jr. financed the purchase through a loan from BOA. *Id.* ¶¶ 13-15. On July 21, 2000, as part of the transaction, REH, Jr. granted a mortgage on the property to BOA. *Id.* ¶ 15. REH, Jr. alleges that he received numerous unsigned documents related to the loan at the closing. *Id.* He also alleges that he "[r]equested an owner's policy of title

---

[1] REH, Jr. and his father, Richard E. Hamilton, Sr. (REH, Sr.), jointly filed a complaint against numerous Defendants. *Compl.* The counts vary as to the Plaintiff(s) and the Defendant(s). *See id.* at 31-65. REH, Sr. brought no claims against the Bank of America Defendants. Since the filing of the Complaint, however, the Court has granted motions to dismiss by all Defendants sued by REH, Sr. and, therefore, the Court dismissed REH, Sr. as a party plaintiff. *Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge* at 60-61 (ECF No. 108) (Sept. 15, 2014).

[2] BOA says that Bank of America Corporation "is not the correct party" and that Bank of America, N.A. is "more likely the subject of Plaintiffs' Complaint." *Def. Bank of Am., N.A.'s and Bank of Am. Corp.'s Objection to the Magistrate's Recommended Decision on Mot. to Dismiss* at 1 n.1 (ECF No. 105). The Court has not been asked to resolve the question of the proper Defendant and uses "BOA" to describe both named Bank of America Defendants, as well as BAC Home Loans Servicing, LP, unless otherwise specified.

insurance which has not been received," *id.* ¶ 15(B), though the unsigned Settlement Statement showed a fee paid for owner's coverage. *Id.* ¶ 15(I). Furthermore, he claims that BOA and its agents "withheld vital information from [him] prior to the purchase of the property and prior to and during the closing." *Id.* ¶ 16(B).

In July 2005, REH, Jr. moved to Florida. *Id.* ¶ 47(C). However, he "has maintained a residence in both Maine and Florida," *id.* ¶ 47(D), and has not abandoned his property in Maine. *Id.* ¶ 47(E). On a routine basis, REH, Sr. would perform yard maintenance, repairs, snow removal, and security checks at the New Gloucester property. *Id.* ¶ 27. They have maintained the property in good order. *Id.* ¶ 47(F).

### 3.     Mr. Hamilton, Jr.'s Private Mortgage Insurance

The mortgage contract—REH, Jr.'s copy of which was unsigned—called for a monthly payment of $61.13 for private mortgage insurance (PMI) premiums. *Id.* ¶ 32(A). At the closing, no one told REH, Jr. that his PMI could be terminated. *Id.* ¶ 32(B). Between 2000 and 2010, REH, Jr. never received a notice from BOA that his PMI could be terminated and cancelled, nor any telephone number that he could call to inquire about this topic; however, he did receive such notices and telephone number(s) in 2011 and 2012. *Id.* ¶ 32(C), (D), (G). Between January 2004 and September 2013, the PMI premium changed from $61.13 to $15.68. *See id.* ¶ 32(I)-(K).

### 4.     Toxic Waste and Mr. Hamilton, Jr.'s Default

An automobile junkyard abuts REH, Jr.'s property in New Gloucester. *Id.* ¶ 18. A portion of this junkyard encroached onto REH, Jr.'s property by approximately twenty-five feet. *Id.* ¶ 19(F). REH, Jr. alleges that BOA, the surveyor, and the appraiser hired by BOA knew of this encroachment before the closing but concealed this fact from REH, Jr. *Id.* ¶¶ 20(E), (F), 23-24. Toxic waste from the automobile junkyard has leaked onto REH, Jr.'s property, causing damage to the land. *Id.* ¶ 20. REH, Jr. cannot rent out his property because of the hazardous waste problem. *Id.* ¶ 47(H). In addition, the presence of toxic waste scuttled a sale of the land that would have closed on October 1, 2007. *Id.* ¶¶ 20-22, 25-26. Thereafter, REH, Jr. ceased making any payments on the mortgage. *Id.* ¶ 17.[3]

### 5. Mr. Hamilton, Jr.'s Document Requests to BOA

Between October 2007 and May 2013, REH, Jr. requested numerous documents related to his mortgage loan from BOA, but none has been provided. *Id.* ¶ 28.

### 6. Events Leading to the Commencement of Foreclosure Proceedings

Beginning on March 12, 2008, and continuing through May 28, 2013, REH, Sr., while routinely checking the property, discovered that a company called "Safeguard Properties" (Safeguard) changed the locks on the New Gloucester mobile home and he was unable to enter the property. *Id.* ¶ 27. Safeguard left a notice on the front

---

[3] The Complaint alleges: "On September 1, 2000[] through September 2007, principal, interest, real estate taxes, hazard insurance, and private mortgage insurance premiums, were made and substantial additional amounts were paid on principal." *Compl.* ¶ 17(A). There is no allegation that any payments were made after September 2007.

door that stated: "If you are interested in buying or renting this property." *Id.* ¶ 27(A)(1).

On March 12, 2008, REH, Jr. contacted the State Police who telephoned BOA. *Id.* ¶ 27(A)(2). A representative from BOA confirmed that BOA had "ordered the locks changed," and "[n]o entry in to the residence will be allowed until payment arrangements have been made." *Id.* On May 6, 2008, a neighbor called REH, Jr. to inform him that "[m]y wife saw people at your house; that these people stated that they were from the bank; that the bank had foreclosed on the house; and then they entered the house." *Id.* ¶ 27(B). On November 18, 2009, REH, Sr. discovered an agent of BOA inside the property; REH, Sr. had the agent removed by the State Police. *Id.* ¶ 27(C). Between March 12, 2008 and May 20, 2013, REH, Sr. also found a variety of notices posted on the property indicating that foreclosure proceedings were in progress and that unauthorized persons were prohibited from entering the premises. *Id.* ¶ 27(A)-(I). Between September 5, 2007 and December 17, 2012, BOA sent REH, Jr. eight letters threatening foreclosure. *Id.* ¶ 36(A)-(D). These included letters from BOA's lawyers on March 4, 2010 and August 22, 2011. *Id.* ¶ 36(B), (C).

On March 11, 2010, REH, Jr. received a "Notice Of Default" from Attorney Brent A. York (Attorney York), dated March 4, 2010. *Id.* ¶ 37. The March 4, 2010 letter was inaccurate and erroneous because the property address, the total due, the thirty-three payments, the late fees, the property inspections, the other fees, and the attorney's fees, were all incorrect. *Id.* ¶ 37(A). On March 16, 2010, REH, Jr. replied by letter to Attorney York with a proposed settlement offer. *Id.* ¶ 37(B). Attorney

York did not respond to this letter. *Id.* REH, Jr. sent another letter to Attorney York on May 28, 2010, indicating that there were errors in the notice of default and requesting "the status of foreclosure regarding me and my property." *Id.* ¶ 37(C). Attorney York did not reply to this letter either. *Id.*

Over a year later, on September 8, 2011, REH, Jr. received a letter from Attorney York, dated August 22, 2011. *Id.* ¶ 37(D). Attorney York's letter recited an incorrect amount of debt but did state:

> If you notify us in writing within 30 days of receipt of this notice that the debt is disputed, we will obtain verification of the debt or a copy of a judgment and mail it to you.

*Id.* On October 3, 2011, REH, Jr. wrote back to Attorney York disputing the debt, but Attorney York did not respond. *Id.* ¶ 37(E).

### 7. BOA Forecloses by Complaint and Its Complaint is Dismissed

On September 6, 2011, BOA filed a foreclosure complaint in the Maine District Court in Portland, Maine, Docket No. PORDC-RE-2011-269. *Id.* ¶ 38. REH, Jr. was served with the Complaint on July 16, 2012. *Id.* ¶ 38(C). On July 25, 2012, the court dismissed BOA's Complaint without prejudice. *Id.* ¶ 38(D). Attorney York, who represented BOA, moved to retain the foreclosure complaint on the docket, but the court denied his motion. *Id.* ¶ 38(F). On September 22, 2011, a foreclosure document was filed in the Cumberland County Registry of Deeds in the names of REH, Jr. and REH, Sr. and the foreclosure document is still in effect. *Id.* ¶ 38(H)-(I).

### 8. Statements from BOA: 2012-13

From December 14, 2012 to June 28, 2013, REH, Jr. received eight statements from BOA, each of which contained incorrect amounts for principal; seven contained incorrect amounts for escrow, five contained incorrect amounts for late charges, and three contained incorrect amounts for interest. *Id.* ¶ 39(A)-(I). From July 21, 2000 through October 31, 2012, BOA electronically sent REH, Jr. monthly statements, each of which was similarly incorrect as to principal, interest, and escrow. *Id.*

### 9. BOA Unresponsiveness: 2013

Despite numerous requests for account information from June 28, 2013 to August 15, 2013, BOA and others have failed to provide REH, Jr. with information and documents pertaining to the PMI policy. *Id.* ¶ 42(A)-(G).

### 10. National Mortgage Settlement: BOA

On March 12, 2012, the United States and forty-nine states, including Maine, filed suit in federal court against BOA and others, alleging that BOA and others had engaged in misconduct related to their origination and servicing of single family residential mortgages. *Id.* ¶ 45. BOA signed a consent judgment with the United States and with the state of Maine with an effective date of February 8, 2012, allowing any private individual to pursue any and all claims against BOA for unlawful activity and violation of state and federal laws. *Id.* ¶ 45(B)-(C). REH, Jr. claims that BOA has violated the terms of the consent judgment. *Id.* ¶ 45(D).

### 11. Ownership of Richard E. Hamilton, Jr.'s Mortgage

REH, Jr. asserts that it remains unclear who actually owns his residential mortgage. *Id.* ¶ 46. At various times, BOA, attorneys, filed documents, and others

have asserted that the owner is: (1) BOA, (2) Nationstar Mortgage, LLC, and (3) the Federal Home Loan Mortgage Corporation. *Id.* ¶ 46(A)-(G).

### 12.    Miscellaneous Allegations

REH, Jr. alleges that BOA told him that the town of New Gloucester needed to sign off before the closing so that the Town could make sure that the land and residence were properly completed. *Id.* ¶ 47(A). He says that the Town never signed off. *Id.*

REH, Jr. also alleges that from 2000 through 2007, BOA did not pay the correct interest to him on his escrow account. *Id.* ¶ 47(B).

Despite maintaining the property in good working order, REH, Jr. alleges that he is unable to sell or rent his property at 18 Krystle Lane, New Gloucester because of the hazardous waste problem, which is a preexisting problem. *Id.* ¶ 47(F)-(H).

### B.    Counts Against BOA

### 1.    Breach of Contract

In Count One, REH, Jr. alleges that BOA breached its contract with him: (1) to make a residential mortgage loan with reasonable terms and fair conditions, in accordance with federal and state laws and to provide full disclosure; (2) to properly, adequately, and reasonably supervise its agents and its activities, reports and documents; (3) to require that the land be in good condition, that the new mobile home be fully set up, and to obtain the approval of the town of New Gloucester; (4) to perform the closing in accordance with certain reasonable standards as required by accepted practices and laws; (5) to perform the appraisal in accordance with certain

reasonable standards as required by accepted practices and laws; (6) to perform the land survey in accordance with certain reasonable standards as required by accepted practices and laws; (7) to perform insurance services, title insurance services, and private mortgage insurance services, with certain reasonable standards as required by accepted practices and laws; (8) to provide full disclosure before, during and after the closing; (9) to honor its duty to REH, Jr. and to protect his interests; and (10) to perform its assigned tasks in a reasonable and responsible manner. *Id.* ¶ 59(A)-(J).

More specifically, REH, Jr. alleges that BOA and its affiliates breached its contract by failing (1) to make sure that the pad and the new mobile home were up to code; (2) to provide signed copies of the closing documents; (3) to provide an owner's policy of title insurance; (4) to treat REH, Jr. in a fair and honest manner as he was in an inferior position because of his lack of acumen in real estate transactions; (5) to check out the abutting junkyard property and the junkyard property's fence and its encroachment on REH, Jr.'s property; (6) to check for hazardous material on REH, Jr.'s property; (7) to make sure that its appraiser treated REH, Jr.'s property as a complex residential property and appraise the property in accordance with accepted practices and laws; (8) to make sure that its surveyor/inspector found all correct dimensions and property lines and surveyed/inspected REH, Jr.'s property with accepted practices and laws; (9) to avoid making unlawful entries onto REH, Jr.'s property; (10) to avoid misrepresenting matters involving the property to the state police and to REH, Jr.'s neighbors, and to avoid posting signs on his property; (11) to answer REH, Jr.'s requests for documents and letters; (12) to make certain the Form

1098 mortgage interest statements were true and accurate; (13) to notify REH, Jr. annually that the private mortgage insurance could be terminated or cancelled; (14) not to report false information to three credit reporting agencies; (15) not to threaten REH, Jr. with foreclosure without foreclosing; (16) not to issue a notice of default letter that was false, inaccurate and untimely; (17) not to file a foreclosure action and then failing to pursue the foreclosure; (18) not to mail letters and other documents with incorrect information; (19) to inform REH, Jr. who the true owner of his mortgage was; (20) to maintain adequate records; (21) to pay the correct interest on REH, Jr.'s escrow account; (22) to advise REH, Jr. that the junkyard fence and the junkyard itself were preexisting conditions; (23) to abide by Maine and federal law; (24) to abide by the consent judgment; and (25) not to file a false document in the Cumberland County Registry of Deeds transferring REH, Jr.'s mortgage to Nationstar Mortgage. *Id.* ¶ 60(A)-(LL); *see also id.* ¶¶ 61-68 (discussing similar allegations against BAC Home Loans Servicing, LP).

### 2. Negligence

REH, Jr.'s second count sounds in negligence. *Id.* ¶¶ 104-16. He says that BOA breached its duty to him by making false representations and concealing information by omission. *Id.* ¶ 110. He claims that BOA acted with malice and ill will toward him or acted in a manner almost certain to injure him so that malice is implied. *Id.* ¶¶ 111-12. He demands compensatory and punitive damages. *Id.* ¶ 116.

### 3. Negligent Misrepresentation

REH, Jr.'s third count alleges that BOA made false representations of material facts to him before the closing. *Id.* ¶¶ 117-27. The allegedly false representations generally track the allegations in the breach of contract count. *Id.* ¶ 118(A)-(N). He says that he justifiably relied upon BOA's negligent misrepresentations, that the misrepresentations caused him damage, and he demands compensatory and punitive damages. *Id.* ¶¶ 124-27.

### 4. Intentional Misrepresentation

REH, Jr.'s fourth count substantially repeats Count Three, except he alleges that BOA's false representations or omissions were done with knowledge they were false or in reckless disregard of whether they were true or false. *Id.* ¶¶ 128-38. He demands compensatory and punitive damages. *Id.* ¶ 138.

### 5. Fraud (Concealment)

REH, Jr.'s fifth count alleges that BOA committed fraud. *Id.* ¶¶ 139-47. REH, Jr. alleges that BOA "concealed and continues to conceal from REH, Jr. material information by failing to provide REH, Jr. with signed copies of the closing documents; an owner's policy of title insurance; the appraisal; the land/survey inspection report; answers to requests for documents; answers to complaint letters; truthful and accurate annual 1098 mortgage interest statements; annual notices regarding PMI termination and cancellation; who is the true owner of the mortgage loan; truthful and accurate statements; truthful and accurate statements of accounts; and PMI information." *Id.* ¶ 140. He states that the concealed information was material, that BOA actively concealed it, and that the concealment caused him

damage. *Id.* ¶¶ 141, 143, 146. He seeks compensatory and punitive damages. *Id.* ¶ 147.

### 6. Unfair Trade Practices Act

REH, Jr.'s sixth count is a Maine Unfair Trade Practices Act (MUTPA or UTPA) claim under 5 M.R.S. §§ 206-14. *Id.* ¶¶ 148-52. REH, Jr. alleges that BOA and others engaged in a "pattern of unfair or deceptive acts . . . committed in the conduct of their trade or commerce." *Id.* ¶ 150. Claiming that he was damaged by such acts, he demands, among other things, compensatory and punitive damages. *Id.* ¶¶ 151-52.

### 7. Intentional Infliction of Emotional Distress

REH, Jr.'s seventh count is a claim for intentional infliction of emotional distress. *Id.* ¶¶ 153-60. He claims that BOA "intentionally inflicted sever[e] emotional distress or was certain or substantially certain that such distress would result from their conduct." *Id.* ¶ 155. He demands, among other things, compensatory and punitive damages. *Id.* ¶ 160.

### 8. Negligent Infliction of Emotional Distress

REH, Jr.'s eighth count is a claim for negligent infliction of emotional distress. *Id.* ¶¶ 161-64. He claims that BOA "negligently inflicted severe emotional distress or was certain or substantially certain that such distress would result from [its] conduct. *Id.* ¶ 162. He seeks, among other things, compensatory and punitive damages. *Id.* ¶ 164.

### 9. Fair Debt Collection Practices Act

REH, Jr.'s ninth count is a claim under the "Fair Debt Collection Practices Act." *Id.* ¶¶ 165-71. He asserts that BOA was acting as a debt collector and violated "state and federal fair debt collection practices laws." *Id.* ¶¶ 168-69. He demands, among other things, compensatory and punitive damages. *Id.* ¶ 171.

### 10. Truth in Lending Act

REH, Jr.'s tenth count alleges a violation of the Truth in Lending Act (TILA). *Id.* ¶¶ 172-79. First, REH, Jr. asserts that BOA "knowingly charged interest above the stated rate per annum on [his] mortgage loan." *Id.* ¶ 173. Next, REH, Jr. states that BOA "failed to disclose to [him] the fact that [he] could opt out of his private mortgage insurance." *Id.* ¶ 174. As a consequence of the private mortgage insurance issue, REH, Jr. says that he paid "his private mortgage insurance for one hundred and seventeen months after [he] could have opted out." *Id.* ¶ 175. Asserting that BOA's actions were "malicious and reckless," REH, Jr. alleges that they violated the TILA, and he seeks, among other things, compensatory and punitive damages. *Id.* ¶¶ 176-79.

### 11. Fair Credit Billing Act

REH, Jr.'s eleventh count asserts a violation of the Fair Credit Billing Act. *Id.* ¶¶ 180-86. REH, Jr. alleges that BOA's "statements on-line overstated the principal balance owed and overstated the interest paid or charged" and that BOA's mailed statements "were overstated and in error." *Id.* ¶¶ 181-82. As a consequence, he maintains that BOA violated "state and federal fair credit billing laws" and seeks, among other things, compensatory and punitive damages. *Id.* ¶¶ 184-86.

### 12.     Fair Credit Reporting Act

REH, Jr.'s twelfth count alleges a violation of the Fair Credit Reporting Act. *Id.* ¶¶ 187-92.  REH, Jr. says that BOA "furnished credit information to Transunion, Equifax, and Experian," which was "false and inaccurate."  *Id.* ¶¶ 188-89.  As a consequence, REH, Jr. claims that BOA violated "state and federal credit reporting laws" and demands, among other things, compensatory and punitive damages.  *Id.* ¶¶ 190-92.

### 13.     Real Estate Settlement Procedures Act

REH, Jr.'s thirteenth count claims a violation of the Real Estate Settlement Procedures Act (RESPA).  *Id.* ¶¶ 193-98.  REH, Jr. says that he sent letters to BOA "requesting documents and the documents requested were not provided" and that he sent complaint letters to BOA and "the letters were not answered."  *Id.* ¶¶ 194-95. He claims that this alleged unresponsiveness violated RESPA and seeks, among other things, compensatory and punitive damages.  *Id.* ¶¶ 197-98.

### 14.     Defamation

REH, Jr.'s fourteenth count alleges defamation.  *Id.* ¶¶ 199-208.  He says that BOA posted foreclosure notices on his property, that BOA provided credit information to Transunion, Equifax, and Experian, that it filed a foreclosure notice in the Cumberland County Registry of Deeds, and that the information on those documents was false and harmed his reputation; he demands, among other things, presumed and punitive damages.  *Id.*

### 15.     False Light

REH, Jr.'s fifteenth count alleges that BOA placed him in a false light. *Id.* ¶¶ 209-14. He says that BOA's "written notices, communications to the credit bureaus, and the registry of deed[s] notice" placed him in a false light. *Id.* ¶ 210. He claims BOA published these documents "with the knowledge of or in reckless disregard as to the falsity of the matter publicized." *Id.* ¶ 212. He seeks, among other things, presumed and punitive damages. *Id.* ¶ 214.

### 16. Abuse of Process

REH, Jr.'s sixteenth count alleges abuse of process. *Id.* ¶¶ 215-19. He claims that BOA's attorneys filed a complaint for foreclosure on September 6, 2011 and, although they served others, they waited until July 16, 2012 before serving him. *Id.* ¶ 216(A)-(E). He also alleges that on July 25, 2012, the court dismissed the complaint, *id.* ¶ 216(F), and despite the dismissal, the foreclosure notice filed in the Cumberland County Registry of Deeds has not been released. *Id.* ¶ 216(G). REH, Jr. demands, among other things, compensatory and punitive damages. *Id.* ¶ 219.

### 17. Fraud

REH, Jr.'s final count sounds in fraud. *Id.* ¶¶ 220-34. He claims that the attorneys representing BOA "overcharged for their legal services on the botched complaint for foreclosure and these over[]charges were added to REH, Jr.'s mortgage loan." *Id.* ¶ 226. He says that thereafter, his monthly statements contained charges for "the fictitious legal fees of $2,240.00." *Id.* ¶ 227. He maintains that this amounted to fraud and seeks, among other things, compensatory and punitive damages. *Id.* ¶¶ 230, 234.

## III.    THE MOTION TO DISMISS

On April 24, 2014, BOA moved to dismiss the Complaint. *Def. Bank of Am., N.A., on Behalf of Itself and as S/B/M to BAC Home Loans Servicing, LP, and Bank of Am. Corp.'s Mot. to Dismiss the Compl.* Attach. 1 *Def. Bank of Am., N.A. on Behalf of Itself and as S/B/M to BAC Home Loans Servicing, LP, and Bank of Am. Corp.'s Mem. of Law in Support of Their Mot. to Dismiss the Compl.* (ECF No. 81) (*Defs.' Mot. to Dismiss*).   BOA first claimed that Count I (Breach of Contract), Count II (Negligence), Count III (Negligent Misrepresentation), Count IV (Intentional Misrepresentation), and Count V (Fraud in the Concealment) are all barred by Maine's six year statute of limitations, that Count X (TILA) is barred either by Maine's one year statute of limitations or federal law's three year statute of limitations, and that Count XIII (RESPA) is barred by federal law's one year statute of limitations. *Id.* at 4-6.  Next, BOA maintained that REH, Jr. failed to allege any conduct constituting a breach of contract. *Id.* at 6-7.  Third, BOA asserted that REH, Jr. failed to allege a duty that would support a negligence claim. *Id.* at 7-8.  Fourth, BOA claimed that REH, Jr. failed to comply with the particularity requirements of Federal Rule of Civil Procedure 9 for Counts IV (Intentional Misrepresentation), V (Fraud in the Concealment), and XVII (Fraud). *Id.* at 8-10.  Fifth, BOA argued that REH, Jr. failed to meet the pleading requirements for Count III (Negligent Misrepresentation) and Count IV (Intentional Misrepresentation). *Id.* at 10-11.

Sixth, BOA contended that REH, Jr.'s Count VI (MUTPA) claim failed to allege substantial economic damages and facts demonstrating fraud. *Id.* at 11-12.  Seventh,

BOA asserted that REH, Jr. is unable to maintain claims contained in Counts VII and VIII for intentional or negligent emotional damages under Maine law. *Id.* at 12-13. Eighth, BOA demanded the Court dismiss Count IX (Fair Debt Collection Practice Act) because he failed to allege that BOA was a debt collector within the meaning of the statute. *Id.* at 13-14. Ninth, BOA said that Count X (TILA) is time-barred and insufficiently pleaded. *Id.* at 15. Tenth, BOA maintained that the claims contained in Counts XI (Fair Credit Billing Act), and Count XII (Fair Credit Reporting Act) are legally insufficient; the Fair Credit Billing Act claim fails because there was no allegation that there was an open-end credit plan and the Fair Credit Reporting Act claim fails because there is no private right of action for the alleged violations. *Id.* at 15-16.

Eleventh, BOA urged the dismissal of Count XIII (RESPA) because there was no allegation of a qualified written request. *Id.* at 16-17. Twelfth, BOA argued that Count XIV (Defamation) failed as a matter of law because the foreclosure notice was an opinion, the alleged false information provided to the credit reporting agencies did not lower him in the estimation of the community, and all published information was absolutely privileged. *Id.* at 17. Thirteenth, BOA contended that Count XV (False Light) failed to allege publicity and therefore was subject to dismissal. *Id.* at 17-18. Finally, BOA contended that Count XVI (Abuse of Process) must be dismissed because there is no allegation that BOA initiated a court proceeding for an improper purpose. *Id.* at 19.

## IV.   THE RECOMMENDED DECISION

On July 30, 2014, the Magistrate Judge issued a recommended decision on BOA's motion to dismiss. *Recommended Decision on Mot. to Dismiss* (ECF No. 102) (*Recommended Decision*). The Magistrate Judge recommended that the Court dismiss the following counts: (1) Count II, Negligence; (2) Count VIII, Negligent Infliction of Emotional Distress; (3) Count IX, Fair Debt Collection Practices Act—as against Bank of America, N.A. and Bank of America Corporation, but not as against BAC Home Loans Servicing, L.P.; (4) Count XI, Fair Credit Billing Act; (5) Count XII, Fair Credit Reporting Act; (7) Count XV, False Light Defamation; (8) Count XVI, Abuse of Process; and (9) Count XVII, Fraud. *Id.* at 25. In addition, he recommended that some of the remaining counts be restricted in their scope. *Id.* at 25 n.13.

## V.   THE PARTIES' OBJECTIONS AND RESPONSES

On August 13, 2014, BOA objected. *Defs. Bank of Am., N.A.'s and Bank of Am. Corp.'s Objection to the Magistrate's Recommended Decision on Mot. to Dismiss* (ECF No. 105) (*Defs.' Objection*). REH, Jr. filed his own objection on August 14, 2014 and on August 28, 2014, REH, Jr. responded to BOA's objection. *Pl.'s Objection to the Magistrate's Recommended Decision on Mot. to Dismiss* (ECF No. 106) (*Pl.'s Objection*); *Pl.'s Objection to Defs. Bank of Am., N.A.'s and Bank of Am. Corp.'s Objection to the Magistrate's Recommended Decision on Mot. to Dismiss* (ECF No. 107) (*Pl.'s Opp'n*).

### A.   BOA's Specific Objections

#### 1.   Breach of Contract

BOA claims that the Magistrate Judge used "an improper legal standard" to deny its motion to dismiss the breach of contract claim. *Defs.' Objection* at 4. Citing the Recommended Decision, it quotes the Magistrate Judge as concluding that the allegations in Count One are "sufficient to afford notice" and enable BOA to defend the claim. *Id.* at 5 (quoting *Recommended Decision* at 9). Quoting *Redondo-Borges v. United States Department of Housing & Urban Development*, 421 F.3d 1, 5 (1st Cir. 2005), BOA says that the correct standard to assess whether a complaint properly pleads breach of contract is whether it "***contains a short plain statement of the claim showing that the pleader is entitled to relief, <u>and</u> gives the defendant . . . fair notice of what the plaintiff's claim is and the grounds upon which it rests***." *Id.* (emphasis in BOA's original). BOA contends that REH, Jr.'s Complaint is defective because it fails to "'identify with substantial certainty the specific contractual promise'" that BOA failed to keep. *Id.* (quoting *Recommended Decision on Mots. to Dismiss* at 11 (ECF No. 84) (*May 8, 2014 Recommended Decision*)). BOA further claims that the Magistrate Judge "mistakenly presumes" that the contract claim is based on "'the residential mortgage loan contract and the mortgage loan servicing contract.'" *Id.* (quoting *Recommended Decision* at 7). BOA criticizes the Magistrate Judge for failing "to identify any specific contractual obligations Defendants breached or point to any factual allegations in support of these claims." *Id.* at 5-6. In addition, BOA maintains that the Magistrate Judge failed to review the allegations on the face of the Complaint and instead drew unwarranted inferences from those allegations. *Id.* at 6.

## 2. Negligent and Intentional Misrepresentation and Fraud

After conceding that the Magistrate Judge correctly set forth the applicable standard for negligent misrepresentation, intentional misrepresentation and fraud, BOA contends that the Magistrate Judge failed to properly apply those standards to the allegations in the Complaint. *Id.* Regarding the intentional misrepresentation claim, BOA argues that the Magistrate Judge found sufficient allegations for only two of the five elements: reliance and injury. *Id.* at 7. BOA says that the Magistrate Judge "does not discuss or make any findings regarding the falseness of the statements, whether they involved material facts or if Defendants had knowledge of the falsity or acted in reckless disregard of whether such statements were true or false." *Id.* BOA also contends that REH, Jr.'s Complaint fails to comply with the specificity requirements for fraud under Federal Rule of Civil Procedure 9(b). *Id.* at 7-8.

## 3. Unfair Trade Practice Act

First, BOA says that because REH, Jr. failed to state a claim for misrepresentation, the UTPA claim must fail as well. *Id.* at 9. BOA also complains that REH, Jr. has failed to be sufficiently specific in his factual allegations, merely reciting "the elements of an UTPA claim." *Id.* BOA argues that the Magistrate Judge "overlooks a key fact pled in the Complaint—that Junior has not made any payments on the Mortgage since 2007—and completely ignores Defendants' argument that in order to plead a claim under the UTPA, Junior must show 'substantial injury ***that is not reasonably avoidable by consumers*[.]**'" *Id.* (citing *MacCormack v. Brower*,

2008 ME 86, ¶ 5 n.2, 948 A.2d 1259) (emphasis in BOA's original). BOA says that REH, Jr. could have avoided his claimed damages "**by paying his Mortgage**." *Id.* at 10 (emphasis in original).

### 4. Intentional Infliction of Emotional Distress

BOA submits that REH, Jr.'s claim for intentional infliction of emotional distress must fail because the Complaint failed to state a claim for misrepresentation. *Id.* at 11. More specifically, BOA argues that the Magistrate Judge erred in inferring "factual allegations of extreme and outrageous conduct to support a claim for intentional infliction of emotional distress not pled in the Complaint." *Id.* at 10. BOA contends that the Complaint merely recites "word for word the elements of an intentional infliction of emotional distress claim in Maine" and is "devoid of any facts demonstrating **actual extreme and outrageous** conduct by Defendants." *Id.* at 11 (emphasis in original).

### 5. Fair Debt Collection Practices Act

Quoting the First Circuit case of *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002), BOA maintains that REH, Jr.'s Complaint fails to "allege a scenario involving the collection (or attempted collection) of a debt." *Id.* at 12. Furthermore, BOA argues that the Complaint "is devoid of any allegations that Defendants, including BAC, employed agents or sought to collect a debt from Junior." *Id.*

### 6. Truth in Lending Act

BOA disputes the Magistrate Judge's finding that the Complaint "'alleges that the [BOA] Defendants knowingly charged interest above the contract rate, failed to

inform Plaintiff that he could opt out of private mortgage insurance, and knowingly allowed him to pay PMI for 117 months more than required.'" *Id.* at 13 (quoting *Recommended Decision* at 15). BOA says that REH, Jr. failed "to identify a specific section of the TILA that requires [BOA] to make disclosures regarding PMI or charges for PMI." *Id.* Regarding REH, Jr.'s assertion that BOA overcharged him interest, BOA contends that REH, Jr. failed to make basic factual allegations, such as "the interest rate Defendants charged, or the interest rate Defendants should have charged." *Id.* Moreover, BOA complains that REH, Jr. failed to cite any sections of TILA in support of his claim and that instead, the Magistrate Judge "refers to specific sections of TILA on his behalf." *Id.*

### 7.    Real Estate Settlement Procedures Act

In its objection to the Magistrate Judge's RESPA analysis, BOA repeats the criticism that REH, Jr. failed to make sufficiently detailed allegations to justify a RESPA claim, and more specifically, failed "to allege his compliance with the requirements of a" Qualified Written Request (QWR). *Id.* at 14. BOA asserts that REH, Jr. has only alleged that he sent "complaint letters" to BOA and that BOA failed to respond to those letters. *Id.* Furthermore, BOA maintains that the Magistrate Judge improperly relied on facts outside the face of the Complaint. *Id.* at 14-15. Contending that RESPA requirements are specific, BOA argues that a plaintiff "must meet the strict statutory guidelines to state a claim" and REH, Jr. has not done so. *Id.* at 15.

### 8.    Defamation

To sustain a defamation claim, BOA says that a plaintiff must allege four elements. *Id.* Although BOA concedes that the Magistrate Judge applied the correct law, it argues that the Magistrate Judge discussed only one of the four elements: the alleged defamatory statement. *Id.* (citing *Recommended Decision* at 22). BOA contends that the Magistrate Judge failed to address the three remaining elements: publication, negligence or damages. *Id.* at 15-16.

## B.     Richard E. Hamilton, Jr.'s Response

On August 28, 2014, REH, Jr. filed a response to BOA's objections. *Pl.'s Opp'n* at 1-5. In general, REH, Jr. says that the Magistrate Judge covered each of BOA's complaints in his Recommended Decision and he points to his original response to the motion to dismiss to rebut BOA's current objections. *Id.*

## C.     Richard E. Hamilton, Jr.'s Specific Objections

On August 14, 2014, REH, Jr. objected to the portion of the Recommended Decision that recommended Count II (Negligence), Count VIII (Negligent Infliction of Emotional Distress), and Count XI (Fair Credit Billing Act) be dismissed. *Pl.'s Objection* at 1-3. The Magistrate Judge recommended that the negligence and negligent infliction of emotional distress counts be dismissed because there was no "special relationship" alleged between BOA and REH, Jr. *Recommended Decision* at 9, 14. REH, Jr. objected on the ground that the allegation of the existence of an escrow account constitutes such a special relationship. *Pl.'s Objection* at 2-3. REH, Jr. also further clarified that in his view, when he made no payments on his mortgage,

his loan "was transformed from a mortgage loan to an open end credit loan" subject to the Fair Credit Billing Act. *Id.* at 3.

### D. BOA's Response

BOA did not respond to REH, Jr.'s objections.

## VI. DISCUSSION

### A. BOA's Objections

In general, BOA's objections about the Recommended Decision are bottomed on a lack of specificity in REH, Jr.'s Complaint. Although it is possible to prevail in a motion to dismiss based on a lack of specificity, particularly where the heightened pleading requirements of Rule 9(b) apply, the Court "'must assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom.'" *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir. 2010) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)). Typically, this is a daunting burden for a moving party. Here, REH, Jr. filed a complaint consisting of sixty-five pages of detailed allegations, each of which the Court must deem true for purposes of ruling on the motion to dismiss.

BOA also seeks to improperly constrain the Court's review of the motion and of its objection. First, it accuses the Magistrate Judge of "improperly infer[ring] factual allegations that Junior does not plead to support his claims for liability." *Defs.' Objection* at 2. Next, it protests that REH, Jr. failed to cite specific statutory provisions that BOA supposedly violated and that the Magistrate Judge "refers to specific sections . . . on his behalf." *Id.* at 13. The subtext of BOA's contention may

be that the Magistrate Judge acted in effect as counsel for REH, Jr. and went to improper lengths to deny BOA's motion.

The Court rejects this argument. As just noted, in ruling on a motion to dismiss, a court is required not merely to read the allegations in a complaint but also to "give the plaintiff[] the benefit of all reasonable inferences therefrom." *Genzyme Corp.*, 622 F.3d at 68. The line between the proper inferences that the law requires the Court to make and the improper inferences that BOA claims the Magistrate Judge made may be somewhat blurry, but in the Court's view, the Magistrate Judge did not cross it here. Moreover, if BOA contends that one of REH, Jr.'s statutory claims is not supported by the language of the statute, the Court would be remiss if it did not review the language of the statute to determine whether BOA is correct.

In the Court's view, the better procedural device to test many of these legal issues in this case would be a motion for summary judgment, where the rules contemplate narrowing areas of factual dispute, rather than a motion to dismiss, where the rules require that the Court accept as true the allegations and reasonable inferences in the Complaint.

### 1. Breach of Contract: Count I

Under Maine law, to state a breach of contract claim, a plaintiff must allege "(1) breach of a material contract term; (2) causation; and (3) damages." *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248; *Daniel G. Lilley Law Office v. Flynn*, No. CV-11-403, 2014 Me. Super. LEXIS 73, at *5 (May 5, 2014). Although BOA complains that REH, Jr. has not been sufficiently specific,

REH, Jr. alleged twenty-five separate acts by BOA that he contends breached his contract with BOA. *Compl.* ¶¶ 60(A)-(LL).

In its objection, BOA says that a plaintiff in a breach of contract case must "identify with substantial certainty the specific contractual promise" that the other party failed to keep. *Defs.' Objection* at 5. For authority, BOA cites the May 8, 2014 Recommended Decision of the Magistrate Judge. *Id.* (citing *May 8, 2014 Recommended Decision* at 11). BOA is correct that the May 8, 2014 Recommended Decision cited *Brooks v. AIG SunAmerica Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007), but the Magistrate Judge was careful to note that the First Circuit was applying Massachusetts law. *See May 8, 2014 Recommended Decision* at 10-11. The Court is not certain whether this heightened pleading standard for breach of contract cases would be applicable in Maine. Furthermore, to the extent it is, the standard runs counter to the obligation not to be too punctilious when dealing with pro se complaints. *See Dutil*, 550 F.3d at 158-59.

For example, REH, Jr. alleges that BOA failed to pay the correct interest on his escrow account. *Compl.* ¶ 60(Z). REH, Jr. does not allege specifics about the amount of interest BOA actually paid and the amount of interest BOA should have paid, nor does REH, Jr. point to a specific provision in the mortgage that BOA is supposed to have breached. Nevertheless, BOA can hardly claim that it is unable to understand what REH, Jr. is alleging or that the allegation, if true, would constitute a breach of the contract. The mortgage reads in part:

> Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law.

*Defs.' Mot. to Dismiss* Attach. 3 *Mortgage* at 9*, Covenants* 3(b), *Lender's Obligation.*

It seems apparent that REH, Jr. is claiming that BOA violated this provision of the

mortgage and presumably, BOA, as the drafter of this mortgage, is aware of the

interest provision on escrow accounts; to require REH, Jr. to specifically cite this

provision of the mortgage in his Compliant on pain of dismissal would be to apply the

type of "technical defect[]" that the First Circuit warned against when dealing with

pro se plaintiffs. *Dutil*, 550 F.3d at 158-59.

This same analysis could be done with each of REH, Jr.'s allegations of breach

of contract, although some are clearer than others as to what provision of the

mortgage REH, Jr. is referring. BOA's search for clarity is readily and better satisfied

through discovery and a finely-tuned motion for summary judgment than by a

peremptory dismissal of REH, Jr.'s breach of contract count.

## 2. Negligent and Intentional Misrepresentation and Fraud: Counts III, IV, and V

In Count III, the negligent misrepresentation count, REH, Jr. recites fourteen

separate alleged false representations of material fact that he claims BOA made

concerning its loan to him. *Compl.* ¶ 118(A)-(N). He adopts those allegations in Count

IV, the intentional misrepresentation count. *Id.* ¶¶ 128-38. For Count V, the fraud

(concealment) count, he adopts those allegations and further alleges:

> Plaintiffs assert that BOA . . . concealed and continues to conceal from
> REH, Jr. material information by failing to provide REH, Jr. with signed
> copies of the closing documents; an owner's policy of title insurance; the
> appraisal; the land/survey inspection report; answers to requests for
> documents; answers to complaint letters; truthful and accurate annual
> 1098 mortgage interest statements; annual notices regarding PMI

termination and cancellation; who is the true owner of the mortgage loan; truthful and accurate statements of accounts; and PMI information.

*Id.* ¶ 140.

In light of these allegations, it is difficult to credit BOA's complaint that the Magistrate Judge "does not discuss or make any findings regarding the falseness of the statements, whether they involved material facts or if Defendants had knowledge of the falsity or acted in reckless disregard of whether such statements were true or false." *Defs.' Objection* at 7. Taking the first fraud allegation—the failure or refusal to provide signed documents—as an example, REH, Jr. alleges that at the July 21, 2000 closing, BOA gave him only unsigned copies of the closing documents. *Compl.* ¶ 15(A)-(I). In paragraph 28, REH, Jr. alleges that he requested signed copies of the closing documents five times—October 20, 2007, November 1, 2007, May 1, 2010, April 8, 2013, and May 27, 2013—and despite these requests, BOA failed or refused to provide him with signed copies of the closing documents. *Id.* ¶ 28(A)-(E). Finally, he alleges that by failing to provide him with those copies, BOA was concealing material information about the loan. *Id.* ¶ 140.

Even with the heightened pleading requirements for fraud under Rule 9(b), the allegation that BOA persistently failed or refused to send him copies of the signed closing documents states a claim for potential fraud. A signed set of closing documents is obviously material to whether BOA mishandled the loan and mortgage; an inference of intentionality is logical from a persistent refusal to send signed copies after repeated requests, and concealing closing documents to a customer could

amount to fraud. This same analysis applies with equal force to the other allegations that underlie the misrepresentation and fraud claims. The law assumes that BOA has the ability to do what the Court just did: review the allegations in the Complaint, accept the allegations, and make logical inferences about what REH, Jr. is claiming. To insist on greater specificity at this stage for the misrepresentation and fraud counts, BOA is demanding more than the law requires.

### 3. Unfair Trade Practices Act: Count VI

BOA's first contention—that REH, Jr. failed to state an UTPA claim because there has been no misrepresentation—fails because the Court has concluded that the misrepresentation counts survive the motion to dismiss. BOA's second contention is that the UTPA claim must fail because the law requires a plaintiff to show substantial injury that is not reasonably avoidable by consumers and REH, Jr. could have reasonably avoided his problems if he had only paid his loan in accordance with its terms. *Defs.' Objection* at 9-10.

BOA is correct that under Maine law "[t]o justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." *State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200. In *MacCormack* and *Weinschenk*, the Maine Law Court also wrote that the question was whether the consumer was "'acting reasonably under the circumstances.'" *MacCormack*, 2008 ME 86, ¶ 5 n.2, 948 A.2d 1259 (quoting *Weinschenk*, 2005 ME 28, ¶ 17, 868 A.2d 200).

The Maine Law Court has emphasized that "[w]hether a trade practice is unfair or deceptive is a question of fact determined by the fact-finder." *Weinschenk*, 2005 ME 28, ¶ 8, 868 A.2d 200 (citing *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 906 (Me. 1996)). In *Weinschenk*, the Maine Law Court also wrote that "[d]etermination of whether an act or practice is 'unfair or deceptive' in violation of the UTPA must be made by the fact-finder on a case-by-case basis." *Id.*

First, this Court is not convinced that all of the acts allegedly committed by BOA in the Complaint would have been cured if REH, Jr. had continued to pay the loan. Moreover, as the *MacCormack* Court observed in the context of a lease, "[w]hether a lease has been breached is a question of fact." 2008 ME 86, ¶ 4, 948 A.2d 1259. Similarly, here, whether REH, Jr. was "acting reasonably under the circumstances" in withholding payments based on BOA's prior alleged unfair or deceptive acts must be resolved by a jury. Otherwise, one side of a contract could engage in obvious and outrageous unfair and deceptive acts that clearly violate the UTPA and demand dismissal of an ensuing lawsuit if the other party failed to pay precisely in accordance with the terms of the contract.

### 4. Intentional Infliction of Emotional Distress: Count VII

It is true that by the time REH, Jr. reached Count VII—intentional infliction of emotional distress—he did not repeat each of the allegations that underpinned his claim, but the long litany of allegations against BOA is, in the Court's view, sufficient to withstand dismissal as to this Count.

### 5. Fair Debt Collection Practices Act: Count IX

In its objection, BOA says that REH, Jr. failed to allege and the Magistrate Judge failed to find that "[BOA] made false representations 'in connection with the collection of any debt.'" *Defs.' Objection* at 12 (quoting 32 M.R.S. § 11013; 15 U.S.C. § 1692e). Noting that the First Circuit has required "the collection (or attempted collection) of a debt" to sustain a Fair Debt Collection Practices Act (FDCPA) claim, BOA maintains that the Complaint makes no such claim. *Id.*

But in his Complaint, REH, Jr. repeatedly claims that BOA threatened him with foreclosure numerous times. *Compl.* ¶ 36(A)-(D). He says that either BOA or its law firm sent him letters on September 5, 2007, October 3, 2007, October 18, 2007, March 6, 2009, March 6, 2009 (a second and different letter), March 4, 2010, August 22, 2011, and December 17, 2012, threatening foreclosure of his New Gloucester, Maine residence, that BOA or its attorneys filed a foreclosure complaint in March 2012, failed to serve the complaint on him until July 2012, and the state court dismissed the complaint shortly after BOA and its attorneys served it on him. *Id.* ¶¶ 36(A)-(D), 38(C)-(D).

Whether the circumstances here fit within the FDCPA would be better resolved in a motion for summary judgment. On the one hand, "[n]early every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA." *Beadle v. Haughey*, Civil No. 04-272-SM, 2005 U.S. Dist. LEXIS 2473, at *7-8 (D.N.H. Feb. 9, 2005) (collecting cases). On the other hand, some courts have concluded that there are distinctive facts that may bring a mortgage foreclosure within the scope of the FDCPA. *See McDaniel v. South*

*& Assocs., P.C.*, 325 F. Supp. 2d 1210, 1217-18 (D. Kan. 2004); *Flores v. Shapiro &*

*Kreisman*, 246 F. Supp. 2d 427, 433-34 (E.D. Pa. 2002). On the narrow issue raised

by BOA in its objection, the Court readily concludes that the Complaint alleges that

BOA and its attorneys threatened debt collection. But, the next question—whether

the threat to foreclose, the filing of a judicial foreclosure, the failure to prosecute the

judicial foreclosure, and its dismissal presents a viable claim under the FDCPA—is

better resolved upon a more complete record and a more detailed briefing.

### 6. Truth in Lending Act: Count X

Concerning Count X, the TILA count, BOA contends: (1) that the Complaint

contains insufficient information to conclude that BOA overcharged interest, (2) that

the Complaint fails to cite a section of TILA to support his claim, and (3) that TILA

does not cover the PMI issue. *Defs.' Objection* at 13-14. For purposes of the motion

to dismiss, the bare allegation that BOA overcharged interest on the mortgage loan

is sufficient to withstand dismissal. *See Compl.* ¶ 173 (alleging BOA "knowingly

charged interest above the stated rate per annum on REH, Jr.'s mortgage loan"). It

is true that there is no further detail in the Complaint, but BOA has the right to

obtain a more detailed description through discovery and to file a motion for summary

judgment if the discovered facts do not justify the allegation. Regarding the

Magistrate Judge's citation of specific sections of TILA not cited by REH, Jr., the

Court rejects the notion that the Magistrate Judge erred by looking up the law.

Finally, as regards the PMI issue, the Court addressed this in its September 15, 2014

Order, which affirmed the Recommended Decision against the Federal Home Loan

Mortgage Corporation (Freddie Mac), and rejected Freddie Mac's position that TILA does not cover PMI. *Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge* at 39-45 (ECF No. 108). The Court adopts its earlier reasoning here.

### 7.     **Real Estate Settlement Procedures Act: Count XIII**

BOA objects to the Recommended Decision on RESPA on the ground that REH, Jr.'s letters do not constitute a QWR and "the Complaint is devoid of any facts sufficient to demonstrate any of the purported letters qualify as a QWR, Defendants failed to comply with the statute's QWR rules, or that [REH, Jr.] incurred 'actual damages' as a consequence of Defendants' failure." *Defs.' Objection* at 14. The Court disagrees. The Court will not assume that REH, Jr.'s multiple letters to BOA fail to meet the definition of a QWR under RESPA or that REH, Jr. suffered no actual damages as a consequence of BOA's actions or inaction. *See* 12 U.S.C. § 2605(e)(1)(B)(i)-(ii). Again, these are issues better resolved by summary judgment.

### 8.     **Defamation: Count XIV**

BOA objects to the Recommended Decision on the grounds that the Magistrate Judge only discussed one out of the four elements of a defamation claim relating to the notices BOA posted on REH, Jr.'s property. *Defs.' Objection* at 15 ("[The Magistrate Judge] only discusses the nature of the alleged defamatory statement"). BOA also argues that REH, Jr. did not allege sufficient facts to make out a defamation claim. *Id.* at 15-16. The Court addressed these same arguments in its September 15, 2014 Order, which affirmed the Recommended Decision against Nationstar, and

rejected Nationstar's position that REH, Jr.'s Complaint did not sufficiently plead defamation. *Order Affirming in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge* at 52-55. The Court adopts its earlier reasoning here.

**B.      Richard E. Hamilton, Jr.'s Objections**

**1.      Negligence and Negligent Infliction of Emotional Distress: Counts II and VIII**

Citing well-established Maine law, the Magistrate Judge concluded that the negligence and negligent infliction of emotional distress counts must be dismissed because "'[a] mortgagee-mortgagor relationship does not, without more, create a duty of care between a bank and a customer.'" *Recommended Decision* at 9, 14 (quoting *Camden Nat'l Bank v. Crest Constr., Inc.*, 2008 ME 113, ¶ 11, 952 A.2d 213). Accordingly, the Magistrate Judge recommended the Court dismiss Count II, Negligence, and Count VIII, Negligent Infliction of Emotional Distress. *Id.*

REH, Jr. objects on the ground that his contract with BOA established an escrow account and that an escrow account creates a fiduciary duty on the part of BOA.[4] *Pl.'s Objection* at 1-2. He contends that neither Count II nor Count VIII should be dismissed because BOA created an escrow account and it was "under a duty to manage [his] escrow account in the best interests of [him]." *Id.* at 2.

The Court agrees with the Magistrate Judge that the general rule in Maine is that "without more," a mortgagee-mortgagor relationship does not create a duty of

---

[4]      The Court assumes for purposes of the motion to dismiss that the mortgage created an escrow account under Maine law. *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 12, 720 A.2d 568 (describing the four elements necessary for the creation of an escrow account).

care between a bank and a customer. The question is whether an escrow account maintained by a mortgagee and funded by a mortgagor is an exception to the general rule. In support of his view that Maine would recognize a fiduciary duty over an escrow account, REH, Jr. cites *Smith v. GMAC Mortgage Corp.*, Civil Docket No. 5:06CV125-V, 2007 U.S. Dist. LEXIS 66001 (W.D.N.C. Sept. 5, 2007). *Id.* REH, Jr. is correct that *Smith* held that in North Carolina there is a cognizable claim of breach of fiduciary duty when the mortgagee holds an escrow account on behalf of the mortgagor. 2007 U.S. Dist. LEXIS 66001, at *23-25. But, *Smith* is of limited value because—as the *Smith* Court interpreted it—the general rule in North Carolina was that a mortgagor-mortgagee relationship alone creates a fiduciary duty. *Id.* at *14-15 (stating that in *Carroll v. Roundtree*, 243 S.E. 2d 821 (N.C. App. 1978), the North Carolina Court of Appeals remarked in dictum that trustor-trustee, principal-agent, and mortgagor-mortgagee are "known and definite" fiduciary relationships).

REH, Jr. also cites *Robinson v. Deutsche Bank National Trust Co.*, No. 5:12-CV-590-F, 2013 U.S. Dist. LEXIS 50797 (E.D.N.C. Apr. 9, 2013) and *Hoover v. HSBC Mortgage Corp. (USA)*, 9 F. Supp. 3d 223 (N.D.N.Y. 2014). *Pl.'s Objection* at 2. In *Robinson*, a North Carolina district court disagreed with the *Smith* Court's view that the general rule in North Carolina is that there is a fiduciary duty between a mortgagor and mortgagee, but also concluded that there would be such a duty "with regard to the maintenance of the escrow account" where the mortgagee is "charged with acting in the best interests of the mortgagor." 2013 U.S. Dist. LEXIS 50797, at *57-58. Similarly, the *Hoover* Court noted that in New York there is "no fiduciary

duty between creditors and debtors, absent exceptional circumstances." 9 F. Supp. 3d at 251. Yet, the district court "recognize[d] that under New York state law, Plaintiffs may be able to plead and prove the existence of a fiduciary relationship in the context of an escrow account." *Id.* at 253. The *Robinson* and *Hoover* cases are more like the rule in Maine and their analyses of the escrow account exception is of some assistance.

The Maine Supreme Judicial Court has not directly addressed whether obligations of a mortgagee under an escrow account could constitute an exception to the general rule against finding a fiduciary relationship between a mortgagor and mortgagee. However, in *Progressive Iron Works Realty Corp. v. Eastern Milling Co.*, the Law Court observed "[t]here is a fiduciary relationship created by and inherent in the nature of an escrow agreement. The depositary has been denominated a trustee for the parties, charged with the performance of an express trust governed by the escrow agreement." 155 Me. 16, 19, 150 A.2d 760, 762 (1959) (internal citations and quotation marks omitted). There is also a Maine Superior Court case in which a customer sued a bank for breach of a fiduciary duty from alleged mishandling of an escrow agreement. *Crandall v. Bangor Sav. Bank*, No. CV-98-239, 1999 Me. Super. LEXIS 304, at *4-5 (Nov. 4, 1999). In *Crandall*, the superior court found that an escrow account created a fiduciary relationship between a bank and a customer, writing that "[t]here is no dispute that a fiduciary relationship is created by and

inherent in the nature of an escrow agreement."[5]  *Id.* at *5; *see also Sanborn v. Philbrick*, No. CV-87-53, 1988 Me. Super. LEXIS 120, at *4-7 (May 9, 1988).

Based on this authority, the Court concludes that Maine law would accept REH, Jr.'s contention that when BOA created an escrow account on his behalf, it assumed fiduciary duties over that escrow account.  Accordingly, the Court will not dismiss the negligence and negligent infliction of emotional distress counts in their entirety; however, these counts survive only to the extent they assert that BOA mishandled the escrow account.  They must be dismissed to the extent they are based on a duty of care arising from the mortgagor-mortgagee relationship in general.

### 2.    Fair Credit Billing Act: Count XI

In the Recommended Decision, the Magistrate Judge recommended that the Court dismiss the Fair Credit Billing Act count because the Fair Credit Billing Act applies by its terms only to open-end credit plans, such as credit cards, and not to mortgage loans.  *Recommended Decision* at 17.  The Magistrate Judge's conclusion is consistent with other authority.  *See Karim v. Bank of Am., N.A.*, No. CA 10-519 S., 2011 WL 4457212, at *7 (D.R.I. May 6, 2011), *report and recommendation adopted*, 2011 WL 4458765 (D.R.I. Sept. 23, 2011); *Hennington v. Bank of Am.*, No. 1:10-cv-1350-WSD, 2011 WL 705173, at *4 (N.D. Ga. Feb. 18, 2011).  REH, Jr. objects on the theory that after he failed to make payments on the mortgage loan and the loan was

---

[5]      In *Crandall*, the superior court granted summary judgment based on an exoneration clause in the escrow agreement absent willful malfeasance or misfeasance.  1999 Me. Super. LEXIS 304, at *5-18.  Here, BOA has not posited an exoneration clause as a defense to REH, Jr.'s claims that it mishandled the escrow account.

38

accelerated, it became an open-end credit plan subject to the provisions of the Fair Credit Billing Act. *Pl.'s Objection* at 3.

REH, Jr.'s contention is novel and unsupported. In support of his contention, he cites *Phan v. Accredited Home Lenders Holding Co.*, Case No. 3:09-cv-328-J-32TEM, 2010 U.S. Dist. LEXIS 30057 (M.D. Fla. Mar. 29, 2010), but in *Phan*, the district court concluded that a loan that began as a mortgage did not fit within the provisions of the Fair Credit Billing Act. 2010 U.S. Dist. LEXIS 30057, at *18 ("[T]here is no allegation in the Amended Complaint that the creditor . . . the Phans or any other party reasonably contemplated repeated transactions beyond the initial mortgage loan provided to Mrs. Phan"); *see also Latonnelle v. CitiMortgage, Inc.*, No. 1:10-CV-04066-TWT-WEJ, 2011 WL 4974839, at *3 (N.D. Ga. Aug. 22, 2011), *report and recommendation adopted*, 2011 WL 4974827 (N.D. Ga. Oct. 18, 2011). The same is true here. Count XI does not claim that BOA's loan was an open-end credit plan and there is no basis to conclude that the acceleration of the mortgage and attempted foreclosure transformed this mortgage loan into an open-end credit plan, contemplating repeated transactions, similar to a credit card.

## VII. CONCLUSION

The Court AFFIRMS IN PART and OVERRULES IN PART the Recommended Decision of the Magistrate Judge (ECF No. 102).

The Court GRANTS the Motion to Dismiss (ECF No. 81) by the Bank of America Defendants as follows:

1) Count II, Negligence, except as to the escrow allegation;

2) Count VIII, Negligent Infliction of Emotional Distress, except as to the escrow allegation;

3) Count IX, Fair Debt Collection Practices Act, as against Bank of America, N.A. and Bank of America Corporation, but not as against BAC Home Loans Servicing, L.P.;

4) Count XI, Fair Credit Billing Act;

5) Count XII, Fair Credit Reporting Act;

6) Count XV, False Light Defamation; and

7) Count XVI, Abuse of Process.

The Court DENIES the Motion to Dismiss (ECF No. 81) by the Bank of America Defendants as follows:

1) Count I, Breach of Contract,

2) Count II, Negligence, only regarding the escrow allegation;

3) Count III, Negligent Misrepresentation;

4) Count IV, Intentional Misrepresentation;

5) Count V, Fraud (Concealment);

6) Count VI, Unfair Trade Practices Act;

7) Count VII, Intentional Infliction of Emotional Distress;

8) Count VIII, Negligent Infliction of Emotional Distress, only regarding the escrow allegation;

9) Count IX, Fair Debt Collection Practices Act as regards BAC Home Loans Servicing, L.P. only;

10) Count X, Truth in Lending Act;

11) Count XIII, Real Estate Settlement Procedures Act;

12) Count XIV, Defamation; and

13) Count XVII, Fraud.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of January, 2015